# COPY



United States District Court
Southern District of Texas
FILED

OCT 2 3 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| *IN RE:* | § | CASE NO. 01-10578 |
| | § | Chapter 11 |
| FEDERAL-MOGUL GLOBAL, INC., | § | (Pending in the United States |
| | § | Bankruptcy Court for the |
| DEBTOR | § | District of Delaware) |

-------------------------------------------------------------------------

| | | |
|---|---|---|
| DEBRA KULAW, et al., | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | C.A. B-01-181 |
| | § | |
| | § | |
| ABLE SUPPLY COMPANY, et al., | § | |
| DEFENDANTS. | § | |

## INITIAL REPLY OF GARLOCK INC
### TO PLAINTIFFS' MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION, FOR MANDATORY ABSTENTION, OR FOR DISCRETIONARY ABSTENTION OR EQUITABLE REMAND

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

  Garlock Inc (Removing Defendant) files this Initial Reply to the Plaintiffs' pending Motion to Remand and for other relief and Motion for Expedited Consideration ("Motion to Remand") as follows:

### I.
### PRELIMINARY STATEMENT OF RESPONSE

  1. Plaintiffs seek expedited relief on their Motion to Remand and, accordingly, Removing Defendant promptly files this initial Reply:

    (i) to correct certain misstatements[1] in Plaintiffs' Motion;  and —

---

[1] As an example, the evidence (were it relevant to any issue before this Court) will show that the continuances alleged by Plaintiffs to be all at the request of Defendants, actually occurred as follows:
  a. The first continuance was by agreement because Plaintiffs experts were not timely disclosed and were struck by the State District Court.

---

(ii)     to join issues raised in the Removing Defendant's pending Emergency Motion To Transfer Civil Action Pursuant to 28 U.S.C. § 157(b)(5), also requested by Removing Defendant to be heard on an expedited basis.

### A.     The Removal Properly Names a Debtor-Party.

2.     Removing Defendant filed the Application and Notice of Removal ("Removal Petition") pursuant to 28 U.S.C. § 1452 under the bankruptcy case proceeding styled *In re Federal-Mogul Global, Inc.* ("Federal Mogul) which is the Bankruptcy Court mandated style that must be used for the administratively consolidated proceedings of approximately 100 Chapter 11 debtors now pending under the *In re Federal Mogul* case style in the District Court of Delaware.    Plaintiffs complain that Federal Mogul is not a party to this suit, having been dismissed by non-suit.  The Removal Petition, however, specifically named the party-Debtor as Gasket Holdings, Inc.    Attached hereto as Exhibit "1" and incorporated herein by reference is the consolidation order entered in *In Re Federal Mogul* specifying the other Debtor-entities which are administratively consolidated under the heading and docket number of *In re Federal Mogul* (Exhibit "1" omits unrelated pages dealing with numerous other affiliated debtors).

### B.     This Court Does Not Lack Subject Matter Jurisdiction over this Removed Case:

3.     Plaintiffs ignore not only the properly named Debtor-Defendant, but ignore Removing Defendant's pending 28 U.S.C. §157(b)(5) Motion to Transfer which Removing Defendant filed at the time of filing the Removal Petition.  The basis for this companion Motion to Transfer, in addition to those matters set out in sub-Section (iii) below, is the mandatory venue

---

b.     The second continuance was based on a motion to sever this case from another case which was granted.

c.     The third continunace was because Hon. Judge Murhy could not hear the case and Judge Limas agreed to but at a later date.

---

determinations of a removed personal injury case in the District Court in Delaware provided in title 28 U.S.C. § 157(b)(5):

> "The district court shall order that personal injury, tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or the district court in the district in which the claim arose, *as determined by the district court in which the bankruptcy case is pending*. (Emphasis added)." 28 U.S.C. § 157(b)(5).

*See*, discussion infra; *See, also*, Removing Defendant's Motion To Transfer.  Clear subject matter jurisdiction of this Honorable District Court pursuant to 28 U.S.C. §§ 1334 and 157(a) exists, and, in particular, jurisdiction of the "Home District Court" is mandated by 28 U.S.C. § 157(b)(5) for certain specified venue purposes.

### C.    Gasket Holdings, Inc. is a proper party to this Removed Case.

4.    Plaintiffs assert that there is no debtor-party to this proceeding based upon an allegation that a non-suit by Plaintiffs in some fashion removes that party from the suit, notwithstanding cross-claims filed against that non-suited party by co-defendants.  It does not.[2] In fact, Removing Defendant (and most, if not all, other co-defendants) have cross-actions against the Defendant-Debtor-Gasket Holdings, Inc. in this case and the Debtor has cross-actions against Removing Defendant and others in this suit.  In fact, the allegation of non-suit as to Gasket Holdings filed by the Plaintiffs was only as to the "conspiracy claims" alleged against all the co-defendants, including the Debtor.[3]  [*See*, Exhibit "2" attached hereto].  Plaintiffs' attempt at "self-help" without lifting of the automatic stay (by non-suiting a Debtor-party upon learning

---

d.    The deposition not attended on Friday October 19 was because Defendant quashed the deposition under state court procedural rules and not because of the removal of this case.

[2]    *See, e.g. Federal Life Insurance Company v. First Financial Group of Texas, Inc.*, 3 B.R. 375, 376 (S.D.Texas 1980) (motion to sever bankrupt defendant denied when "plaintiff's allegations [of fraud and misrepresentation] against [defendants] are inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding").

[3]    Plaintiffs claims against the co-defendants, including Gasket Holdings at the time of the removal, included negligence, punitive damages, product defect allegations including failure to warn, etc. and to everyone else other than Gasket Holdings, there are conspiracy claims.

of a bankruptcy filing by a co-defendant) does not remove the Debtor from this suit, even if a full non-suit had been attempted.   In a case such as this Removed Case, in which there are pending cross-actions by and against that debtor-defendant, a non-suit by the plaintiff does not "dismiss" the cross-actions, and an attempt to do so would be a violation of the bankruptcy court's automatic stay.   Removing Defendant has neither non-suited its cross actions against the Debtor, nor waived its right to have the claim liquidated in this Removed Case.   In fact, such right is the function and purpose of 28 U.S.C. § 157(b)(5), to prevent the proliferation of jury trials arising out of the same common nucleus of operative facts.

**(i)     The Automatic Stay Applies to Enjoin Non-suits in Cases involving cross-claims by and against the Debtor to the extent that such Non-suit or severance is intended to impact cross-claims by or against the Debtor:**

6.     As a result of the filing of the Bankruptcy Case, the Removed Case and all Court actions, including State and Federal District Court actions against the Debtor (*i.e.*, actions for contribution indemnification, or personal injury) or the Debtors property or property rights (*i.e* collection upon or assertion of a right of contribution in favor of a debtor), are stayed pursuant to 11 U.S.C. § 362. *See Pope vs. Manville Forest Product Corporation*, 778 F.2d 239 (5th Cir. 1985).

7.     Each party to this Removed Civil Action asserts a claim against the Debtor, (being at a minimum all Plaintiffs' claims (other than the conspiracy claims) and all co-defendants' claims for contribution or indemnification if Plaintiffs non-suited their claims pre-petition against the Debtor) and arise out of the same common nucleus of operative facts as the Plaintiffs' claims against the Debtor:

(i).     Each Plaintiff in this Removed Case has a wrongful death and personal injury claim against the Debtor governed by 28 U.S.C. § 157(b)(5) which action is stayed

by 11 U.S.C. § 362, and each Plaintiff must file a proof of claim in the Debtor's Chapter 11 case in order to preserve this claim [which will entitle that Plaintiff to a jury trial on this proof of claim]. In fact these Plaintiffs claim that the injury is so "indivisible" as among all manufactures of asbestosis, including all co-defendants and the Debtor so as to allow these Plaintiffs to overcome the *Havner* requirement that Plaintiffs must exclude other reasonable alternative damage causation or disease causing exposures. Plaintiffs claim that they cannot exclude other co-defendants, including the Debtor.

