

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

OCT 3 0 2001

| | | |
|---|---|---|
| DEBRA KULAW, Individually and As Personal Representative of the Heirs and Estate of LEVAUGHN DARNOLD, Plaintiffs | § § § § § § | No. B-01-181 |
| v. | § § | |
| ACandS, Inc., Defendants. | § § | |
| IN RE: FEDERAL-MOGUL GLOBAL, INC. Debtor | § § § § § § | Case No. 01-10578 Chapter 11 (Pending in the United States Bankruptcy Court for the District of Delaware) |

PLAINTIFFS' RESPONSE IN OPPOSITION TO:
(A) Emergency Motion to Transfer Civil Action
Pursuant to 28 U.S.C. Section 157 (b)(5) for Venue Determination; and
(B) Motion for Expedited Hearing on Motion to Transfer Civil Action Pursuant to Mandatory
Provision of 28 U.S.C. Section 157(b)(5)

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Come now plaintiffs and file their opposition both to the Emergency Motion to Transfer the above action, allegedly pursuant to 28 U.S.C. Section 157(b)(5) and to the Motion for Expedited Hearing of the Motion to Transfer. The prime Motion shall be referred to as the "Transfer Motion." The Motion for Expedited Hearing shall be referred to as the "Hearing Motion." The Moving Party is referred to as "Garlock."

1

## I. PROCEDURAL HISTORY

1. Plaintiffs' case against Garlock seeking damages resulting from exposure to its asbestos containing was pending in state court on October 1, 2001 when Federal Mogul Corp., one of the defendants in the case filed a petition for reorganization pursuant to chapter 11 of the United States Bankruptcy Code (the "Code") in the Bankruptcy Court for the District of Delaware. Garlock is one of several non-debtor defendants.

2. On or about October 19, 2001, Garlock removed this case to this Court, (the "Removal Court"), pursuant to the removal provisions of 28 U.S.C. Section 1452 (a).

3. Contemporaneously with the filing of its Notice of Removal, Transfer Motion, and Hearing Motion in this case Garlock filed substantially identical sets of Motions in 80 or more pending cases in which both it and Federal Mogul, the bankruptcy debtor, are defendants. These Removals, Transfer Motions, and Hearing Motions interrupted litigation then in progress, disrupted the scheduling of litigation and procedures attendant to such litigation, and delayed all such events in the removed cases. Delay and the obstruction of the process were Garlock's intended goals. Such tactics are not new to the asbestos wars. Having consistently failed to gain stays of actions against non-debtors because one of the multiple defendants filed a bankruptcy petition, some target asbestos defendants have been more creative. See <u>Nickum v. Brakegate, Ltd.</u>, 128 B.R. 648, 649 (C.D. Ill. 1991), which rejects, in identical circumstances, "a nimble attempt to bootstrap State Court Actions into federal cases by way of the bankruptcy court."

4. Plaintiffs have filed their Motion to Remand this case to state court. They allege that remand is proper and appropriate for all and/or any of the following reasons:

    i. This is not a case "related to" the bankruptcy case pending in Delaware.

    ii. Mandatory abstention applies.

2

    iii.    Permissive and/or discretionary abstention should be employed;

    iv.    There are many profoundly important equitable considerations which warrant remand.

The issues pertaining to remand are explicated in Plaintiffs' Motion for Remand, for lack of subject matter jurisdiction, for mandatory abstention, or for discretionary abstention or equitable remand (the "Remand Motion") to which the Court is respectfully referred.

5.    It is incumbent upon this Court to first determine its own jurisdiction. Jurisdiction is the overriding and paramount consideration of any United States District Court deciding a remand motion, and it is particularly important here. The Transfer Motion and the Hearing Motion must be deferred until after the jurisdictional issues have been resolved. Should this Court retain jurisdiction of the case, or a portion thereof, the Transfer Motion, upon due consideration, should be denied because, simply put, there is no mandatory transfer provision either expressed in, or properly implied from, the statutory provisions of 28 U.S.C. § 157(b)(5). The fact that the "Home Court" i.e. the Delaware Bankruptcy Court in which the bankruptcy is pending has the power to leave a removed case in the Removal Court, or in the interest of administration of the bankruptcy estate, transfer the case to itself, in no way directs or even suggests that the Removal Court should, without hearing, peremptorily mail the file to the Home Court. And, there is significant authority to the effect that a Transfer Motion must be filed only in the Home Court. See <u>In re Pan Am Corporation</u>, 16 F.3d 513 (2nd Cir. 1994).