(ii). Each non-settling, non-debtor Defendant in this Removed Case has a cross-claim for contribution or indemnification against the Debtor arising out of this Removed Case, which cross-action is stayed by 11 U.S.C. § 362 and wholly dependent upon a trial and determination of Plaintiffs' wrongful death and personal injury against the Debtor, likewise governed by 28 U.S.C. § 157(b)(5) such that each cross-plaintiff (*i.e.* Garlock) must file a proof of claim in the Debtor's Chapter 11 case and may be entitled to a jury trial of this proof of claim.

(iii). The debtor, as a co-defendant in this Removed Case, at least with respect to each non-settling co-defendant, has a cross-claim for contribution or indemnification against each other co-defendant arising out of, and dependent upon a trial and determination of Plaintiffs' wrongful death and personal injury against the Debtor, likewise governed by 28 U.S.C. § 157(b)(5), which Debtor-owned cross action is also stayed by 11 U.S.C. § 362 and which adjudication must occur in a bankruptcy related or controlled proceeding to protect these rights and assets ("property of the estate").

The non-suit of one party by a Plaintiff does not non-suit all claims of contribution or indemnification against that party by co-defendants, unless the order specifically provides, which

no order does in this case.    And seeking an order post-petition, in light of 28 U.S.C. § 157(b)(5)

would likely violate the stay in any event.

      8.      It is the general consensus of courts that claims for contribution or indemnity are

subject to the automatic stay generally.[4]  Claims for indemnification and contribution ". . .

---

[4]      *In re Dow Corning Corp.*, 86 F.3d 482, 486 (6th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 718, 136 L.Ed.2d 636 (1997) involved thousands of product liability claims arising from Dow Corning's manufacture and sale of silicone products.  The threatened consequences of these claims prompted Dow Corning to file a petition for reorganization under Chapter 11 of the Bankruptcy Code.  Subsequently Dow filed a motion to transfer the claims pending against them to the Eastern District of Michigan.  The company envisioned its motion "as the first step in ensuring a feasible plan of reorganization, and indicated that it would seek to have the transferred actions consolidated for a threshold jury trial on certain issues (of liability)." *Id.* at 486.

      Citing potential claims for contribution against Dow Corning, the nondebtor manufacturers--Baxter, 3M, Bristol-Myers, and MEC moved to transfer the claims in which they were named as co-defendants with Dow Corning. Chapter 11 debtor-silicone breast implant manufacturer in various jurisdictions by claimants who did not join a global settlement pool to Eastern District of Michigan.

      The district court granted Dow Corning's motion to transfer, but denied, on jurisdictional grounds, the motion as it related to the nondebtor manufacturers.  In *In re Dow Corning Corp.*, 86 F.3d at 482, the Sixth Circuit Court reversed and held that the Eastern District of Michigan had "related to" jurisdiction over breast-implant claims against not only the debtor, Dow Corning, but also other non-debtor defendants contribution claims.  The Sixth Circuit Court ". . . further held that 28 U.S.C. § 157(b)(5) granted the district court authority to transfer the cases against the non-debtors (both contribution claimants and shareholders) to the Eastern District of Michigan." *In re Dow Corning*, 183 F.3d 129 (6th Cir. 1996).  In dealing with the 28 U.S.C. § 157(b)(5) transfer of the shareholder and contribution claims by way of mandamus to compel the District Court to assume jurisdiction in deciding whether to transfer these cases, the Sixth Circuit noted:

> "*We further acknowledged that the risk to the debtor's estate would be substantially enhanced "if the claims against Dow Chemical and Corning Incorporated are allowed to proceed separately" from those against Dow Corning. Id.* at 495.  After outlining the risks to Dow Corning's estate, we remanded to the district court with instructions "to determine in each individual case whether hearing it would promote or impair efficient and fair adjudication of bankruptcy cases." Id. at 497 (quoting *In re Salem Mortgage Co.*, 783 F.2d 626, 635 (6th Cir.1986))." *Id.* at 568.  [Emphasis added.]
>
> . . . .
>
> The district court also overlooked the risks to Dow Corning's estate that were clearly articulated in our prior decision.  Failing to transfer the claims against the [non-debtors] will likely affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as Dow Corning's ability to resolve its liabilities and proceed with reorganization. As we noted in *In re Dow Corning Corp.*, 86 F.3d 482, 493 (6th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 718, 136 L.Ed.2d 636 (1997). . . . Therefore, contrary to the district court's determination, the substantial risks identified in our prior decision indicate that the cases against the shareholders should be transferred in the interest of justice. *Id.* at 571.
>
> . . . .
>
> We further find that discretionary abstention from the cases against the shareholders is wholly inappropriate in this case. In our prior decision, we acknowledged the significant impact that our resolution of these issues will have on the future course of this litigation.  We also recognized that perfect satisfaction of all interests was impossible.  Armed with that realization, we set out to meet the goal of establishing 'a mechanism for resolving the claims at issue in the most fair and equitable manner possible.' Id. at 487." *Id.*

The reasoning of this case authority is simple and logical -- the claims prosecution and the impact of litigation in multiple foreign courts has a direct impact on the administration of the Chapter 11 case.  Thus, the Sixth Circuit

---

obviously would affect the size of the estate and the length of time the bankruptcy proceedings would be pending,[5] as well as (the Debtor's) ability to resolve its liabilities and proceed with reorganization."[6] As a result of co-defendant cross-claims against a Debtor-party no actions, including any attempt by the Plaintiffs at severance or dismissal (by non-suit) of *the Debtor* after filing of its Chapter 11 case are effective to remove the debtor as a party-cross-defendant without a specific order and hearing involving the debtor, and if so ordered, is likely stayed.

9. ***Johns-Manville***[7] 837 F.2d 89 (2nd Cir.), *cert. denied*, 488 U.S. 868 (1988) recognized that contribution claims were ". . . contingent and unliquidated because there has been no determination yet in the state court actions on their possibly liability . . . ." [*Id.* at 688] and had a direct impact on the estate of a debtor, *citing **In re Baldwin-United Corp.***, 48 B.R. 901, 903 (Bankr. S.D. Ohio, 1985) with approval for the proposition:

---

specifically held that the District Court (under 28 U.S.C. § 157(b)(5)) had the jurisdiction to transfer of all contribution co-defendant manufacturer cases to the "home" district court. ***Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Connecticut (In re Dow Corning Corp.)***, 86 F.3d 482, 494 (6th Cir.1996) ("The potential for Dow Corning's being held liable to the non-debtors in claims for contribution and indemnification ... establish[es] a conceivable impact on the estate in bankruptcy. Claims for indemnification and contribution ... obviously would affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as Dow Corning's ability to resolve its liabilities and proceed with reorganization."). Further, in the *Dow* case the bankruptcy court (as in other mass tort cases) permitted the contribution claimants to form their own official committee. *In re Dow Corning Corp.*, 194 B.R. 121, 144 (Bankr. E.D. Mich, 1996) *rev'd on other grounds* 212 B.R. 258 (E.D. Mich 1997); *See, also In re Dow Corning*, 183 F.3d 129 (6th Cir. 1996)]; *In re Dow Corning*, 244 B.R. 721, 746 (Bankr. E.D. Mich. 1999).