    II.    <u>CORRECTION AND ADDITIONS TO GARLOCK'S PRELIMINARY STATEMENT REGARDING REMOVAL AND THIS MOTION</u>

6. The heart of Garlock's argument seeks to persuade this court to significantly amend the Bankruptcy Code and related statutes by judicial decree. Garlock believes that because the Home Court and, by order of reference, the United States Bankruptcy Court for the District of Delaware, has ultimate power to determine whether or not to consolidate pending litigation that it must follow that the Removal Court has neither the responsibility, nor indeed even the discretion, to make those significant determinations regarding jurisdiction for which the Statutes provide. According to Garlock, the Removal Court is an interim postal clerk. This is not so, as Judge Knapp explained:

> The district court is not a legal way station, nor subject matter jurisdiction something that can be invoked solely to assist the transfer of a case from court to court. And, indeed, if we were so to put the cart before the horse, we would thereby also deny plaintiffs not only the forum of their choice but perhaps the possibility of a jury trial, all without ever having determined whether the action was indeed "related to" the Maryland bankruptcy so as to confer jurisdiction."

> Wall v. Merrill Lynch Pierce Fenner & Smith Inc., 1992 WL 77625, *2 (S.D. N.Y., March 26, 1992).

7. It is obvious that had Congress wished to state that any removed case would go immediately to the Bankruptcy Court where the bankruptcy pends, Congress had the power and drafting capability to enact a statute so stating. Congress did not, and for good reason. Before considering the statutes, and how they are, in fact, properly coordinated to serve a proper purpose, it may be helpful to discuss certain of the broad assumptions featured in the Transfer Motion. Paragraph 5, commencing on page 3 of the Transfer Motions posits that Garlock's claims against Federal Mogul or its subsidiaries, hereinafter the indemnification/contribution claims or

"I/C Claims" are very important and obviously would affect the size of the estate and the length of time the bankruptcy proceedings will be pending (Transfer Motion Page 3). It is not so. In

4

the instant case Garlock has never filed in paper form any such claim.[1] While the Standing Order may (or may not) afford Garlock such a theoretical claim, it is almost universally true through thousands of past cases, that the alleged non-contractual cross claims and claims for indemnity between otherwise unrelated asbestos defendants are never prosecuted and are never the subject of monetary settlement as an incident of the resolution of the personal injury case.

8. Additionally, if and to the extent Garlock wishes to prosecute an I/C claim against Federal Mogul it may, and indeed must, do so through the claims procedure established in the bankruptcy. And, unless Federal Mogul waives the Automatic Stay or Garlock gains relief (which is highly unlikely), no finding in Plaintiffs' case against Garlock and the other defendants would bind Federal Mogul as to fact or law. And, it is also extremely doubtful, contrary to Garlock's assertion, that an I/C Claim is protected by a right of jury trial in the Bankruptcy Court. On information and belief, in the twenty largest asbestos bankruptcies, no I/C Claim has ever been tried to a jury in the bankruptcy court.

9. To bolster the alleged importance of its I/C Claims, Garlock cites a number of cases in the extensive footnote number 1 on page 3. These cases, i.e. Robins, Cossman, Apex, Philippe, and Brentano's are all inapposite. In each such case indemnification was established *as a matter of contract*. The only issue was amount. The citation of Robins is particularly disingenuous, as that case took pains to explain that its decision about bankruptcy jurisdiction was based on the existence of contractual indemnity, and specifically distinguished the leading case of Pacor, Inc. v. Higgins, 743 F. 2d 984 (3d Cir. 1984), upon which plaintiffs rely in their motion for remand. Pacor was distinguished because there, as here, no contractual indemnity was involved. See

---

[1] Moreover, in the entire history of Federal Mogul's involvement in asbestos litigation, during which it has resolved hundreds of thousands of cases, Garlock has never sought, let alone obtained, one cent in contribution from it. Nor has Garlock ever taken any discovery, filed any motions, or taken any other formal or informal action in support of a contribution claim against Federal Mogul. See affidavit of Jeffrey Simon, attached as exhibit C to plaintiffs' motion for remand.