[5]    See also, *A.H. Robins Co. v. Piocc*, 788 F.2d 1994, 1000-10001 (4th Cir.), cert. denied, 479 U.S. 876 (1986) (adverse judgment against party indemnified by Debtor would preclude Debtor from litigating merits of claim); *see also Kossman v. TJX Companies, Inc.*, 136 Bankr. Rptr. 640, 642 (W.D. Pa. 1991) (where debtor indemnification exists, a judgment for the plaintiff would have an effect on the bankruptcy estate, "as some part of the estate would be susceptible to being diverted to meet the indemnity obligation"); *Apex Investment Assocs., Inc. v. TJX Companies, Inc.*, 121 Bankr. Rptr. 522, 526-27 (N.D. Ill. 1990) (because of existence of debtor's indemnification, "[t]he resolution of this case will affect the arrangement of the creditors, and alter the debtor's rights and liabilities with respect to the claims against the estate"); Philippe v. Shape, Inc., 103 Bankr. Rptr. 355, 358 (D. Me. 1989) (where indemnification exists, "a judgment in favor of the plaintiff . . . would automatically result in indemnification liability on the part of [the debtor]"); *In re Brentano's*, 27 Bankr. Rptr. 90, 91 -92 (Bankr. S.D. N.Y. 1983) (a judgment in favor of the plaintiff would automatically result in liability against the indemnitor-debtor).

[6]    See, *In re Dow Corning*, 183 F.3d 129 (6th Cir. 1996) .

[7]    *Johns-Manville* cited the Fifth Circuit as authority to support its holding, quoting *In re All Media Properties, Inc.* 5 B.R. 126 (Bankr. S.D. Tex. 1980*), aff'd* 646 F.2d 193 (5th Cir. 1981):
"'claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrences or happening of an extrinsic event.'" *Id.* at 688.

"'the mere filing of a third-party suit for indemnity and contributions affects the assets of these Debtors, since such suits must inevitably add to the administrative costs of the estates with a concomitant decrease in proceeds available for distribution to creditors." *Id*. at 689.

As noted above, if prosecution of a suit for contribution against a Debtor is stayed, it is axiomatic that the deliberate taking of an action in a case (without lifting of the stay) which has a direct or indirect impact on the contribution claims pending by or against the Debtor would be covered by the automatic stay and would be void "self-help" if attempted.

      10.   ***In Re Baldwin-United Corporation Litigation***, 765 F.2d 343 (2nd Cir. 1985) addresses contribution claims against the Debtor which arose out of suits against broker-dealers who had sold annuities issued by Baldwin's insurance subsidiaries.[8]   The Court particularly noted that

> " . . . to whatever extent a conflict may arise between the authority of the Bankruptcy Court to administer this complex reorganization and  the authority of the District Court to administer consolidated pretrial proceedings, *the equities favor maintenance of the unfettered authority of the Bankruptcy Court.*
> . . . .
> *The possibility of conflicting decisions is far more serious in (a) complex Chapter 11 proceeding with its numerous indemnity claimants* . . . ." [Emphasis added.]

To suggest that this holding would not extend to pending state court suits in which the Debtor had pending *by or against it* claims for contribution and indemnification would be specious. The Second Circuit first noted with approval that the Bankruptcy Court had ruled that "claims of

---

[8]     In *Baldwin*, an MDL was created to include these claims (requiriing only one complaint filed against each broker-dealer, and a single class by Paine-Webber).  Paine Webber in turn filed a proof of claim in the Baldwin Chapter 11 case for indemnity and contribution arising out of the MDL and other state court litigation, and then filed a third party complaint against Baldwin in the MDL proceeding.  Upon the Debtor's threat of seeking relief for the violation of stay made by the Debtor, Paine Webber obtained a TRO from the District Court supervising the MDL
> ". . . barring Baldwin from applying to the Bankruptcy Court in Ohio 'for declaratory or injunctive relief which wold purport to determine, affect or interfere, directly or indirectly with [the District] Court's jurisdiction over the third-party complaint against Baldwin . . . .'" *Id*. at 346.

Paine-Webber argued that the claim for contribution was not subject to the automatic stay (arguing the application of *In Re Frenville*, 744 F.2d 332 (3rd Cir. 1984).

---

CMPDF - www.texia.com

contribution and indemnity similar to, in pertinent respects, the Paine Webber's, are subject to the automatic stay" [*Id*. at 349] and followed with the following:

> "We are not as certain as the District Court that, if we reached the issue, we would follow *Frenville* and hold the stay inapplicable to Paine Webber's third-party complaint. *The broad definition of "claim" in the Bankruptcy Code, a "right o payment"* . . . *creates a substantial question whether the stay applies to the third-party complaint.*" *Id* at 349,note 4.

11.    The Second Circuit addressed the injunction which applied to contribution and indemnity claims that were or could be filed in the related multi-district litigation as follows:

> "[W]hether the Bankruptcy Court in Ohio or the District Court in New York ought to be the first court to determine whether the automatic stay arising from the filing of the Chapter 11 proceedings, *see* 11 U.S.C. § 362 (1982), applies to indemnity and contribution claims filed against Baldwin after the filing of the Chapter 11 petition but based on facts occurring prior to the filing of that petition." *Id*. at pg. 345.

The holding of ***Baldwin***, in vacating the District Court injunction, observed that ". . . the Bankruptcy Court is entitled to determine the applicability of its stay and, under the circumstances of this case, should be permitted to do so." *Id*. Likewise in this Removed Case, there are pending cross-claims for contribution or indemnification against the Debtor which Plaintiffs' attempts at "self-help" will not prohibit jurisdiction to attach to the realities of the claims -- that non-suit or even severance does not dispose of the pending contribution or indemnification claims by or against the Debtor by co-defendants.

12.    As further evidence of the impact of contribution and indemnity claims and the bankruptcy court's handling of those claims, a number of bankruptcy courts (as in other mass tort cases) permit the contribution claimants to form their own official committee.[9]

     (ii)    **The Proliferation of Litigation By This Self-Help Violation of the Automatic Stay:**

---

[9]    *In re Dow Corning Corp.*, 194 B.R. 121, 144 (Bankr. E.D. Mich, 1996) *rev'd on other grounds* 212 B.R. 258 (E.D. Mich 1997); *See*, also *In re Dow Corning*, 183 F.3d 129 (6th Cir. 1996)]; *In re Dow Corning*, 244 B.R. 721, 746 (Bankr. E.D. Mich. 1999).