5

<u>A.H. Robins Co. v. Piccinin</u>, 788 F. 2d 994, 1000-01 (4th Cir. 1986). Here, the totality of I/C Claims are non- contractual, contested as to both liability and amount, highly speculative, and by historical experience so insubstantial as to be universally ignored. They are virtually frivolous.

10.   Finally, there is a theme in Garlock's pleadings that its I/C Claims are core claims, or would be core claims as defined in 28 U.S.C. Section 157 but for the specific disallowance of personal injury claims found at Section 157 (b)(2)(B). But Garlock's claims against Federal Mogul lie neither in personal injury tort or wrongful death. They are I/C claims, which arise, if at all, under state law, may only arise after Garlock pays in respect of a determined liability, can be tried without reference to the rights and duties of a bankruptcy debtor, were "pending" before the bankruptcy, and have, if any at all, a very insubstantial and remote effect on the bankruptcy estate. Under no rational interpretation are these "core" claims.

### III.   <u>THE COURT MUST FIRST DETERMINE ITS JURISDICTION</u>

11.   Utilizing the statutes as they are written, excluding the radical amendment sought by Garlock, the Removal Court, i.e. this Court, would expect in a personal injury case to be moved to deny or relinquish jurisdiction and hence to remand the case to the State Court from which it came, for any or all of the following reasons:

   i.   Because, at the very most, Garlock's I/C claims have only a peripheral connection to the Federal Mogul bankruptcy, it is argued in the motion for remand that the Garlock I/C claims are not "related to" the Federal Mogul bankruptcy and, accordingly, no jurisdiction at all rests in this Removal Court.

   ii.   Pursuant to 28 U. S. C. Section 1334 (c)(2), upon the timely motion of the Plaintiffs the Court shall abstain, i.e. abstention is mandatory even if the case is "related to" the Federal Mogul bankruptcy case, <u>but</u> does not arise under title 11, <u>and</u> <u>if</u> the state action has been

6

previously commenced and can be timely adjudicated, <u>and</u> <u>if</u> there is no basis otherwise for the removing party to assert federal jurisdiction and thereby resist the jurisdiction of the state court. As set forth in the motion for remand mandatory abstention is appropriate in this case.

   iii. The same statute provides for discretionary abstention at 28 U.S.C. Section 1334(c)(1) when in the interest of justice, or in the interest of comity with state courts or respect for state law, the Removal Court determines that the state forum is the better forum. Again, Plaintiffs suggest in their Remand Motion that each ground for discretionary abstention is found here. The Plaintiffs argue, and the great weight of authority supports the proposition, that whenever possible, unless the matters <u>sub judice</u> are of sweeping and paramount importance in the bankruptcy case, remand is the preferred result. <u>Luevano v Dow Corning Corp</u>. 183 B.R. 751, 752-53 (W.D. Tex. 1995) and the many cases therein cited.

   iv. Alternatively, the Congress has provided the broadest possible framework and encouragement for the Removal Court, (after review of all material facts and circumstances) to remand out to State Court pursuant to 28 U.S.C. Section 1452 which provides:

> "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground..."

The equitable bases for remand are set out in plaintiffs' motion for remand. Suffice it to say that Garlock's true purposes, which are to delay and obstruct, will become manifestly clear. The injustice to these Plaintiffs, the inconvenience to all other parties and witnesses of having the case delayed and/or placed in administrative limbo by a mailing to the Delaware Court without legal preface or even initial consideration, will be all too apparent. The equities are substantial, and they rest solely with the Plaintiffs.