13.     Notwithstanding the likely violation of the automatic stay (if Plaintiffs will argue that they may "dismiss for the debtor" or "dismiss against the Debtor" claims of contribution and indemnification by their own "self-help" conduct), Plaintiffs' Motion to Remand ignores the mandates of 28 U.S.C. § 157(b)(5) and does so deliberately so as to seek relief in direct violation of that statute.   In fact, it is only by this "self-help" lifting of the automatic stay and Plaintiffs suggestion that the Debtor's cross-claims are gone from the case that the Federal Courts are burdened with multiples jury trials which required on the same common nucleus of operative facts -- a result avoided by implementation of 28 U.S.C. § 157(b)(5).   Most remarkable to the issue of Plaintiffs' unilateral action to non-suit or sever a Debtor without lifting of the automatic stay (if they argue that the Debtor's liability and rights are removed by such unilateral self-help) is what occurs to the District Court assuming jurisdiction over these § 157(b)(5) cases and the impact of multiplication of jury trials involving the debtor's rights with respect to co-defendants common to many of the Chapter 11 cases.   Most of these pending Chapter 11 cases (a number of which are pending in Delaware such as *Gasket Holdings*) originated from these multi-defendant state court suits that have a number of common co-defendants.   To illustrate this improper impact, assume by way of example, the results that have occurred just this year:

•       **Debtor #1** (using *W.R. Grace's* Delaware Chapter 11 case filed in 2001 for example) had 300,000 pending cases (with many common co-defendants).   W.R. Grace files its Chapter 11, and the plaintiffs immediately sever or non-suit Grace and file proofs of claims in Grace's bankruptcy case.   The result is 300,000 pending state court cases (less W.R. Grace) and 300,000 new proofs of claims entitling plaintiffs to a jury trial on each such proof of claim for the same injury; or 600,000 jury trials (two each on the same injury, but to different juries).

Reply to Plaintiffs' Motion
To Remand                                Page 10

- Next **Debtor # 2** (using co-Defendant *National Gypsum's* Chapter 11 case filed in 2001 in Delaware) and the same Plaintiffs' repeat the drill, severance and non-suit of National Gypsum.   Now there are 900,000 jury trials (each 3 on the same facts and same injury, but to three different juries) arising out of the original 300,000 original lawsuits.

- Next **Debtor # 3** (using as an example *Federal Mogul*, etc, this Debtor-Defendant).   The jury trials demanded by Plaintiffs now are 1,200,000.[10]

14.   The following chart illustrates how 1,200,000 jury trials have now been created out of the original 300,000 pending asbestos suits, all on the exact same common nucleus of operative facts, and solely by the "self-help" proliferation tactics of these asbestos plaintiffs.

| Asbestos Proceeding | | |
|---|---|---|
| State Court Original | 300,000.00 | Including W.R. Grace, Garlock, |
| • W.R. Grace files first | 300,000.00 | W.R. Grace now has 300,000 jury trial proofs of claims |
| • National Gypsum files next | 300,000.00 | Nat. Gypsum now has 300,000 jury trial proofs of claims |
| • Gasket Holdings files next | 300,000.00 | Gasket H. now has 300,000 jury trial proofs of claims |
| **Total Jury Trials** | 1,200,000.00 | |

What has occurred includes the following:

- W.R. Grace will liquidate the 300,000 Plaintiff claims against it under 28 U.S.C. § 157(b)(5) and 28 U.S.C.  § 1441 specifically preserving the right to a jury trial.

- National Gypsum will liquidate the 300,000 exact same claim, same operative facts, but only as to National Gypsum under 28 U.S.C. § 157(b)(5) and 28 U.S.C.  § 1441 specifically preserving the right to a jury trial.; and

---

[10]      These numbers are not intended to be represented as correct or exactly accurate and it is likely not the case that each of the pending asbestos cases, but this illustration did not even go through the multiple 2001 filings, let alone those filings that have occurred in the past several years prior to 2001.   It does not make economic sense to allow such a proliferation of litigation to continue so that the Plaintiffs are able to totally clog the Federal Bankruptcy Courts' and Federal District Courts' dockets and 28 U.S.C. § 157(b)(5) is the basis by which Congress mandated the avoidance of this effect.

- Gasket Holdings will liquidate the 300,000 exact same claims and operative facts, but only as to Gasket Holdings pursuant to 28 U.S.C. § 157(b)(5) and 28 U.S.C. § 1441 specifically preserving the right to a jury trial.; and

- Finally, the State Court will liquidate the same 300,000 suits on the exact same operative facts, as to all other Defendants except Grace, Gypsum, and Gasket Holdings.

Not only is this counter-intuitive to every logical mandate of judicial economy, but totally avoidable by application of 28 U.S.C. § 157(b)(5) and the mandates of the Supreme Court and Congress to "centralize" all issues related to a bankruptcy case in a central proceeding.[11] What Plaintiffs are doing to the tort and bankruptcy systems imposes the likelihood of multiple inconsistent results[12] (in the example above, 4 juries will pass on the same injury and assess damages; -- which damage award will actually liquidate "contribution claims"? -- which one will be binding on the parties?; and how often will 4 separate juries actually reach consistent

---

[11]  "Finally, the manifest purpose of (28 U.S.C.) section 157(b)(5) was 'to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.' *Piccinin*, 788 F.2d at 1011 (*quoting* 130 Cong.Rec. H7492 (June 29, 1984) (remarks of Congressman Kastenmeier), reprinted in 1984 U.S.Code Cong. & Admin.News at 579). This is consistent with Congress' desire to eliminate the confusion, delay and inefficiencies associated with the Bankruptcy Act's [FN7][11] limited jurisdictional scheme. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 43-52 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6004-13; *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)." *In re Pan American Corp.* 950 F.2d 839, 845 (2nd Cir. 1991) [dealing with multiple personal injury claims removed from state court and transferred pursuant to § 157(b)(5)]; *In re U.S. Lines, Inc.*, 216 F.3d 228, (2nd Cir.(N.Y.), 2000); *Zimmerman v. Continental Airlines, Inc., 712 F.2d 55 (3rd Cir.1983)*, cert. denied, 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); *Matter of National Gypsum Co.*, 118 F.3d 1056 (5th Cir 1997); *In re Bailey*, 217 B.R. 523, 526 (Bkrtcy.E.D.Tex.1997) *In re Greyling Realty Corporation*, 74 F.2d 734 (C.C.A.2 (N.Y.), 1935); *In re Singer Co. N.V.*, 2001 WL 984678 (S.D.N.Y., 2001); *Trefny v. Bear Stearns Securities Corp.*, 243 B.R. 300 (S.D.Tex.,1999); *In re Greyling Realty Corporation*, 74 F.2d 734 (C.C.A.2 (N.Y.), Jan 07, 1935) *In re Coleman Enterprises, Inc.*, 266 B.R. 423 (Bankr.D.Minn. 2001); *In re Nu-Kote Holding, Inc.*, 257 B.R. 855 (Bankr.M.D.Tenn. 2000); *In re Jotan, Inc.*, 232 B.R. 503 (Bankr.M.D.Fla., Apr 12, 1999).

[12]  Any time a plaintiff does not join all possible defendants alleged to be jointly and severally liable, those parties who are joined suffer the risk of an inconsistent judgment result in a subsequent action for contribution or indemnification. *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D.Ohio 1984).

---

Reply to Plaintiffs' Motion
To Remand                                    Page 12

results?) all of which is avoided when the District Court employs the centralized system mandated by 28 U.S.C. ¶ 157(b)(5).

15.     Self-help by non-suit or "severance" of the Debtor from this, or any, Removed Case creates a substantial impact on the Debtor's estate in several other important respects:

•       Plaintiffs seek to argue that removal of the case and parties is no longer possible -- thus, the parties seeking contribution from the Debtor, and the Debtor's rights to contribution from these parties, no longer are in a case subject to removal.  Were this true, it  simply means that the Debtor must now re-join the parties in the severed suit to assert and collect or liquidate its Contribution Claim against Garlock and the other co-defendants.   And it must do so without the right to participate in the discovery and trial of the suit which existed on the petition date.