12. All of these issues having been timely and properly raised by Plaintiffs, this Removal Court must first determine its own jurisdiction. That it must first deal with jurisdiction <u>vel</u> <u>non</u>,

and voluntary relinquishment of jurisdiction if warranted, has always been considered appropriate, but it is now absolutely and unquestionably the law, as recently declared by Justice Scalia in Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 94, 118 S.Ct. 1003, 1013 (1998):

> Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 19 L.Ed. 264 (1868). "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it. *Great Southern Fire Proof Hotel Co. v. Jones,* supra, at 453, 20 S.Ct., at 691-692. The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of *95 the judicial power of the United States' and is 'inflexible and without exception." *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed 462 (1884).

It is hard to imagine a more definite statement. In 1999, the Supreme Court again found occasion to mention the requisite order of precedence: "....Ordinarily, of course, this or any other Article Three court must be sure of its own jurisdiction before getting to the merits." Ortiz v. Fibreboard Corp. 527 U.S. 815, 831, 119 S.Ct. 2295, 2307 (1999). Thus, utilizing the statutes as they are written, the Removal Court, the more local court, will use not only its judicial knowledge but its knowledge of local circumstances and conditions to weigh evidence and make a determination as to whether or not to remand. When remanded, there is no further federal jurisdiction save and except that protecting the bankrupt debtor.

13. We take it that Garlock concedes that the entry of the Order of Transfer to the United States District Court in Delaware is a judicial act. Without jurisdiction no Court can or should attempt to enter such an order. Hence, to suggest that the Court simply pack up the file and mail it, without thought, argument, or consideration, is highly inappropriate. It suggests that a

Removal Court should abdicate its judicial responsibility solely to enable a reluctant defendant to escape the time of trial. Did the Congress miss something? Are the statutes either incomprehensible or unworkable, or do they deny Garlock such due process or fundamental fairness that the Court should disregard them and, as Garlock urges, interpose an altered version of 28 U.S.C. 1412 across all of the statutes? The answer is no.

14. These precise issues, in a far more complicated case, came before the United States District in the Northern District of Oklahoma in a matter styled <u>NI Fuel Company, Inc. v. Steven E. Jackson</u>, 257 BR 600 (N.D. Okla. 2000). Fraud actions commenced in early April, 2000 against a variety of defendants. Some, but not all, defendants became the subject of involuntary bankruptcy proceeding initiated five days after the filing of the state law fraud actions. Several defendants filed a notice of removal. In addition, the three bankrupt entities themselves filed a separate notice of removal. The plaintiffs asserted successfully at argument that at least some of their claims were not related to the bankruptcy cases, and consequently the United States District Court, the Removal Court, lacked jurisdiction to consider those claims at all. Weighing all the evidence, the Court found it unnecessary to adjudge precisely whether or not the claims were "related," or sufficiently related to the bankruptcy. Judge Burrage held:

> We conclude that the state action is, at most, a non-core proceeding which is merely 'related to' the Debtors bankruptcy case, but may be a proceeding which is not even 'related to' the bankruptcy case and, therefore, is not subject to Bankruptcy Court jurisdiction. Either decision leads to the same result: the Bankruptcy Court must remand the action to State Court. If the State Court action is 'related to' the Debtors bankruptcy case, the Bankruptcy Court, for the reasons discussed below, Aragon refusing to abstain from hearing it under 28 U.S.C. § 1334 (c)(2). On the other hand, if the Bankruptcy Court lacked jurisdiction over the State Court action, removal of the action to the Bankruptcy Court was improper under 28 U.S.C. § 1452(a) thus requiring remand under 28 U.S.C. § 1447(c) and 1452(b)...257 B.R. 600 at 608.

9

15. Then, the Court retraced its ground to discuss a question central to the issue before this Court, which Judge Burrage separated and identified for special scrutiny. This section of his opinion needs no introduction other than its title:

"WHETHER REMAND OR TRANSFER SHOULD BE DECIDED FIRST"

Id. at 609. The court noted that the bankruptcy debtors (obviously a stronger voice than Garlock) had asserted that the action must first be transferred to the Bankruptcy Court in Texas and that the Texas Court, and only that Court, should decide whether the action should be remanded to the Oklahoma State Court. Unpersuaded by the authorities brought to his attention, because they concerned cases in which the Transfer Motions were improperly filed, the Court dug deeper into the issue. It found that some case authority does support a transfer to the Bankruptcy Court, but transfer is only to be so implemented after the Removal Court determines that a Bankruptcy Court, in a particular factual instance, may have special expertise in determining the importance and/or relationship of the removed case to the bankruptcy case. There being no such consideration in his case (or in ours), Judge Burrage fully endorsed the Magistrate Judge who had recommended that the remand issue be first considered in all aspects by the Removal Court. He held:

> "In this action, the Magistrate Judge concludes that the remand issue should be decided before the issues relating to transfer. First, no authority has been cited in this Circuit, and none has been found which requires the Court to transfer this action to the pending bankruptcy proceeding for that Court to determine the remand issues. Second, as noted above, the Court is concerned about several jurisdictional issues. These jurisdictional issues should be addressed before deciding whether the action should be transferred. See e.g. *Work/Family Directions, Inc. v. Children's Discovery Centers, Inc.*, 223 B.R. 40 (1st Cir BAP 1998) ("This Court should decide the jurisdictional issues raised by the Defendants. If there is a jurisdiction defect and the parties *612 and the action are not properly before the Court, any action taken by the Court could be void.")
> ....

10

"Because this is a Report and Recommendation, the Magistrate Judge has additionally addressed the transfer issues. With regard to these issues, the Magistrate Judge recommends that this action not be transferred."

In this very analogous case the Court weighs all the circumstances, opining that while at first everything seemed exceptionally complicated, "a closer look reveals a fairly common scenario where one or more defendants in a multi party lawsuit is forced into bankruptcy...." 257 B.R. 600 at 612. The Court goes through the precise analysis suggested in this Response, analyzing each of the statutes, applying the facts to each of the statutes, and harmonizing that statute with each other and with Congressional intent.

It is fair to state that some arguments made by parties opposing remand before Judge Burrage had more substance than any argument made or which could be made by Garlock. Nonetheless, after analysis, and for good reasons carefully stated, the District Court adopted the opinion of the Magistrate, <u>first</u>, that the issue of remand was jurisdictional as to certain issues and that these jurisdictional elements must be considered before the transfer issue is addressed, <u>second</u>, that the equities favored remand on many grounds, including permissive abstention and, <u>third</u>, that transfer of the remaining non-derivative claims to the Bankruptcy Court in the Southern District of Texas was not warranted under either the general venue statute or the bankruptcy venue statute. Plaintiffs urge that the same results must be reached herein.

## CONCLUSION

The provisions of the United States Code regarding removal, consideration of jurisdiction, and, if jurisdiction is retained, consideration of transfer in whole or part, do not require ad hoc judicial amendment at the instance of Garlock. Appropriate review of the facts and circumstances compels that all jurisdictional issues must be first considered. In this case

11

there is a high likelihood of remand. If remand is not fully granted, then, and only then, should the Transfer Motion be heard. It should be denied.

WHEREFORE, Premises Considered, the Plaintiffs pray that their Objections to both the Motion to Transfer and to the Expedited Motion for Hearing be considered and that upon such consideration the Court should deny the Motion for Expedited Hearing and should first determine the Motion to Remand before reaching Garlock's Transfer Motion. If, and to the extent that the Motion to Remand is not fully granted, then these Plaintiffs pray that the Court, after due consideration, deny the Motion to Transfer; and the Plaintiffs pray for such other and all further relief as shall be just and proper in the premises.

Respectfully submitted,

WATERS & KRAUS

*Charles S. Siegel* w/permsn

Charles S. Siegel
State Bar No. 18341875
Federal I.D. 15736
Peter A. Kraus
State Bar No. 11712980
3219 McKinney Avenue
Suite 3000
Dallas, Texas 75204
(214) 357-6244
(214) 871-2263 facsimile

Henry Simon
Simon, Warner & Doby, LLP
1700 City Center Tower II
301 Commerce Street
Fort Worth, Texas 76102
(817) 810-5250
(817) 810-5255 facsimile

Frank Costilla
State Bar No. 04856500
Federal I.D. 1509
Law Offices of Frank Costilla
5 East Elizabeth Street
Brownsville, Texas 78520
(956) 541-4982
(956) 541 3152 telecopier

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served on all counsel of record on this the 30th day of October, 2001.

_____
Charles S. Siegel

w/ permission

13