•       Non-suit or severance post-petition is argued (as here) as a restriction on the ability of the District Court to transfer co-defendant Contribution Claims to the home court to prevent this multiplication of litigation created by severance.  28 U.S.C. § 157(b)(5), contemplates all decisions about venue of these suit (including Contribution Claims) be subjected to the scrutiny of "centralization" by the District Court, and were "self-help" severance not subject to the automatic stay, the total de-centralization of claims by and against the Debtor would undermine and in fact destroy, the District Court's ability to impose a centralized handling of these claims.

•       Finally, no rule of equity or law (that which attempts to avoid multiplication of litigation arising from the same "common nucleus of operative facts" as these cases;  risks of inconsistent results; and further Congressional policy) could support severance of Contribution Claim parties without court supervision.  In this case, the

supervision could not be clear pursuant to the Congressional policy implementing both 11 U.S.C. § 362 and 28 U.S.C. § 157(b)(5).

## II.
## PLAINTIFFS' REQUEST FOR REMAND
## IS NOT APPROPRIATE RELIEF FOR THIS DISTRICT COURT

### A.    GARLOCK'S basis for Removal and Transfer: -- 28 U.S.C. § 157(B)(5)

16.    Under the mandatory language of 28 U.S.C. § 157(b)(5), the "Home" District Court in which the debtor's case was filed (or is pending) has the exclusive jurisdiction to fix the venue of any court action against the debtor  irrespective of the district in which the controversy is pending or was removed (the "Home" court being the United States District Court for the "district in which the *bankruptcy* case is pending").  This is critical inasmuch as the "Home" District Court would otherwise be swamped with hundreds of thousands of duplicative but separate proceedings arising from these multiple filings of  co-defendants, while at the same time the state court proceedings would continue unabated (again on the same operative facts) adversely impacting the contribution claims.

17.    Section 157(b)(5) implements the general policy of the Bankruptcy Code that all proceedings in a bankruptcy case be conducted in the district in which the bankruptcy petition was filed (the "home court").[13]   This policy, along with the policy considerations of 28 U.S.C. 157(B)(5) dictates in these special circumstances, removal to the "Home" District Court for the following legal and practical reasons.   It is critical that the personal injury claims singled out (for more favorable treatment than all other creditors of a debtor) by § 157(b)(5) be handled in a centralized proceeding for the very practical reason that dividing these cases up multiplies the

---

[13]    *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984); *Kotlicky v. Belford*, 64 Bankr. Rptr. 689, 681 (N.D. Ill. 1986) (a strong presumption exists favoring transfer to the home court); *see also* 1 *Collier on Bankruptcy* 11

---

number of Court, venues, and jury trials involving the exact same common nucleus of operative

facts.

## III.
### The Relief Requested By Plaintiffs Is Inconsistent With Congressional Mandates -- Trial Determinations in the Home District Court:

### A.    Mandatory Abstention Is Not Applicable to the Plaintiffs' Claims:

18.    Plaintiffs suggest that mandatory abstention is appropriate in respect to this

personal injury case.  The statutes provides otherwise.   28 U.S.C. § 157(b)(2)(B) provides :

> "(2)    Core proceedings include, but are not limited to ---
> (B)    allowance or disallowance of claims against the estate . . . but not
> the liquidation or estimation of contingent or unliquidated personal injury tort or
> wrongful death claims against the estate . . . ."

Next, 28 U.S.C.  157(b)(4) provides, with respect to these non-core personal injury claims:

> "Non-core proceedings under section 157(b)(2)(B) of title 28 United States Code,
> shall not be subject to the mandatory abstention provisions of section 1334(c)(2)".

Logic dictates this in light of 28 U.S.C. § 157(b)(5) and the "Home District Court's obligation to

actually make a determination based on the impact upon the bankruptcy case.

### B.    Neither Remand Nor Discretionary Abstention Are Appropriate Remedies for this Honorable District Court:

19.    It is only the "Home" Federal District Court which may determine the venue for

trial of these cases although it is the bankruptcy court (or this District Court setting in bankruptcy

where, as here, the reference in the Chapter 11 case has been withdrawn to the Federal District

Court) that controls the stay for very practical reasons;  it is the "Home" District Court's unit

which is the "home" bankruptcy court in charge of the automatic stay;  it is the "home"

bankruptcy court controls the decisions regarding the administration of the bankruptcy estate

---

3.02[2][a], at 3-136 (15th Ed. 1989) ("[U]nless strong reasons can be shown to the contrary, the home court is the proper venue for civil proceedings.").

including motions to lift the automatic stay, which is inextricably intertwined in the trial of these

removed cases.  The bankruptcy court may not "liquidate" these claims[14] but does determine

"when" they are liquidated.  The "Home" District Court coordinates "where" they are liquidated

-- consistent with the progress of the Chapter 11, with the needs of the Debtor and estate, and the

issues practical to liquidation to large numbers of cases.  Accordingly, the automatic stay must

be read to compliment 28 U.S.C. 157(b)(5) fixing of the sole determination of the place for trial

of these cases with the Federal District Court, the Court whose "unit" determines the timing of

the trials.

  20. More significantly, such a consistent reading would not include, as an example,

mandatory abstention (because the Home District Court must exercise fact-driven discretion

based on a "centralized", "speedy" and "efficient" case) nor  favor severance of the Debtor

---

[14]  "Concededly, section 157(b)(5) does not prescribe any procedure.  The appellants suggest that the procedure to be followed is laid out in 28 U.S.C. 1412, which provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  As the appellants correctly construe section 1412, the authority to transfer a suit under that statute rests solely with the court in which the suit is pending and it provides no authority whatsoever to a district court sitting in bankruptcy in one district and having jurisdiction of the bankruptcy to transfer the venue of a case against the bankrupt to another district.  Section 157(b)(5), however, expressly confers on the district court sitting in bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case against the debtor pending in other districts.  The purpose of this latter statute was, as Congressman Kastenmeier declared, to centralize the administration of the estate and to eliminate the "multiplicity of forums for the adjudication of parts of a bankruptcy case."  130 Cong.Rec. H 7492, June 29, 1984, reprinted in 1984 U.S.Code Cong. & Adm.News at 579.  That purpose would be thwarted and the plain language of section 157(b)(5) nullified if the power of the district court sitting in bankruptcy to fix the venue for tort claims against a debtor was to be preempted by the provisions of section 1412.  We do not believe this to have been the intention of Congress in enacting the two statutes.  Section 157(b)(5) was drafted to cover the procedure in connection with a special group of cases, to wit, personal injury tort claims against a debtor in Chapter 11 proceedings wherever pending and in that connection the section is supreme.  In all other cases related to the bankruptcy proceedings, however, the general statute (i.e., section 1412) would govern.  This, we think, is the proper construction to be given the two statutes.  It is a construction which harmonizes the two sections.  It conforms to that established canon of statutory construction that "[w]e must read the statutes [in those instances where there is any possible conflict] to give effect to each if we can do so while preserving their sense and purpose."  *Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981); *Columbia Gas v. Federal Energy Regulatory Comm.,* 651 F.2d 1146, 1158 (5th Cir.1981); *Pennsylvania v. Dept. of Health & Human Resources,* 723 F.2d 1114, 1119 (3d Cir.1983).  To accept the appellants' interpretation and to negate the plain language of  157(b)(5) "would violate the basic principle of construction that statutes should be read, if possible, as harmonious texts."  *Leaf Tobacco Exporters Assn. v. Block,* 749 F.2d 1106, 1115 (4th Cir.1984)." *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986).
*See, also, A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986).

---

resulting in multiplication of the same suits into numerous identical jury trials -- thus, Congress

enacted the all special encompassing powers of the "Home" District Court to prevent exactly

what is suggested here by the Plaintiffs.

21.     In furtherance of that purpose, the automatic stay makes clear the bankruptcy

court's centralized jurisdiction over the debtor's assets and "forestall[s] the race to levy upon or

make claims against the debtor's property with possibly inconsistent results." *Holland America*

*Ins. v. Roy*, 777 F.2d 992, 995 (5th Cir. 1985).[15]  This "centralized" jurisdiction, however, is not

a matter to be multiplied by unilateral "self-help" actions of parties to pending suits, severing the

Debtor from the suit and creating at least (as illustrated above) four (4) sets of new jury trials or

claims proceeding requiring a jury determination.  But for 28 U.S.C. 157(b)(5) applicable to this

Removed Case, no less than four separate cases will arise -- all tried on the same common

nucleus of operative facts, and all to different juries.  This  outcome is why this Removed Case

is exclusively controlled by the Bankruptcy Court's automatic stay and the "Home" Federal

District Court's mandatory venue determination.   Without a "control" over this Removed Case,

and implementation of a centralized forum to conduct but a single "liquidation" proceeding, the

Chapter 11 proceeding does nothing to accomplish its goal of a speedy, efficient, and centralized

proceeding.

22.     The obvious import of the application of § 157(b)(5)'s directive on the

administration of the debtor's estate is the type of jurisdictional question which is best decided by

the court charged with the responsibility for the effective administration of the debtor's estate.

---

[15]      The automatic stay is "designed 'to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.'" *In re Continental Airlines*, 177 B.R. 475, 479 (D. Del. 1993) (quoting *A.H. Robbins Co. v. Piccinin*,, 788 F.2d 994, 998 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986)),

Abstention and remand issues, and lifting of the stay, matters certainly to be raised in this Removed Case, are best decided by the "home" District Court and "home" bankruptcy court, consistent with the statutory mandates of both. *In re Covenant Guardian Corp.*, 715 Bankr. Rptr. 246 (Bankr. E.D. Pa. 1987); *In re Durheim*, 215 B.R. 876 (D.Alaska, 1997). Moreover, in ruling on the transfer motion, the appropriate District Court must be primarily concerned with "the economic and efficient administration of the estate . . ." [*See HME Records, Inc.*, 62 Bankr. Rptr., 611, 613 (Bankr. M.D. Term. 1986); *Butcher*, 46 Bankr. Rptr. at 112 (*citing Commonwealth*, 596 F.2d at 1247)] a matter reserved by statute and congressional policy in these personal injury circumstances, to the "Home" District Court.

23. These statutes are consistent with the general policy of the Bankruptcy Code that all proceedings in a bankruptcy case (not simply these specially transfer-mandated proceedings) be conducted in the district in which the bankruptcy petition was filed (the "home court"). *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984); *Kotlicky v. Belford*, 64 Bankr. Rptr. 689, 681 (N.D. Ill. 1986) (a strong presumption exists favoring transfer to the home court); *see also* 1 *Collier on Bankruptcy* ¶¶ 3.02[2][a], at 3-136 (15th Ed. 1989) ("[U]nless strong reasons can be shown to the contrary, the home court is the proper venue for civil proceedings.").[16]   This is so because, when faced with such a request, the "Home" District Court is required to analyze what effect the continuing litigation of claims against the non-debtor co-defendants could conceivably have on the debtor's bankruptcy estate. *See In re Dow Corning Corporation*, 187 B.R. 919 (E.D. Mich. 1995), *rev'd*, 86 F.3d 482 (6th Cir.), *cert. denied*, 117 S. Ct. 718 (1997). This determination is practically not available, nor convenient, nor economical, except when made by the "Home" District Court in the division and district where the Chapter 11 case is pending. The "strong

presumption" favoring consolidation of all proceedings in the home bankruptcy court has been consistently applied when a state proceeding is removed to an outpost bankruptcy [or District] court. *See, e g, Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 Bankr. Rptr. 123, 128 (Bankr. D. Mass. 1984) (removed action transferred to bankruptcy court where bankruptcy petition filed -- 128 (outpost bankruptcy court a mere "conduit" that "can only speculate as to the effect this proceeding will have on the debtor's bankruptcy proceedings"); *Colarusso v. Burger-King Corp.*, 35 Bankr. Rptr. 365 (Bankr. E.D. Pa.) (same); *Stamm v. Rapco Foam, Inc.*, 21 Bankr. Rptr. 715 (Bankr. W.D. Pa. 1982) (same).  As an example, when the District Court refused to do so as to removed shareholder suits, the Sixth Circuit expressly transferred all breast implant claims in the United States against the Shareholders to this district finding "related to" jurisdiction based on the chapter 11 case filed by the Debtor. *In re Dow Corning*, 86 F.3d 482 (6th Cir.1996), and *In re Dow Corning,* 113 F.3d 565 (6th Cir.1997).

24.     Notwithstanding 28 U.S.C. § 157(b)(5), the four major criteria identified by the leading bankruptcy cases discussing why even non-personal injury cases should be transferred to the home bankruptcy court are as follows:

(i)     If the case is not transferred, this court and the home District Court's venue determinations could result in inconsistent determinations;

(ii)     The effective administration of the estate is paramount and overrides the Plaintiffs' choice of forum, a matter best suited to the "Home" District Court supervising the bankruptcy case;

(iii)     The home bankruptcy court should rule on jurisdictional matters.

---

[16]     This concern "underlies the general rule that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction." *Nixon Machinery*, 27 Bankr. Rptr. at 873.

Each of these factors clearly favor transfer of this case independent of the mandatory provisions of 28 U.S. § 157(b)(5).

25.     Consistent with such policies of "home" Bankruptcy Court jurisdiction [*Id.*] and the "home" District Court jurisdiction [regarding these personal injury suits pursuant to § 157(b)(5)] and particular venue determinations unique to this Chapter 11 case, the Garlock Removed Cases should be transferred directly to this District Court, District of Delaware and Plaintiffs' Motion to Remand should be denied.

WHEREFORE, PREMISES CONSIDERED, GARLOCK INC prays that Plaintiffs' Motion to Remand be denied and that this Court assume jurisdiction of this case for the purposes of 28 U.S.C. § 157(B)(5) and transfer this pending case to the Home District Court, and that Removing Defendant have such other and further relief, at law or in equity to which it may show itself to be justly entitled.

Respectfully submitted,

_____
Shelby A. Jordan
State Bar No. 11016700
Admissions No. 2195
Harlin C. Womble, Jr.
State Bar No. 21880300
Admissions No. 8959
Nathaniel Peter Holzer
State Bar No. 00793971
Admissions No. 21503
*Jordan, Hyden, Womble & Culbreth, P.C.*
500 N. Shoreline Dr., Suite 900
Corpus Christi, Texas 78471
Telephone: (361) 884-5678
Telecopier: (361) 884-5616
REMOVAL COUNSEL FOR GARLOCK INC

*Mitchell C. Chaney*

Eduardo Roberto Rodriguez
SB# 17144000
Fed. ID # 1944
Mitchell C. Chaney
SB# 04107500
Fed. ID # 1918
RODRIGUEZ, COLVIN & CHANEY, LLP
1201 East Van Buren
Brownsville, Texas 78522
Phone: (956) 542-7441; fax: (956) 541-2170
ATTORNEYS FOR GARLOCK INC

---

Reply to Plaintiffs' Motion
To Remand

## <u>CERTIFICATE OF SERVICE</u>

I, Shelby A. Jordan,  hereby certify that a true and correct copy of foregoing document was served by First Class Mail, on all counsel of record as listed on the attached service list this _23rd_ day of October, 2001:

Shelby A. Jordan

---

Lisa Powell
Jackson & Walker, L.L.P.
1100 Louisiana, Suite 4200
Houston, TX 77002

Jerry Kacal
Dunn, Kacal, Adams & Pappas
2929 Allen Parkway, Suite 2600
Houston, TX 77019-2151

Thomas Taylor
Andrews & Kurth, L.L.P.
600 Travis, Suite 4200
Houston, TX 77019

Lewis Miltenberger
Cordray, Goodrich & Miltenberger
One Century Plaza
108 W. Eighth Street, Suite 500
Fort Worth, TX 76102

Donald Godwin
Godwin, White & Gruber
901 Main Street, Suite 2500
Dallas, TX 75202

James Powers
Powers & Frost
2600 Two Houston Center
Houston, TX 77010

Daniel Spain
Spain & Hastings
2350 Houston Center
909 Fannin Street
Houston, TX 77010

Frank G. Harmon
Crain, Caton & James
3300 Two Houston Center
909 Fannin, 33rd Floor
Houston, TX 77010

Robert Bass
Forman, Perry, Watkins, Krutz & Tardy, P.L.L.C.
400 Woodview Tower
1349 Empire Central
Dallas, TX 75427

Hubert A. Crouch, III
Crouch & Inabnett
2300 Fountain Place
1445 Ross Avenue
Dallas, TX 75202

James M. Riley
Coats, Rose, Yale, Ryman & Lee, P.C.
800 First City Tower
1001 Fannin
Houston, TX 77002

Gary Elliston
Dehay & Elliston
NationsBank Plaza
901 Main Street, Suite 3500
Dallas, TX 75202

Robert W. Wilkinson
Dogan & Wilkinson
725 Delmas Avenue
Pascagoula, MS 39568

John L. Hill
Locke, Liddell
600 Travis Street, Suite 3400
Houston, TX 77002

D. Ferguson McNeil
Vinson & Elkins
2300 First City Tower
1001 Fannin
Houston, TX 77002

Peter Moir
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201

Gail Jenkins
Jenkins, Grove & Martin
2615 Calder Street, Suite 500
Beaumont, TX 77720

# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>FEDERAL-MOGUL GLOBAL INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 01-10578 (___) |

| | |
|---|---|
| In re<br><br>T&N LIMITED,<br><br>Debtor. | Chapter 11<br><br>Case No. 01-10580 (___) |

| | |
|---|---|
| In re<br><br>CARTER AUTOMOTIVE COMPANY, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 01-10585 (___) |

| | |
|---|---|
| In re<br><br>FEDERAL-MOGUL CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 01-10582 (___) |

1

DOCS_DE:31300.2

# EXHIBIT " 1 "

| | |
|---|---|
| In re | Chapter 11 |
| FELT PRODUCTS MANUFACTURING CO., | Case No. 01-10657 (___) |
| Debtor. | |

| | |
|---|---|
| In re | Chapter 11 |
| FM INTERNATIONAL LLC, | Case No. 01-10665 (___) |
| Debtor. | |

| | |
|---|---|
| In re | Chapter 11 |
| FERODO AMERICA, INC., | Case No. 01-10673 (___) |
| Debtor. | |

| | |
|---|---|
| In re | Chapter 11 |
| GASKET HOLDINGS INC., | Case No. 01-10684 (___) |
| Debtor. | |

| | |
|---|---|
| In re | Chapter 11 |
| J.W.J. HOLDINGS, INC., | Case No. 01-10685 (___) |
| Debtor. | |

5

DOCS_DE:31300.2

| | |
|---|---|
| In re | Chapter 11 |
| WELLWORTHY PROPERTY DEVELOPMENTS LIMITED, | Case No. 01-10773 (___) |
| Debtor. | |

| | |
|---|---|
| In re | Chapter 11 |
| WILLIAM C. JONES (POLYMERS) LIMITED, | Case No. 01-10719 (___) |
| Debtor. | |

## ORDER DIRECTING JOINT ADMINISTRATION OF CHAPTER 11 CASES

Upon the motion (the "Motion") of the above-captioned debtors and debtors in

possession (collectively, the "Debtors")[1] for entry of an order directing the joint administration

---

[1]     The U.S. Debtors are Carter Automotive Company, Inc., Federal-Mogul Corporation, Federal-Mogul Dutch Holdings Inc., Federal-Mogul FX, Inc., Federal-Mogul Global Inc., Federal-Mogul Global Properties, Inc., Federal-Mogul Ignition Company, Federal-Mogul Mystic, Inc., Federal-Mogul Piston Rings, Inc., Federal-Mogul Powertrain, Inc., Federal-Mogul Products, Inc., Federal-Mogul Puerto Rico, Inc., Federal-Mogul Tri-Way, Inc., Federal-Mogul U.K. Holdings, Inc., Federal-Mogul Venture Corporation, Federal-Mogul World Wide, Inc., Felt Products Manufacturing Co., FM International LLC, Ferodo America, Inc., Gasket Holdings Inc., J.W.J. Holdings, Inc., McCord Sealing, Inc., and T&N Industries Inc.

The English Debtors are AE Dayton Services Limited, AE Group Machines Limited, AE Holdings Limited, AE International Limited, AE Limited, AE Piston Products Limited, AE Sales (Africa) Limited, Aeroplane & Motor Aluminium Castings Limited, Amber Supervision Limited, Ashburton Road Services Limited, Associated Engineering Group Limited, Awncast Limited, Bearings (North-Western) Limited, Brake Linings Limited, Colvan Rubber Co. Limited, Contact 100 Limited, Cosmid Limited, Cranhold Limited, Dealings Limited, Dumplington Services Limited, Duron Limited, E W Engineering Limited, Edmunds, Walker & Co. Limited, Engineering Components Limited, Federal-Mogul Acquisition Company Limited, Federal-Mogul Aftermarket UK Limited, Federal-Mogul Bradford Limited, Federal-Mogul Brake Systems Limited, Federal-Mogul Bridgwater Limited, Federal-Mogul Camshaft Castings Limited, Federal-Mogul Camshafts Limited, Federal-Mogul Engineering Limited, Federal-Mogul Eurofriction Limited, Federal-Mogul Export Services Limited, Federal-Mogul Friction Products Limited, Federal-Mogul Global Growth Limited, Federal-Mogul Ignition (U.K.) Limited, Federal-Mogul

35

of the Chapter 11 Cases[2]; and upon consideration of the Motion and all responses thereto, and

the Affidavit of David M. Sherbin, Vice President, Deputy General Counsel and Secretary of

Federal-Mogul, in Support of First Day Motions; and due and proper notice of the Motion having

been given under the circumstances; and it appearing that this is a core proceeding under 28

U.S.C. § 157(a); and it appearing the Debtors are "affiliates" within the meaning of section

101(2) of the Bankruptcy Code; and it appearing that joint administration of the Chapter 11

Cases is appropriate pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1; and it

appearing that the relief requested is in the best interests of the Debtors, their estates and

creditors, it is hereby

ORDERED, that the Motion is granted; and it is further

---

Powertrain Systems International Limited, Federal-Mogul Sealing Systems (Cardiff) Limited, Federal-Mogul
Sealing Systems (Rochdale) Limited, Federal-Mogul Sealing Systems (Slough) Limited, Federal-Mogul Sealing
Systems Limited, Federal-Mogul Shoreham Limited, Federal-Mogul Sintered Products Limited, Federal-Mogul
Systems Protection Group Limited, Federal-Mogul Technology Limited, Federal-Mogul U.K. Limited, Ferodo
Caernarfon Limited, Ferodo Limited, FHE Technology Limited, Fleetside Investments Limited, F-M UK Holding
Limited, FP Diesel Limited, Friction Materials Limited, G.B. Tools & Components Exports Limited, Genthope
Limited, Greet Limited, Halls Gaskets Limited, Hepworth & Grandage Limited, High Precision Equipment Limited,
Inblot Limited, Instantwonder Limited, J.W. Roberts Limited, Kings Park Housing Limited, Lalton Limited, Lanoth
Limited, Lanoth Precision Equipment Limited, Leeds Piston Ring & Engineering Co. Limited, M.T.A. (Kettering)
Limited, Mantro Engineering Co. Limited, Mobile Distributing (Spares) Limited, Moores Plastic Units Limited,
Newalls Insulation Company Limited, Ontall Limited, Payen (Europe) Limited, Pecal Limited, Presswork-
Components Limited, Sintration Limited, Sourcelook Limited, Specialloid, Limited, STS (1996) Limited, TAF
International Limited, T&N Holdings Limited, T&N International Limited, T&N Investments Limited. T&N
Limited, T&N Materials Research Limited, T&N Piston Products Group Limited, T&N Properties Limited, T&N
Shelf Eight Limited, T&N Shelf Eighteen Limited, T&N Shelf Fifteen Limited, T&N Shelf Five Limited, T&N
Shelf Four Limited, T&N Shelf Fourteen Limited, T&N Shelf Nine Limited, T&N Shelf Nineteen Limited, T&N
Shelf One Limited, T&N Shelf Seven Limited, T&N Shelf Six Limited, T&N Shelf Sixteen Limited, T&N Shelf
Ten Limited, T&N Shelf Thirteen Limited, T&N Shelf Thirty Limited, T&N Shelf Thirty-One Limited, T&N Shelf
Thirty-Three Limited, T&N Shelf Three Limited, T&N Shelf Twenty Limited, T&N Shelf Twenty-Eight Limited,
T&N Shelf Twenty-Five Limited, T&N Shelf Twenty-Four Limited, T&N Shelf Twenty-Nine Limited, T&N Shelf
Twenty-One Limited, T&N Shelf Twenty-Six Limited, T&N Shelf Twenty-Two Limited, T&N Shelf Two Limited,
T&N Trade Marks Limited, T&N Welfare Trust Limited, TBA Belting Limited, TBA Belting (Residual) Limited,
TBA Industrial Products Limited, Telford Rubber Processors Limited, Telford Technology Supplies Limited, The
British Piston Ring Company Limited, The Washington Chemical Company Limited, Tinblo Limited, Touchdown
Adhesive Products Limited, Turner & Newall Limited, Turner Brothers Asbestos Company Limited, Tynoda
Limited, Vanwall Cars Limited, Wellworthy Limited, Wellworthy Property Developments Limited, and William C.
Jones (Polymers) Limited. Unlike all the other English Debtors, T&N Investments Limited is a Scottish rather than
English company and has not concurrently sought to commence administration proceedings in England.

[2]    Capitalized terms not otherwise defined herein have the meanings given them in the Motion.

36

ORDERED, that the Chapter 11 Cases shall be, and hereby are, consolidated for procedural purposes only and shall be administered jointly by the Court; and it is further

ORDERED, that nothing contained in this Order shall be deemed or construed as directing or otherwise effecting a substantive consolidation of the Chapter 11 Cases; and it is further

ORDERED, that the Clerk of the Court shall maintain one file and one docket for all of these jointly administered cases, which file and docket shall be the file and docket for Federal-Mogul Global, Inc.; and it is further

ORDERED, that pleadings in the Chapter 11 Cases shall bear a caption in the form of the joint administration caption set forth on Exhibit "A" attached hereto and incorporated herein by reference, which caption is approved in all respects, provided, however that only the Debtors shall be required to insert the footnote listing all Debtors in these cases in the caption;

ORDERED, that separate docket entries shall be made on the dockets of each of the Chapter 11 Cases (other than Federal-Mogul Global, Inc.), substantially as follows:

> "An order has been entered in this case directing the procedural consolidation and joint administration of the chapter 11 cases of Federal-Mogul Global Inc. and its affiliates that have concurrently commenced chapter 11 cases. The docket in the case of Federal-Mogul Global Inc., Case No. 01-10578 (_____) should be consulted for all matters affecting this case."

Dated: _____ 10/4, 2001

_____
The Honorable Sue L. Robinson

37

DOCS_DE:31300.2

CAUSE NO. 98-10-04083-E

DEBRA KULAW, Individually and as § IN THE DISTRICT COURT
Personal Representative of the Heirs §
And Estate of LEVAUGHN DARNOLD, §
Deceased, §
Plaintiffs §
§ CAMERON COUNTY, TEXAS
§
V. §
§
§
ABLE SUPPLY CO.; §
Defendants § 404TH JUDICIAL DISTRICT

## PLAINTIFFS' NOTICE OF NON-SUIT WITHOUT PREJUDICE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW DEBRA KULAW, Individually and as Personal Representative of the Heirs and

Estate of LEVAUGHN DARNOLD, by and through her attorney of record, and files this her Notice of

Non-Suit Without Prejudice as to Plaintiff's allegations of conspiracy against Defendant, GASKET

HOLDING, INC. (sued individually and as successor-in-interest to FLEXITALLIC GASKET CO.)

only.   Further, all claims by Plaintiff shall remain pending as to all other remaining Defendants.

All costs shall be taxed to the party incurring same.

Respectfully submitted,


DARREN P. McDOWELL
State Bar No. 24025520
PETER A. KRAUS
State Bar No. 11712980

3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
Telephone: 214-357-6244
Telecopier: 214-357-7252

ATTORNEYS FOR PLAINTIFFS

PLAINTIFFS' NOTICE OF NON-SUIT                                                            PAGE 1

EXHIBIT "2"



cc:

| | |
|---|---|
| Robert Wilkinson(Guard) | 28-762-3223 |
| Jerry Kacal(AC&S) | 713-621-9065 |
| Daniel Span (CS)·(HW) | 713-650-9701 |
| Mitchell Chaney (garlock) | 956-541-2170 |
| Frank Harmon(CC&S) | 713-752-8618 |
| Peter Moir(GI) | 214-953-6503 |
| Lisa Powell (ABLE) | 713-793-4221 |
| Donald Godwin (B&R/dresser) | 214-760-7332 |
| D. Ferguson McNiel(NARCO) | 713-615-5493 |
| Tom Taylor(RAPID/Amoco) | 713-220-4285 |
| Robert Bass(UNIROYAL) | 214-905-3976 |
| Gail Jenkins (Proko) | 409-832-4242 |
| Jim Riley(FW) | 713-651-0220 |
| James H. Powers (Certainteed) | 713-765-1799 |
| Lew Miltenberger (AP Green) | 817-820-0373 |
| Gary Elliston (Geskei Holding, Kaiser) | ~~713-~~ 214 210 2500 |
| John L. Hill (Met Life) | 713-225-3717 |
| Hubert A. Crouch, III (Federal Mogul) | 214-922-7101 |
| Timothy Hogan (Quigley) | 713-960-1527 |
| Franklin Poff, Jr. (GREFCO) | 903-832-8489 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed with the Court and sent to all counsel of record via facsimile, on this 2th day of October, 2001.

Darren P. McDowell