

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**NOV 0 8 2001**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DEBRA KULAW, Individually and | § | No. B-01-181 |
| As Personal Representative of the Heirs | § | |
| and Estate of LEVAUGHN DARNOLD, | § | |
| Plaintiffs | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| ACandS, Inc., | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| IN RE: | § | Case No. 01-10578 |
| FEDERAL-MOGUL GLOBAL, INC. | § | Chapter 11 |
| Debtor | § | (Pending in the United States |
| | § | Bankruptcy Court for the |
| | § | District of Delaware) |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
## MOTION FOR REMAND

This case was removed on October 19, 2001, after trial had commenced.
Plaintiffs filed a motion for remand on October 22, and removing defendant Garlock Inc.
filed an "initial reply" to the motion for remand on October 23, which was received in the
mail by plaintiffs' counsel on October 29. Plaintiffs file this reply brief in support of
their motion for remand and would respectfully show as follows:

### I.    INTRODUCTION

At the time this case was removed, plaintiffs' counsel did not know that virtually
all of their other asbestos cases were also being removed to federal court by Garlock.
The present case was just one of over 80 notices of removal filed by Garlock on October

19 or 22 in federal courts across Texas. Each of the cases involves claims for asbestos-related injuries or death by plaintiffs represented by the firm of Water & Kraus, LLP, the undersigned plaintiffs' counsel. Although Garlock is a defendant in tens of thousands of asbestos cases across the country, including thousands of cases in Texas, and although the same asserted basis for removal would exist in every such case, Garlock did not remove any other cases. Instead, only the claims of persons represented by Waters & Kraus were removed. See affidavit of Charles Siegel, attached as exhibit A.

Garlock has acknowledged that it removed only Waters & Kraus cases because it views Waters & Kraus settlement demands as unreasonable. See Garlock's reply to plaintiffs' response to Garlock's motion to supplement, in <u>Kennamer v. Able Supply Co.</u>, No. C-01-477, Southern District of Texas, attached as exhibit B, at 4.

## II.    THE NOTICE OF REMOVAL WAS DEFECTIVE

Plaintiffs previously pointed out that defendant's notice of removal did not even disclose the identity of the relevant debtor. Defendant's "initial reply" denied this at p. 2, stating that the "removal petition, however, specifically named the party-debtor as Gasket Holdings, Inc." Yet on October 31, Garlock filed its "Supplement to Application and Notice of Removal," in which it stated that "it may not be readily evident to the Court" who the debtor is.

As set forth in plaintiffs' motion for remand, the removal notice was required to articulate a plausible basis for bankruptcy jurisdiction. Inasmuch as Garlock admits that it did not even identify a debtor, the removal notice was defective.

III.     THE IMPERMISSIBILITY, AND UTTER FUTILITY, OF TRANSFER

There is nothing mandatory about 28 U.S.C. § 157(b)(5).  Nothing in it remotely

suggests that this Court should, or can, abdicate the duty of any federal court to determine

its jurisdiction.  "A district court must inquire into its jurisdiction, even if the parties have

not questioned it."  Copling v. Container Store, 174 F.3d 590, 594 (5th Cir. 1999).

Indeed, if Garlock's position were the law, why would Congress have provided so

clearly, in 28 U.S.C. § 1452, that removal is to the district court where the state case is

pending, and that such court may remand to state court?  And it should hardly be

necessary to point out that subject matter jurisdiction and venue are not the same, and that

a resolution of the former must precede the latter.  E.g., United States v. Thistlethwaite,

110 F.3d 861, 864 (2d Cir. 1997) ("The venue provisions do not confer or deny

jurisdiction; they assume that the court in question has subject matter jurisdiction, and

they simply limit the locations in which the action may be brought.").  As another Texas

district court put it, in an asbestos case in which defendants insisted that the court not rule

on plaintiffs' motion for remand, but let the case be transferred to the MDL court instead,

"If this  Court lacks subject matter jurisdiction, then it must remand this case to the state

court from whence it came....This case no more belongs in federal court than it does at

Multi-District Litigation ("MDL").  Faulk v. Owens-Corning Fiberglas Corp., 48 F.Supp.

2d 653, 659 (E.D. Tex. 1999).

Moreover, Garlock studiously avoids the obvious reason why transfer would be

such a futile act:  Pacor, Inc. v. Higgins.  As detailed in our motion for remand, this case

holds squarely that claims between plaintiffs and nonbankrupt co-defendants in asbestos

cases are not within federal bankruptcy jurisdiction: "We therefore conclude that the

action brought by Higgins [the plaintiff] against Pacor [the nonbankrupt co-defendant] is

not 'related to' bankruptcy, and that therefore there was no jurisdiction to remove the

matter to federal court." 743 F.2d at 996 (footnote omitted.). This rule applies even in

the absence of a severance. Hanna v. Philadelphia Asbestos Co., 743 F.2d 996, 1001 (3d

Cir. 1984).

Since this holding of the Third Circuit is binding upon the court to which Garlock

seeks transfer, the United States District Court for the District of Delaware, the foregone

result of any transfer would be a remand of plaintiffs' claims against Garlock, and all

other nonbankrupt defendants, to state court. What purpose could possibly be served by

transfer, then, other than months of delay? We respectfully submit that delay is exactly

what has motivated this entire removal effort.

IV.     "RELATED TO" JURISDICTION

Garlock is correct that there was a defendant in this case known as Gasket

Holdings, which is a subsidiary of Federal Mogul Corp. and which is also a debtor in the

same bankruptcy proceedings. This defendant was nonsuited in state court on October

12, but Garlock is also correct that this nonsuit inadvertently nonsuited only conspiracy

claims, and not all claims. Although the debtor was not even named in the notice of

removal, then, there was technically a debtor in this case at the time of removal. This fact

is of no significance, however, because under the rule of Pacor, the presence of a

bankrupt entity in the case does not change the outcome: there is still no bankruptcy

jurisdiction over the claims by the plaintiffs against the non-bankrupt defendants. Hanna,

supra, 743 F.2d at 1001.

Garlock virtually ignores <u>Pacor</u>,  and omits any mention of <u>Nickum v. Brakegate,</u> <u>Ltd.</u>, 128 B.R. 648 (C.D. Ill. 1991), appeal dism'd, 942 F.2d 1223 (7th Cir. 1991), which also holds that "related to" jurisdiction does not exist in asbestos cases against nondebtor defendants, even where those defendants have contribution claims against bankrupt co-defendants, and accordingly rejects "a nimble attempt to bootstrap state court actions into federal cases by way of the bankruptcy court." Id. at 649.  Also ignored is <u>McCratic v.</u> <u>Bristol-Myers Squibb Co.</u>, 183 B.R. 113 (N.D. Tex. 1995), which reaches the identical result in the breast implant context.

In the Court's evaluation of subject matter jurisdiction, it is important to understand the phantom nature of these alleged cross-claims.  At the time of removal, Garlock had never filed an actual cross-claim against Gasket Holdings.  While the Cameron County standing order does provide that defendants are deemed to have filed cross-claims against each other, and also that such cross claims are deemed dismissed 30 days after the cross-defendant has been dismissed by the original plaintiff,  Garlock had never filed a formal claim on paper.  Similarly, it had never sought contribution informally, had never conducted any discovery, and had never otherwise prosecuted its claim for contribution.  The cross-claim which is the asserted basis of jurisdiction, then, exists, if at all, only in the most fictional, attenuated sense.

The utter insignificance to Garlock of its own alleged cross-claim against the debtor, and Garlock's complete insincerity in arguing that the existence of a cross-claim is a basis for removal of these state court cases, is further demonstrated by Garlock's representations to other courts to which it has removed Waters & Kraus cases.  In the El Paso Division of the Western District, one business day after filing a notice of removal, a

party is required to execute and file with the Clerk's office a pleading entitled
"Supplement to JS 44 Civil Cover Sheet To Be Used When Filing A Removal Case."
That pleading required the Garlock to disclose and list separately "each counterclaim,
cross-claim, or third-party claim still remaining in the case." Garlock's response to that
request for disclosure was telling: "None known to this defendant."

The Court should understand that this is entirely typical, for in the hundreds of
thousands of cases in which Garlock and Gasket Holdings, Inc. have been co-defendants,
Garlock has never actually sought contribution or indemnity from Gasket Holdings.
According to chief national counsel for Gasket Holdings' parent, Federal Mogul Corp.,
for the last 16 years, Garlock and Federal Mogul have been co-defendants in
approximately 250,000 cases, and Garlock has been a co-defendant with another
subsidiary in several hundred thousand cases as well. Garlock has never demanded, let
alone collected, one cent in contribution from any Federal Mogul entity. Garlock has
never deposed a Federal Mogul witness and has never so much as propounded a single
interrogatory to Federal Mogul. In fact, other than the imaginary cross-claims "deemed"
to have been filed by all defendants against each other, under standing orders governing
asbestos cases in certain jurisdictions, Garlock has never filed a single actual claim for
contribution or indemnity against Federal Mogul. See affidavit of Jeffrey Simon,
attached as exhibit C.

In an asbestos case removed just last month on the same grounds, and summarily
remanded the next day, the United States District Court for the Southern District of
Mississippi refused to base jurisdiction upon "such immaterial and insubstantial cross-
claims." In <u>Johnson v. ACandS, Inc.</u>, No. 1:01CV408GR (S.D. Miss., Oct. 3, 2001)

(order attached as exhibit D), one defendant, U.S. Gypsum Co., declared bankruptcy on

June 25, 2001. This defendant, along with another defendant named Flexitallic, Inc.,

were dismissed by plaintiffs on September 18, 2001. Flexitallic declared bankruptcy on

October 1, 2001, and the remaining defendants removed the case the next day.

Upon plaintiffs' motion for remand, the Court first held that since claims for

indemnity do not accrue until the indemnitee suffers loss, the cross-claims were

"nonjusticiable" and thus "irrelevant:"

> From the outset, the Court notes that actions for indemnity do not accrue
> until the primary defendant sustains loss or is cast in judgment. See
> Meloy v. Conoco, Inc., 817 F.2d, 275, 280 (5th Cir. 1987); Marathon Pipe
> Line Co. v. Drilling Rig Rowan/Odessa, 761 F. 2d 229, 235-36 (5th Cir.
> 1985); Orient Mid-East Lines, Inc. v. A Shipment of Rice, 496 F. 2d
> 1032, 1042 (5th Cir. 1974). "The allegations of the complaint against the
> indemnitee are irrelevant to the indemnitor's obligation to pay." Meloy,
> 817 F. 2d at 280. In this instance, the defendants' cross-claims for
> contribution, like indemnity, are irrelevant as they are unripe for
> adjudication. Further, because there is no actual or imminent injury there
> is no standing. Consequently, the claims which form the basis for removal
> are nonjusticiable claims, and the Court must remand the case to the
> Circuit Court of Holmes County.

Id. at 2. The court next held that, notwithstanding the provision of the local standing

order which deemed cross-claims to be filed, the order also deemed them to be severed.

But even had they not been severed, the cross-claims could be "seen as constructively

dismissed due to the fact that such claims shall mandatorily be dismissed, by no later than

30 days from September 18, 2001, the date the Order of Dismissal was filed .... The

Court shall not condone removal based upon such immaterial and insubstantial cross-

claims. The Court therefore finds that the defendants' cross-claims are moot." Id at 3.

The same is true here. The cross-claim upon which jurisdiction is based is

"immaterial and insubstantial," and should not form the means by which a nonbankrupt

defendant can remove an otherwise unremovable case.  This is simply a garden variety, state court asbestos case that involves no real claims against the debtor in question.

## IV.  PLAINTIFFS' DISMISSAL OF THE DEBTOR WITH PREJUDICE

On November 5, plaintiffs filed a notice of dismissal with prejudice as to Gasket Holdings and all related entities.  Under both federal and state law, a dismissal with prejudice constitutes an adjudication on the merits in a defendant's favor, barring any further litigation of the issues.  Kaspar Iron Works, Inc. v. Leco Engineering & Mach., Inc., 575 F.2d 530, 534 (5th Cir. 1978) ("It is clear that a stipulation of dismissal with prejudice, or, for that matter, a dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action.");  Lelsz v. Kavanagh, 903 F.Supp 1037, 1040 (N.D. Tex. 1995);  Ritchey v. Vasquez, 986 S.W.2d 611, 612 (Tex. 1999);  Thomas v. Knight, 52 S.W.3d 292, 295 (Tex. App. – Corpus Christi 2001, pet filed).  Plaintiffs' dismissal of all claims against the debtor thus eliminates any right of recovery against them, whether in a tort suit or in a bankruptcy proceeding.

A claim for contribution depends upon the joint and several liability of the party from whom contribution is sought for the same harm.  Beech Aircraft Corp. v. Jinkins, 739 S.W.2d 19, 21 (Tex. 1987); see also Singleton v. New York Underwriters Ins. Co., 739 F.2d 198, 200 (5th Cir. 1984); Garza v. Arizona Refining Co, 634 F.Supp. 959, 962 (S.D. Tex. 1986);  F.D.I.C. v. Niblo, 821 F.Supp. 441, 457 (N.D. Tex. 1993).  Indemnity, on the other hand, is an all-or-nothing proposition: if allowed, it shifts the entire burden of paying the judgment from one tortfeasor to another, and it also depends upon the joint

and several liability of the indemnitor and indemnitee. Hardy v. Gulf Oil Corp., 949 F.2d
826, 829-30 (5th Cir. 1992).

Since the dismissals with prejudice mean that plaintiffs cannot recover from the
debtors, Garlock cannot recover from them either. If a plaintiff cannot recover against a
party, then a defendant cannot recover contribution against that party. C&H Nationwide,
Inc. v. Thompson, 903 S.W.2d 315, 320 (Tex. 1994) (noting "the general rule that a
person is not liable to a defendant if he is not also liable to the plaintiff."); Shoemake v.
Fogel, Ltd., 826 S.W.2d 933, 935 (Tex. 1992) ("A defendant's claim of contribution is
derivative of the plaintiff's right to recover from the joint defendant against whom
contribution is sought."); Varela v. American Petrofina Co. of Texas, 658 S.W.2d 561,
562 (Tex. 1983); Hunter v. Ft. Worth Capital Corp., 620 S.W.2d 547, 553 (Tex. 1981)
("Neither contribution nor indemnity are recoverable from a party against whom the
injured party has no cause of action."); Eslan Thermoplastics v. Dynamic Systems, Inc.,
49 S.W.3d 891, 902 (Tex. App. -- Austin 2001, n.p.h.).

It should be stressed that subject matter jurisdiction here does not turn on the
above principle: Pacor, Hanna, Nickum, and the other authorities cited in plaintiffs'
motion for remand make clear that the cross-claim Garlock advances here -- even if it
had any legal force -- does not suffice for "related to" jurisdiction over plaintiffs' claims
at all. The dismissals with prejudice simply are another reason why Garlock's claims for
contribution have no effect whatsoever on the debtor's estate.

V.    MANDATORY ABSTENTION

In plaintiffs' motion for remand, we detailed how the criteria for mandatory
abstention are met in this case. Garlock devotes less than half of one page of its remand

response, at p. 15, to this issue. Garlock doesn't dispute that plaintiffs fulfill the criteria, but seems to argue that mandatory abstention is unavailable because 28 U.S.C. §157(b)(4) exempts from mandatory abstention, by reference to §157(b)(2)(B), "contingent or unliquidated personal injury tort or wrongful death claims against the estate...." While plaintiffs' claims against Garlock and the other nonbankrupt defendants are personal injury claims, however, they are not claims *against the estate*. Instead they are claims against non-bankrupt entities, and so are not exempt from mandatory abstention. E.g., Spitzfaden v. Dow Corning Corp., 1995 WL 662663, *2 (E.D. La., Nov. 8, 1995) ("The instant personal injury claims insofar as they relate to the implant co-defendants are not against the estate. Therefore, §157(b)(4) is inapplicable."); see also A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1012 (4th Cir. 1986) ("Section 157(b)(2)(B) excerpts from the definition of core proceedings, personal tort claims against the debtor."). As this is apparently Garlock's only challenge to mandatory abstention, the Court should reject it and decline to exercise jurisdiction.

In a thorough review of these issues in the mass tort context, Judge Biery held that mandatory abstention was required. Citing Pacor, Nickum, and other cases, Judge Biery noted that:

> [F]ederal courts in asbestos litigation, after Johns-Manville filed for bankruptcy, refused to permit non-bankrupt defendants to invoke federal removal jurisdiction so as to obtain a transfer of state claims to a federal distant forum. In asbestos cases, claims against co-defendants are to proceed and no stay is to issue based solely on the existence of pending bankruptcy proceedings involving a debtor defendant.... The independent state court claims of non-bankrupt defendants do not have impact on bankrupt defendants and, therefore, the federal court must abstain from hearing the proceeding.

Luevano v. Dow Corning Corp., 183 B.R. 751, 752-53 (W.D. Tex. 1995).

In several recent cases involving allegations of joint liability among asbestos defendants for certain settlement payments, Texas federal courts have ordered mandatory abstention.  Just last week, in <u>Adams v. Armstrong World Ind., Inc.</u>, No. A-01-CA-565-SS, attached as exhibit E, Judge Sparks accepted defendants' argument that "related to" jurisdiction existed because in the event of success by the plaintiffs, defendants "will sue [the debtors] for indemnification under an agreement" among various asbestos defendants.  The existence of a contractual indemnity claim does suffice for "related to" jurisdiction, and this situation has specifically been distinguished from the common law contribution claim at issue here.  See, e.g., <u>A.H. Robins</u>, supra, 788 F.2d at 1000-01.

Nonetheless, the court found both mandatory and discretionary abstention applicable. Judge Sparks found that "[t]his case involves the application of state law has long been pending before the state court and was on the eve of possible resolution when the defendants removed it to this Court.  Out of fairness to the plaintiffs and in the interest of comity with state courts, this Court exercises its discretion to abstain from hearing this case, as other courts have done."  Exhibit E at 7-8 (footnote omitted).  Exactly the same is true in this case.

Judge Briones had earlier reached the same result in <u>Lupercio v. GAF Corp.</u>, No. EP-01-CA-228-DB (W.D. Tex. Oct. 19, 2001) (attached as exhibit F).  Although "related to" jurisdiction was held to exist because the debtors had *contractual* obligations to indemnity the non-debtor defendants, id. at 3, mandatory abstention was held to apply.  Notably, Judge Briones also rejected defendants' motion for transfer as "an unnecessarily dilatory tactic," and noted that any doubts about removal jurisdiction should be resolved in favor of remand.  Id. at 6, quoting <u>Adams v. C.E. Thurston & Sons, Inc.</u>, No.

2:01CV321 (E.D. Va., July 16, 2001) (attached as exhibit G). The Virginia court

likewise ordered mandatory abstention in the same circumstances. Exhibit G at 11-12.

Other Texas federal judges have reached the same result. See Broyles v. U.S.

Gypsum Co., 266 B.R. 778, 782-86 (E.D. Tex. 2001); Painter v. Certainteed Corp., No.

3:00-CV-2714-M (N.D. Tex. Dec. 20, 2000) (order and transcript of hearing attached as

exhibit H).[1]

Since the test for mandatory abstention has been met, 28 U.S.C. 1334(c) requires

that this court abstain from exercising jurisdiction over this claim unless it finds that the

claim. Luevano, supra, 183 B.R. at 753 ("The independent state court claims of non-

bankrupt defendants do not have impact on bankrupt defendants and therefore, the federal

court must abstain from hearing the proceeding.").

VI.    DISCRETIONARY ABSTENTION OR EQUITABLE REMAND

Defendant does not dispute plaintiffs' discussion of the discretionary abstention or

equitable remand factors at all. Instead, defendant rehashes its arguments about transfer

under §157(b)(5). For the reasons stated above, and in our response to defendant's

motion to transfer, transfer is neither permitted nor appropriate in the present

circumstances.

In addition to the undisputed factors weighing heavily in favor of abstention and

remand, it is appropriate here to appreciate, again, the gross abuse of the federal court

system at work here. This is a state court tort case against non-debtor defendants. Not a

single case has ever held, in the asbestos or other mass tort context, that claims by

---

[1] In another instance, defendants who had removed a similar suit agreed to remand after plaintiffs filed their motion for remand and requested attorneys' fees and costs for improper removal. See Bierbaum v. Armstrong World Indus., Inc., No. 00-977-GPM (S. D. Ill., Jan. 30, 2001) (attached as exhibit I).

plaintiffs against unrelated non-debtor defendants are to be tried in bankruptcy court, or are stayed by virtue of the automatic stay that protects the debtor. Numerous cases, cited above, hold otherwise.

Moreover, the asserted basis for jurisdiction is a cross-claim of the kind so aptly labeled "immaterial and insubstantial" by Judge Gex in Mississippi. It is a cross-claim that Garlock has never once pressed against this debtor. Again, as reflected in exhibit C, Garlock has never sought or obtained one cent in contribution from Federal Mogul or its subsidiaries in hundreds of thousands of asbestos cases.

Nor is there anything unique about the Gasket Holdings bankruptcy. Several other companies have gone bankrupt during the pendency of this case. Garlock was also "deemed" to have filed cross claims against these companies as well, yet it did not remove the case. Instead, Garlock allowed the case to start trial, and only now asserts that this entire case must be heard in bankruptcy court.

Finally, the Court should consider the fact that of the tens of thousands of asbestos cases pending against it nationwide, Garlock removed only the claims of plaintiffs represented by the undersigned plaintiffs' counsel -- as if there were something about these particular claims that makes them uniquely subject to an assertion of bankruptcy jurisdiction. Moreover, Garlock has admitted that it carried out this mass removal campaign solely because Waters & Kraus will not settle cases on a group basis, but treats each case individually and tries to maximize results in each one, and so Garlock finds Waters & Kraus settlement demands unreasonable. Since Garlock sometimes pays more in settlement of Waters & Kraus cases than it does to other firms, it removed every Waters & Kraus case.

It suffices to say that federal removal procedure should not be used to further some vendetta against a particular group of plaintiffs and their counsel. We respectfully submit that these circumstances are appropriately part of a discretionary abstention inquiry.

In sum, all of the factors in the discretionary abstention equitable remand inquiry favor abstention or remand in this case. Many courts have exercised their discretionary abstention or equitable remand powers to remand asbestos and other mass tort cases in similar circumstances. E.g., Broyles, supra, 266 B.R. at 785; Thomas v. R.J. Reynolds Tobacco Co., 259 B.R. 571, 579 (S.D. Miss. 2001); Spitzfaden v. Dow Corning Corp., 1995 WL 662663, *3 (E.D. La., Nov. 8, 1995) ("Finally, and most significantly, the Court is persuaded that remand is proper to prevent prejudice to the involuntarily removed parties....The automatic stay applies only to the debtor and not to the alleged co-tortfeasors."). As Judge Hughes put it, as if anticipating the present case: "Removal is not automatic. State court defendants cannot clog the federal docket, interrupt the state court proceedings, delay state court trial settings, and inflate the costs to the plaintiffs without a *need* to remove the case." Da Silva v. American Savings, 145 B.R. 9, 13 (S.D. Tex. 1992) (emphasis the court's).

WHEREFORE PREMISES CONSIDERED, plaintiffs respectfully pray that this cae be remanded to the 404th Judicial District Court of Cameron County, Texas.

Respectfully submitted,

Frank Costilla
State Bar No. 04856500
Federal I.D. 1509
Law Offices of Frank Costilla
5 East Elizabeth Street
Brownsville, Texas 78520
(956) 541-4982
(956) 541 3152 telecopier

**WATERS & KRAUS, LLP**

Charles S. Siegel
State Bar No. 18341875
Federal I.D. 15736
3219 McKinney Avenue
Suite 3000
Dallas, Texas  75204
(214) 357-6244
(214) 871-2263 facsimile

Henry Simon
Simon, Warner & Doby, LLP
1700 City Center Tower II
301 Commerce Street
Fort Worth, Texas  76102
(817)  810-5250
(817)  810-5255 facsimile

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was

served via facsimile and regular mail on November 8, 2001 on Garlock counsel of record:

Shelby A. Jordan
Jordan, Hyden, Womble & Culbreth, P.C.
(361) 884-5616

Mitchell C. Chaney
Rodriguez, Colvin & Chaney, LLP
(956) 541-2170

and on all other counsel of record by U.S. mail.

_____
Charles S. Siegel

w/ permission

16

# AFFIDAVIT OF CHARLES S. SIEGEL

| | |
|---|---|
| **STATE OF TEXAS** - | § |
| | § |
| **COUNTY OF DALLAS** | § |

My name is Charles S. Siegel. I am over 21 and have never been convicted of a felony. I am a partner at the firm of Waters & Kraus, LLP. All of the statements contained in this affidavit are true and correct and are within my personal knowledge.

1.      I am responsible for preparing and filing the motion for remand in the present case, as well as in the scores of other cases recently removed by Garlock and involving plaintiffs represented by my office.

2.      On Friday, October 19, 2001, we learned that one of our clients' actions, which had been in trial in state court in Brownsville, had been removed to federal court by Garlock. On Monday, October 22nd and in succeeding days, we received notices of removal in numerous other cases. As of today, we have received such notices in over 80 cases.

3      On Tuesday, October 23, in an effort to find out more information concerning these removals, I contacted by e-mail several dozen other plaintiffs' counsel in asbestos litigation. Together, these attorneys constitute the vast majority of all attorneys regularly representing plaintiffs alleging asbestos-related injury in the United States. I inquired of them whether of any of their cases had been removed by Garlock. No one responded affirmatively. I also spoke to several attorneys in Texas who represent

1



**1**

plaintiffs in asbestos litigation, and they each told me that none of their cases had been removed.

4.    Therefore, it is my belief that although Garlock is a defendant in tens of thousands of asbestos cases pending in courts across the nation, they have removed only those cases involving plaintiffs represented by Waters & Kraus. This is apparently so despite the fact that the asserted basis for removal -- the existence of bankruptcy jurisdiction premised upon Garlock's cross-claims against bankrupt defendants -- would theoretically exist in every such case

5.    I verify that all exhibits attached and incorporated to plaintiff's motion for remand are true and correct copies of the originals.

Further affiant sayeth not.



Charles S. Siegel

SUBSCRIBED AND SWORN TO BEFORE ME on this 27th day of October, 2001 the said Charles S Siegel, who has stated to me that the foregoing affidavit and statements contained herein are true and correct within his personal knowledge to certify which witness my hand and official seal of office

Notary Public in and for
My Commission Expires:                    The State of Texas

LAURA DINA RODRIGUEZ
MY COMMISSION EXPIRES
July 25, 2002

2

2




## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 01-10578 |
| | § | Chapter 11 |
| FEDERAL-MOGUL GLOBAL, INC., | § | (Pending in the United States |
| | § | Bankruptcy Court for the |
| DEBTOR | § | District of Delaware) |

| | | |
|---|---|---|
| Sallie Kennamer | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | C.A. C-01-477 |
| | § | |
| | § | |
| Abel Supply Company, et al. | § | |
| DEFENDANTS. | § | |

## REPLY OF GARLOCK INC
### TO PLAINTIFFS' RESPONSE IN OPPOSITION TO
### GARLOCK'S MOTION TO SUPPLEMENT THE APPLICATION
### AND NOTICE OF REMOVAL [OR ALTERNATIVELY, MOTION
### TO RECONSIDER RULING ON SUPPLEMENTAL REMOVAL APPLICATION]

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Garlock Inc (Removing Defendant) files this Reply to the Plaintiffs' Objection to the pending Motion of Garlock to Supplement the Application and Notice of Removal, and Motion for Expedited Consideration ("Motion to Transfer") as follows:

1.    Plaintiffs materially misstate the events and facts concerning the 80+ removals filed by Garlock on October 19 and 22nd, 2001.

### A.    The Time Pressure:

2.    Plaintiffs simply ignore the multiple statements in Garlock's reply papers before this Court regarding the need to accomplish removals promptly before the Plaintiffs lawyers filed non-suits in the State Court proceedings.  Notwithstanding the filing of these non-suits clearly



violations of the automatic stay[16] such pre-removal non-suits create needless jurisdictional "rabbit trails", the curing of which would require substantial litigation in the Delaware bankruptcy court, litigation wholly unnecessary and unrelated to the 28 U.S.C. § 157(b)(5) determination sought by Garlock. Even after filing of the removals, Plaintiffs continued this "self-help" stay lift by filing non-suits in these case in the State Court proceeding. The "sudden ambush" suggested by Plaintiffs' counsel [See, pg. 2, unnumbered ¶ 3 Plaintiff's Objection] was no such thing -- it was motivated only by the need for diligent speed to avoid complications which, when otherwise ultimately litigated at needless time and expense, would have been voided. That said, Garlock does not, and has not suggested to this Honorable District Court that its oversight should be excused because of the time limits imposed.

## B. The Error Was Inadvertent:

3.      In fact, it was not the time limitations that resulted in the errors before this Court in these [and two other removals all in the Southern District (Corpus Christi Division) and (Brownsville Division)]. Internal staffing assigned to all of the removals received the specific written instructions to include every live pleading, every answer, every court order, and a current docket sheet with the removals. However, the paralegal working in respect to these nine (9) Nueces County removals was unable to obtain copies of the files from the County Clerk and upon inquiry about this inability (the copying by the clerk would have taken in excess of two weeks) offered to place a copy machine in the Clerks office and discussed with other staff of the firm the inability to obtain the pleadings. In the interim, the staff gathered every pleading available, believing that it would be supplemented when the copies could be obtained. This was

---

[16]     *See, Korn v. G.D. Searle & Co.*, 81 B.R. 1 (D.N.H. 1987) [the automatic stay precludes severance of consolidated personal injury actions against an IUD manufacturers where severance could result in nondebtor manufacturer contending that debtor manufacturer was solely liable].

unknown to the attorney in charge.   Had this been known, this attorney in charge would have specifically disclosed this defect *in the Application* and notified the court and parties immediately.   It was not until the hearing before this Court that counsel heard of this error, and Garlock stands immediately ready to proceed to correct the error, if permitted.[17]

**C.      A Large Volume of Removals Does Not Excuse Compliance With the Rules -- Garlock's Error in this Court was the exception**:

4.       Garlock completely agrees with Plaintiffs' statement, yet strongly denies the implication that counsel for Garlock ever suggested this was an "excuse" or that the other filed Applications and Notice of Removals handled by the multiple other staff members supervised by the attorneys-in-charge were similarly defective. **They were not.**

5.       The implication of the Austin Division Orders. The orders attached to the Western District of Texas (Austin Division) are form orders to be certain that "entire" files are included, and did not reflect deficiencies in the Application [*See*, order language ". . . being of the opinion that a copy of the complete record in this case is necessary; . . ."]   and Garlock promptly, as requested by the Clerk of the Court, filed the attached motion to be excused from the order in light of the condition of the Austin Asbestos litigation docket (literally boxes of out of date, unrelated, and confusing pleadings) [see Tab "1" attached hereto].   While Plaintiff's counsel is correct that the attached order requesting the entire state court file was entered in each Austin Division removed case, counsel is inaccurate in his attempt to relate those order to some type of negligence on behalf of Garlock in filing a complete file.   Each Austin Division case contained

---
[17]        Removing Defendant also acknowledges the confusion caused when the Federal Mogul order of consolidation was not included in the removal papers such that the specific defendant-debtor names could have been cross-checked to assure the removal docket number was the correct docket number for a party-defendant that was a debtor in a pending bankruptcy case.   In fact a party-defendant is a party to each Removed Case, but the Court's

a complete set of all live pleadings, a copy of each defendant's answer and all orders from the state court file. As stated by the Austin Division clerk to Austin counsel, these orders are entered in each Austin division case as a matter of course. Garlock believes that it will be excused from the form order requirements because of the completeness of its removal attachments.

**D.     Removal of Water & Krause Cases:**

6.      Although it is not accurate that only these Plaintiffs' counsels cases were removed, the removals were prioritized according to the Plaintiffs' monetary demands being made, and the ability Garlock believed available to settle cases without any further litigation in accordance with past settlement practices. Waters & Krause is the only firm in Garlock's docket that has consistently demanded amounts fifty to one-hundred times more than previous settlement experience, and certainly far more than the cases are worth. Accordingly, the removals necessary to protect Garlock's right to a determination pursuant to 28 U.S.C. § 157(b)(5) were, for all practical purposes, the cases of Waters & Krause. In fact, Garlock continues to settle these other claims.

**E.     Garlock Has Become a Waters & Krause "Target" Only Because of Bankruptcy Attrition:**

7.      Contrary to historical treatment of Garlock in its long history as a minor player in asbestos litigation, Waters & Krause have decided that Garlock must now become a primary "target" defendant because the 20 years of asbestos litigation has forced most all major "target" defendants into insolvency and bankruptcy. As Garlock's counsel explained to this Court during the hearing, the many other pending Garlock cases continue to be resolved by settlements in amounts which Garlock believes is realistic and could result in the ultimate survival of Garlock,

confusion should have been avoided by more artful pleadings without omission of the consolidation order. This

12/05 '01  18 45 FAX 361 888 5555      JORDAN EYDEN WOMBLE & CU

notwithstanding the fact that the settlements have little to do with any actual injury. Without repeating the history of the asbestos litigation [Garlock incorporates herein its historical description set out in its Response to the Plaintiffs Remand Motion] suffice it to say that in Garlock's actual historical experience the majority of the pending asbestos claims are brought by individuals who merely have some marker of asbestos exposure, such as pleural plaques, but who suffer no asbestos-related impairment at all.

- Asbestos claims are now being filed by people who have little or no physical impairment.

- These claims are very expensive to litigation, and accordingly, would produce substantial costs even though the individual litigants will never become impaired. Companies such as Garlock simply have no choice but to settle claims on a mass basis.[18] As Garlock explained in the hearing before this Court, because traditional tort system litigation is not a practical option for resolving claims, a *de facto* privatized claims resolution system has emerged in which Garlock actively participated.

- Add to this equation the forum shopping that has contributed to the arbitrary outcomes produced within the tort system when these cases are litigated. Cases have shifted from the federal courts toward the state courts since, and further, cases have shifted toward particular state courts perceived as favorable to plaintiffs, as evidenced by the fact that

---

error was a drafting error.

[18] .  *See In re Rhone-Poulenc Rorer, Inc.,* 51 F.3d 1293, 1298 (7th Cir.) (observing that aggregation exposes the defendant to "intense pressure to settle"), cert. denied, 516 U.S. 867 (1995); *id.* at 1304 ("The number of asbestos cases was so great as to exert a well-nigh irresistible pressure to bend the normal rules."); Recent Case, 109 HARV. L. REV. 870 (1996) (*courts faced with the delay and docket crowding promised by [mass tort class actions]* tend to encourage settlement."); Francis E. McGovern, *Rethinking Cooperation Among Judges in Mass Tort Litigation,* 44 U.C.L.A. L. REV. 185 1, 1858 (1997) ("plaintiffs' attorneys rush to their favorite judges and demand draconian procedures to pressure defendants to make block settlements.); Jack B. Weinstein, *Ethical Dilemmas in Mass Tort Litigation,* 88 Nw, U. L. REV. 469, 521 (1994) ("Often the pressure for block settlements comes from

---

seven of the nine Plaintiffs cases in before this Court are out-of-state and no-one resides in or near Nueces County, Texas.

• _The Break-down of the Settlement System_: Between 1998 and today, hundreds of asbestos defendants have sought Chapter 11 protection (several hundred in the year 2001 alone when all subsidiaries and affiliates are counted), destroyed by the burden of this litigation. Accordingly, everything has changed in respect to asbestos litigation, including the economic need and reality to enforce and collect or protect contribution claims, and including Garlock's determination to not be directed to bankruptcy by the Plaintiffs escalation of demands for settlements of hundreds of cases or the threat of the cost and risks of trial.

8.      Garlock's removal of this case to this District Court, consistent with the requirements of removal to the District Court in which the removed case was pending, and its immediate Motion to Transfer, is motivated by deliberate and honorable desire to find a solution other than Plaintiffs' road-map to Garlock's own bankruptcy, assuring that pending and future asbestos claimants that may have legitimate claims and legitimate needs will get nothing for their injury, just as Garlock's employees and suppliers will lose the source of income. Garlock seeks only to preserve this case for the purposes of the review by the "Home" District Court pursuant to 28 U.S.C. § 157(b)(5), preserving thereby the "Home" District Court's decision to remand, abstain, sever, or keep for trial, this case. Depriving the Removing Defendant of that right in favor of an emergency remand where no emergency has been shown is not justified

9.      The inadvertent errors cause by Garlock was clearly not in compliance with this Court's Rules, nor the practice and conduct of Garlock's counsel regularly appearing before this Court. However, Garlock urges that the penalty for such error not be a "death penalty" to its

plaintiffs' attorneys who hope to get something for a large mass of questionable cases. Some attorneys ... will take

Reply of Garlock To Response
To Garlock's Motion to Supplement
The Record                                   **Page 6**

rights to seek some manner or solution through implementation of 28 U.S.C. § 157(b)(5), within

the rules of this Court and the statutes governing Garlock's and Plaintiffs' litigation, and that this

Court permit the supplementation of the record in compliance with the Rules.

WHEREFORE, PREMISES CONSIDERED, GARLOCK INC prays that Garlock's

Motion to Supplement the Record be granted and that Garlock have such other and further relief,

at law or in equity to which it may show itself to be justly entitled.

Respectfully submitted,

Shelby A. Jordan
State Bar No. 11016700
Admissions No. 2195
Harlin C. Womble, Jr.
State Bar No. 21880300
Admissions No. 8959
Nathaniel Peter Holzer
State Bar No. 00793971
Admissions No. 21503
*Jordan, Hyden, Womble & Culbreth, P.C.*
500 N. Shoreline Dr., Suite 900
Corpus Christi, Texas 78471
Telephone: (361) 884-5678
Telecopier: (361) 884-5616
REMOVAL COUNSEL FOR GARLOCK INC

almost any case without regard to its merit, hoping for a global settlement.") (footnote omitted).

Reply of Garlock To Response
To Garlock's Motion to Supplement
The Record                    Page 7

*Mitchell C Chaney* w/ permission

Mitchell C. Chaney
SB# 04107500
Fed ID #1918
Eduardo Roberto Rodriguez
SB# 17144000
Fed. ID # 1944
Rodriguez, Colvin & Chaney, LLP
1201 East Van Buren
Brownsville, Texas 78522
Phone: (956) 542-7441; fax: (956) 541-2170
ATTORNEY IN CHARGE FOR GARLOCK INC

## CERTIFICATE OF SERVICE

I, Shelby A. Jordan,  hereby certify that a true and correct copy of foregoing document was served by First Class Mail, on all counsel of record as listed on the attached service list this 6th day of November, 2001:

Shelby A. Jordan

## AFFIDAVIT OF JEFFREY B. SIMON

STATE OF TEXAS                           §
                                         §
COUNTY OF DALLAS                         §

**BEFORE ME**, the undersigned authority, on this day personally appeared JEFFREY B. SIMON known to me or through his drivers' license and who, upon his oath, deposes and states as follows

"My name is JEFFREY B. SIMON. I am over the age of 18 years and I am of sound mind and am in all ways competent to make this affidavit. All the statements contained herein are true and correct, and are based upon my personal knowledge

I am counsel for Plaintiffs in the cases of Douglas Kwasnik and Arliene Pearson vs. ACandS. Inc., et al. Cause No. EP-01-CA-0379, in the United States District Court for the Western District of Texas, El Paso Division. I am counsel for Plaintiffs in the matter of Debra Kulaw, Individually and as Personal Representative of the Heirs and Estate of LeVaughn Darnold. Plaintiffs. vs. ACandS. Inc., et al. in the United States District Court for the Southern District of Texas, Brownsville Division, Cause No. B01CV178.

On Wednesday, October 24, 2001, and Thursday October 25 2001 I spoke on the telephone with Paul Hanly, Jr. Mr Hanly explained the following items to me that are within his personal knowledge and are true and correct and that subject to subpoena, he would verify the following by deposition

1. Mr. Hanly has served as Chief National Trial and Coordinating Counsel in asbestos-related injury and wrongful death claims for Federal Mogul Corporation, Gasket Holding Inc. Flexitallic, Inc., T&N PLC, T&N LTD, Wagner Electric Corporation, Ferodo Corporation and related companies since March of 1998
2. Mr. Hanly has served as trial counsel for T&N entities, Flexitallic Inc. and Ferodo Corporation since 1981. He has been Chief National Trial and Coordinating Counsel for those companies since 1985
3. No one alive has more knowledge regarding the history and trial strategy of asbestos-related injury and wrongful death cases of those above-mentioned entities than does Mr. Hanly
4. During the time in which Mr. Hanly has represented T&N, T&N has resolved approximately 500,000 lawsuits filed in claims for asbestos-related personal injury and/or wrongful death. During that period of time Garlock, Inc., has been a co-defendant in several hundred thousand of those lawsuits
5. While Mr. Hanly has represented Federal Mogul Corporation, Federal Mogul Corporation has resolved approximately 250,000 lawsuits filed in claims for asbestos-related personal injury and/or wrongful death. Garlock Inc. was a co-defendant in most of those claims.
6. None of the corporations that Mr. Hanly represents have ever paid Garlock any money through either settlement or judgment for any cross claim, claim for contribution, or claim for indemnity. Similarly Garlock has never paid any money to Mr. Hanly's clients for any cross claim, claim for contribution, or claim for indemnity
7. To his knowledge Garlock has never demanded any payment or affirmatively made any claim for payment as a cross claim, claim for contribution, or claim for indemnity of any

**3**

EXHIBIT
C

of the corporations represented by Mr. Hanly

8. Garlock does not and historically has not filed formal or affirmative pleadings seeking cross claim, contribution, or indemnity from any of the corporations represented by Mr. Hanly, other than those cross claims that are deemed to have been filed by Garlock's having filed an Answer to a Plaintiff's claim, as exists in the provisions of certain Standing Orders in Texas and similar orders of certain courts in some other states

9. Garlock has never conducted formal discovery against any of those corporations represented by Mr. Hanly, including, but not limited to, never having deposed a Federal Mogul or T&N witness

10. Garlock has never attempted to prove liability against Federal Mogul or T&N in any case in which they remained with Garlock as trial defendants.

11. Federal Mogul Corporation and T&N and Gasket Holding Inc., have been sued by hundreds of clients represented by Waters and Kraus, and in a professional context the interest of Federal Mogul Corporation and T&N and other companies represented by Mr. Hanly are adverse to those of the claimants represented by Waters and Kraus

12. Mr. Hanly has not received any guarantees or promises in exchange for his testimony he will tell the truth in response to a subpoena.

13. Garlock has never exercised any cross claim, claim for contribution or a claim for indemnity against Federal Mogul Corporation or T&N or any related company  Such claims, if any, have been a non-event for Garlock and for the companies represented by Mr. Hanly in the resolution of hundreds of thousands of claims in which Garlock and Mr. Hanly's clients were co-defendants.  Similarly, Mr. Hanly's clients' rights, if any, to levy cross-claims, claims for contribution, or claims for indemnity against Garlock Inc have never been exercised in the resolution of hundreds of thousands of claims over many years

14. Paul Hanly Jr. was served with a subpoena to testify regarding these matters by telephonic deposition scheduled for Friday October 26, 2001, at 2:00 p m EST  A notice of deposition was served upon more than one counsel for Garlock, Inc  Upon objection to the deposition by attorney Mitchell Chaney, counsel of Garlock Inc  the deposition scheduled for October 26 2001 was canceled  The deposition has been rescheduled to occur on Friday November 2 2001 11:00 a m  at attorney Hanly's offices  Copies of the subpoena issued upon Mr Hanly  the notice of deposition for October 26 2001  Garlock Inc  attorney Chaney's letter objecting to the deposition scheduled for October 26 2001  and Plaintiff's First Amended Notice of Intent to take the Oral Deposition of Mr Hanly, subject to Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction  for Mandatory Abstention  or for Discretionary Abstention or Equitable Remand  are attached to this Affidavit respectively as Exhibits 1, 2  3  and 4

Further affiant sayeth not

JEFFREY B SIMON

SUBSCRIBED AND SWORN TO BEFORE ME by JEFFREY B SIMON on this 26th day of October, 2001

[S E A L]

Notary Public

CORRINE M KUZMA
NOTARY PUBLIC
State of Texas
Comm Exp.07-30-2002

4

11/08/01  11:06 FAX 214371220

EXHIBIT
Simon
Affidavit 1

PPS INC

THU 08 13 FAX 2147423131

'25 (Rev. 1/94 Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

DISTRICT OF _____

IN RE:

FEDERAL-MOGUL,    v.
INC., DEBTOR

CASE NUMBER  01-10578
Chapter 11 (U.S. Bankruptcy Court

Douglas Kwasnik and Arlene Pearson, Plaintiff
ACand S, INC., et al, Defendants

E.D.O.: CP5579

TO:  Paul J. Henly, Jr.

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified to testify in the above case.

PLACE OF TESTIMONY | COURTROOM
 | DATE AND TIME

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. Via Telephone Deposition

PLACE OF DEPOSITION | DATE AND TIME
Coblence + Warner  415 Madison Ave 17th Floor, NYC | Friday 10/
Telephone: 212-593-8000 | 2:00 pm ES

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

PLACE | DATE AND TIME

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified be

PREMISES | DATE AND TIME

5

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE
Jeffrey Simon, Counsel for Plaintiffs | 10/25/01

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jeffrey Simon  3219 McKinney Ave  #3000 Dallas TX 75

# WATERS & KRAUS, LLP

3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
Telephone 214-357-6244
Telecopier 214-357-7252

200 Oceangate, Suite 520
Long Beach, California 90802
Telephone 562-436-8833
Telecopier 562-590-7296

10231 Warwick Blvd
Newport News, Virginia 23601
Telephone 757-223-1275
Telecopier 757-223-1276

PLEASE RESPOND TO THE DALLAS OFFICE

October 25, 2001

**VIA FACSIMILE**

**All Counsel of Record**

Re  Cause No B-01-CV-178, Debra Kulaw, et al vs ACandS, Inc., et al. In the United States District Court for the Southern District of Texas, Brownsville Division

Dear Counsel,

Attached please find Plaintiffs' Notice of Intent to take the Telephonic Deposition of Paul Hanly, Jr., National Trial and Coordinating Counsel for Federal-Mogul Corporation, Ferodo Corporation, FelPro Corporation, Wagner Electric Corporation, T&N Plc  T&N Ltd  Gasket Holding, Inc., Flexitallic, Inc and of related companies, subject to Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction, for Mandatory Abstention, or for Discretionary Abstention or Equitable Remand  Plaintiffs may also use this deposition in other cases recently removed to Federal Court.

Should you need additional information regarding this matter  please contact our offices

Sincerely

Jeffrey B Simon

JBS:mlm
Enclosure
CC  All Counsel of Record

Counsel of record

Ed Pencous (Garlock)
Frank Harmon (CC&S)
Kenneth Morris (Alcoa)
Me Bailey (GP)
Todd Wade (Kelly Moore)

Ferguson McNeil (Narco)
Karen Mation (Ameitex)
Kenneth Rhodes (AC&S)
Jeffrey Lucky (Mars)
James Tompkins (GE)

6



Roger Whitman (Quaker Sic)   228-763-2221
Gary Ellison (RS Kaiser)   214-210-2506
William Arnold (Chinrose)   214-905-3976
Donald Godwin (Dresser)   214-767-7222
L. Muttenberger (APC HW IND)   817-826-0277
James Riley (Foster Wheeler)   713-651-0226
Kathy Hermes (Simpkins)   214-749-5626
Burgain O. Hayes (Thomas R)   512-474-1125
Tim Hogan (Quigle)   713-990-1527
Gary Ellison (Certainteed FedMog)214-210-2500
Diane Henium   214-521-1034

### Anticipated counsel of record

David Jeans (Cabot)   915-522-7333
Gary Ellison (Rice Salser)   214-210-2506
Gary Ellison (T&N)   214-210-2506

Shelby A. Jordan   361-884-5016
Joe Spencer, Jr.   915-522-7525
Melissa Ferrell   512-476-7832
Paul Hanis, Jr.   212-503-9058

Thomas Douglas (Bondex Proko) 803-786-7767
David Jeans (Asarco)   915-532-7333
John Hill (Melite)   713-223-3717
James Harris (Flintkote)   404-853-4247
Thomas Tardy (Gasket)   214-905-3976
Clay White (Aqua-Chem)   903-593-145
Pranske (AC&S)   214-651-8116
Daniel Sbam (CE)   713-651-070
William Book (Mars)   713-651-7777
Gary Jenkins (Proko)   404-632-4242

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DEBRA KULAW, Individually and as Personal Representative of the Heirs and Estate of LEVAUGHN DARNOLD. | § § § § | |
| PLAINTIFFS | § § | |
| VS. | § § | |
| ACandS, Inc., et al | § § | C.A. NO. B – 01 – CV – 178 |
| DEFENDANTS | § | |

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 01-10578 |
| | | Chapter 11 |
| FEDERAL-MOGUL GLOBAL, INC | § § | (Pending in the United States Bankruptcy Court for the |
| DEBTOR | § | District of Delaware) |

## PLAINTIFFS' NOTICE OF INTENT TO TAKE THE TELEPHONIC DEPOSITION OF PAUL HANLY, JR.

TO DEFENDANTS AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that, pursuant to the Federal Rules of Civil Procedure. and subject to Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction. for Mandatory Abstention. or for Discretionary Abstention or Equitable Remand. Plaintiffs will take the Telephonic Deposition of Paul Hanly, Jr. National Trial and Coordinating Counsel for Federal-Mogul Corporation. Ferodo Corporation. FelPro Corporation. Wagner Electric Corporation. T&N Plc., T&N Ltd.. Gasket Holding, Inc.. Flexitallic, Inc and/or related companies. on Friday. October 26, 2001. at 2.00 p.m Eastern Standard

**8**

Time Deponent's phone number is 212-593-8000. Please note the following numbers for telephonic conferencing of this deposition:

> **Call-In Number:** 1-800-333-1591
> **Participant Code:** 641103

The deposition will take place before a certified court reporter provided by Henium Goucher Reporting, 2501 Oak Lawn Ave, Suite 435, Dallas, Texas 75219, 214-521-1188

Parties are invited to attend this deposition by telephone and cross-examine the witness. The deposition will continue from day to day until completed

Respectfully submitted,
**WATERS & KRAUS, LLP**

JEFFREY B SIMON
State Bar No 00788420
PETER A KRAUS
State Bar No 11712980
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
214-357-6244
214-357-7252 Fax
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served on all counsel of record by facsimile this 25th day of October, 2001

JEFFREY B SIMON

SIEGEL LAW OFFICE

☑019

RODRIGUEZ COLVIN & CHANEY, L.L.P

ATTORNEYS AT LAW

A REGISTERED LIMITED LIABILITY PARTNERSHIP

180 EAST VAN BUREN

P O BOX 8165

BROWNSVILLE TEXAS 78522

TELEPHONE (956) 542-7441

TELECOPIER (956) 541-2170

www.rcclaw.com

EDUARDO ROBERTO RODRIGUEZ
NORTON A COLVIN JR
MITCHELL C CHANEY
MARJORY C BATSELL
JAMES A SAENZ
JOSEPH A (TONY) RODRIGUEZ
ALISON S KENNAMER

OF COUNSEL
BENJAMIN S HARDY (1917-1993)
ROBIN W JOHNSON
NEIL E NORQUEST
CHRIS A BRISACK
RAYMOND L COWLEY

LAURA J UPRIE
LECIA J CHANEY
R KATE EN RODRIGUEZ
ROSAMARIA VILLACOMI DE LA
TER J DANISH
DARRY L E ATKINSON

*BOARD CERTIFIED IN PERSONAL
INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

*BOARD CERTIFIED IN LABOR AND
EMPLOYMENT LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

October 25, 2001

**Via Facsimile: 214-357-7252**
Mr. Jeffrey B. Simon
Waters & Kraus, L.L.P.
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204

Re:   Cause No. B-01-CV-178; Debra Kulaw, et al. vs. Able Supply Co., et al.

Dear Mr. Simon:

I have a copy of a letter discussing a notice of deposition of Paul Hanly, Jr. Apparently the letter was faxed to almost every lawyer in this case except for me. Please make sure I am on your list for future correspondence. I do not have the notice of deposition.

Under the Federal Rules deposition notices for a deposition must be reasonable. A notice less than 24 hours, I do not believe is reasonable. Further, telephonic depositions can not be taken in Federal Court without agreement of counsel or order of the Court. I have not seen a Court order for this deposition and I certainly do not agree to it. Also parties are prevented from conducting discovery as you are attempting under Rule 26 of the Federal Rules of Civil Procedure. Let me know if I need to file a motion for protection of if you agree to reschedule the deposition.

Lastly, it seems odd to me that you are attempting to take the deposition of a representative of a party in Bankruptcy. Did you get the Automatic Stay lifted in order to conduct this discovery? If so, I would like to see some agreement. If not, I believe you are in violation of the Automatic Stay.

If I do not hear from you immediately I will proceed to file the appropriate motions tomorrow morning in Federal Court.

Very truly yours,

RODRIGUEZ, COLVIN & CHANEY, L.L.P

Mitchell C. Chaney

EXHIBIT
Simon
Affidavit 3

10

# WATERS & KRAUS, LLP

3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
Telephone 214-357-6244
Telecopier 214-357-7252

C. ANDREW WATERS*
PETER A KRAUS**

Of Counsel
Charles S. Siegel
Jonathan A Smith-George
Charles E Lance

Gavie N. Memola
David C Greenstone
Bam A Bobbit
E Scot Knaus
Rhonda Sullivan Cleave.
Ashley L Watkins
Trover D Wolf
F Leighton Durham, III.

200 Oceangate, Suite 520
Long Beach, California 90802
Telephone 562-436-8833
Telecopier 562-590-7296

Jeffrey B Simon
Darren P McDowell
Michael L Armitage
Kor J Eason
Melissa A Mills
Leslie C MacLear
George G Tankard, III.

*Licensed in Texas, California, North
Carolina and District of Columbia
**Licensed in Texas and Virginia

10231 Warwick Blvd.
Newport News, Virginia 23601
Telephone 757-223-1275
Telecopier 757-223-1276

†Licensed in Virginia only
‡Licensed in California and Louisiana
**Licensed in Maryland and
District of Columbia

PLEASE RESPOND TO THE DALLAS OFFICE

October 26, 2001

**VIA FACSIMILE**

**All Counsel of Record**

Re  Cause No. B-01-CV-178, Debra Kulaw, et al vs. ACandS, Inc., et al. In the United States District Court for the Southern District of Texas, Brownsville Division

Dear Counsel

Attached please find Plaintiffs' First Amended Notice of Intent to take the Oral Deposition of Paul Hanly, Jr., National Trial and Coordinating Counsel for Federal-Mogul Corporation, Feroco Corporation, FelPro Corporation, Wagner Electric Corporation, T&N Plc, T&N Ltc, Gasket Holding Inc., Flexitalic Inc. and or related companies, subject to Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction for Mandatory Abstention, or for Discretionary Abstention or Equitable Remand. Plaintiffs may also use this deposition in other cases recently removed to Federal Court.

Should you need additional information regarding this matter please contact our offices

Sincerely

C/ Jeffrey B Simon

JBS mlm
Enclosure
CC  All Counsel of Record

Counsel of record

Ed Penicolas (Garlock)          915-532-7200       Ferguson McNeil (Narco)     713-758-2340
Frank Harmon (CC&S)             713-658-1192       Karen Masion (Ametek)       713-224-1522
Kennein Morris (Alcoa)          214-905-3854       Kennein Rhodes (AC&S)       713-529-8161
Mel Bailey (GP)                 214-746-5621       Jeffrey Lucky (Mars)        915-587-8401
Todd Wade (Kelly Moore)         713-525-6394       James Tompkins (CE)         713-590-0777

**11**



@021

| Robert Wilkinson (Guardian) | 228-762-2222 | Thomas Dougall (Bondex/Proko) | 803-785-0767 |
| Gary Elliston (RS Kaiser) | 214-210-2500 | David Jeans (Asarco) | 918-622-7333 |
| William Arnold (Unirova) | 214-905-3976 | John Hill (Metline) | 713-222-7971 |
| Donald Godwin (Dresser) | 214-761-7222 | James Harris (Flintkote) | 404-853-4234 |
| L. Miltenberger (APC HW IND) | 877-820-0373 | Thomas Tardy (Gasket) | 214-905-3976 |
| James Riley (Foster Wheeler) | 713-651-0220 | Clay White (Aqua-Chem) | 903-593-4151 |
| Kathy Hermes (Synkoloid) | 214-749-5620 | Franske (AC&S) | 214-651-8711 |
| Burgain G. Hayes (HoffmanLR) | 512-474-1129 | Daniel Saam (CE) | 713-654-0770 |
| Tim Hogan (Quigley) | 713-961-1527 | William Book (Mars) | 713-651-7727 |
| Gary Elliston (Certainteed Fed Mog) | 214-210-2500 | Gail Jenkins (Proko) | 409-832-4242 |
| Diana Henium | 214-752-4103 | | |

**Anticipated counsel of record**

| David Jeans (Cabot) | 918-622-7333 |
| Gary Elliston (Rust Stoker) | 214-210-2500 |
| Gary Elliston (T&N) | 214-210-2500 |
| | |
| Sheilin A. Jordan | 361-884-5676 |
| Joe Spencer Jr. | 915-522-7234 |
| Melissa Ferrel | 512-476-7822 |
| Paul Hanly Jr. | 212-503-9055 |
| Mitchell Cheney | 956-542-3170 |

*Herjium Soucher   214-521-1034*

022

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DEBRA KULAW, Individually and as
Personal Representative of the Heirs
and Estate of LEVAUGHN DARNOLD,

PLAINTIFFS

VS.

ACandS, Inc., et al

DEFENDANTS

§
§
§
§
§
§
§
§
§
§
§
§

C.A. NO. B – 01 – CV – 175

IN RE

FEDERAL-MOGUL GLOBAL, INC

DEBTOR

§
§
§
§
§

CASE NO. 01-10578
Chapter 11
(Pending in the United States
Bankruptcy Court for the
District of Delaware)

## PLAINTIFFS' FIRST AMENDED NOTICE OF INTENT TO TAKE THE ORAL DEPOSITION OF PAUL HANLY, JR.

TO DEFENDANTS AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that, pursuant to the Federal Rules of Civil Procedure, and subject to Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction for Mandatory Abstention, or for Discretionary Abstention or Equitable Remand, Plaintiffs will take the Oral Deposition of Paul Hanly, Jr., National Trial and Coordinating Counsel for Federal-Mogul Corporation, Ferodo Corporation, FelPro Corporation, Wagner Electric Corporation, T&N Plc., T&N Ltd., Gasket Holding, Inc., Flexitallic, Inc. and/or related companies, on Friday, November 2, 2001, at 11:00 a.m. at the law offices of

13

☑ 023

Coblence and Warner, 415 Madison Ave, New York, NY 10017, telephone number: 212-593-8000.

The deposition will take place before a certified court reporter provided by Henjum Goucher Reporting, 2501 Oak Lawn Ave, Suite 435, Dallas, Texas 75219, 214-521-1188.

Parties are invited to attend this deposition by telephone and cross-examine the witness. The deposition will continue from day to day until completed.

Respectfully submitted,
**WATERS & KRAUS, LLP**

JEFFREY B SIMON
State Bar/No. 00788420
PETER A. KRAUS
State Bar No 11712980
3219 McKinney Avenue  Suite 3000
Dallas  Texas  75204
214-357-6244
214-357-7252 Fax
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served on all counsel of record by facsimile this 26 day of October  2001

JEFFREY B SIMON

**14**

Case 1.01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 39 of 118

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SIMEON JOHNSON, et al                                              PLAINTIFFS

VS                                          CIVIL ACTION NO  1 01cv408GR

ACANDS, INC., et al.                                              DEFENDANTS

<u>O R D E R</u>

This cause comes before the Court on the motion to remand [2-1] filed by the plaintiffs,

Simeon Johnson, et al  After due consideration of the evidence of record, the briefs of counsel,

the applicable law, and being otherwise fully advised in the premises, the Court finds as follows

The Court shall recite a brief procedural history of this case

1.  Plaintiffs filed their complaint in April 2000 in the Circuit Court of Holmes
County.

2  Part VII (B.) of the Case Management Order dated September 28, 2000,
stipulates that "[c]ross claims for indemnity must be filed in accordance with the
Mississippi Rules of Civil Procedure      [and] all cross claims for indemnity and
counter claims, as well as the claims of Plaintiffs and of those defendants that
declare bankruptcy, arising out of or relating to this matter are hereby severed for
trial at another date and time " (Pl. Mot  to Remand, Exh. B )

3  On June 25, 2001, named defendant U S  Gypsum Company [Gypsum] filed
for relief under Chapter 11 with the United States Bankruptcy Court for the
District of Delaware

4  On September 18, 2001, the plaintiffs dismissed named defendants Flexitallic,
Inc. [Flexitallic], and Gypsum.

5  On October 1, 2001, Flexitallic filed for relief under Chapter 11 with the
United States Bankruptcy Court for the District of Delaware

6  On October 2, 2001, the defendants filed a notice of removal with this Court

15

EXHIBIT
D

Case 1:01-cv-00181  Document 19  Filed in TXSD on 11/08/2001  Page 40 of 118

☒025

10/22/01  13:51  FAX 2148712263      SIEGEL LAW OFFICE                    ☒003/005
Received: 10/22/01 14:42;       601 354 2881 -> JetFax M820;  Page 3
Oct 22 01 02:40p      BYRD & ASSOC.                601-354-2881           p.3

7. On October 2, 2001, the plaintiffs filed an emergency motion to remand with this Court.

The defendants contend, over the objection of the plaintiffs and of the Case Management Order of September 28, 2000, that the defendants have cross-claims for indemnity pending against Flexitallic and Gypsum

The defendants assert the jurisdiction of this Court pursuant to 28 United States Code § 1334(b), claiming their indemnity actions to be a core proceeding. Alternatively, the defendants contend that if their indemnity actions are not core proceedings, they are at least related, non-core proceedings and therefore, not subject to the mandatory abstention provision of 28 United States Code § 157(b)(4).

From the outset, the Court notes that actions for indemnity do not accrue until the primary defendant sustains loss or is cast in judgment  *See Meloy v Conoco, Inc.*, 817 F.2d. 275, 280 (5th Cir. 1987); *Marathon Pipe Line Co v Drilling Rig Rowan/Odessa*, 761 F 2d 229, 235-36 (5th Cir. 1985), *Orient Mid-East Lines, Inc. v. A Shipment of Rice*, 496 F.2d 1032, 1042 (5th Cir 1974)  "The allegations of the complaint against the indemnitee are irrelevant to the indemnitor's obligation to pay "  *Meloy*, 817 F 2d at 280  In this instance, the defendants' cross-claims for contribution, like indemnity, are irrelevant as they are unripe for adjudication. Further, because there is no actual or imminent injury there is no standing. Consequently, the claims which form the basis for removal are nonjusticiable claims, and the Court must remand the case to the Circuit Court of Holmes County

Alternatively and no less binding, the Court finds that the Case Management Order of September 28, 2000, specifically severed such actions as the instant cross-claims from the asbestos suit filed in the Circuit Court of Holmes County, regardless of the arguments by the

2

defendants that cross-claims for contribution were deemed to be filed against all defendants. Further, Flexitallic and Gypsum were dismissed from the asbestos case and are no longer named defendants. Also, per the Case Management Order, the cross-claims against Flexitallic and Gypsum could be viewed as dismissed relating back to the date of September 19, 2001, which was the scheduled date of the pre-trial; or be seen as constructively dismissed due to the fact that such claims shall mandatorily be dismissed by no later than 30 days from September 18, 2001, the date the Order of Dismissal was filed. ( See Case Management Order dated September 28, 2000, Parts VII, XV.) The Court shall not condone removal based upon such immaterial and insubstantial cross-claims. The Court therefore finds that the defendants' cross-claims are moot.

Assuming *arguendo* that the cross-claims were ripe for adjudication and ignoring the serious issue of establishing federal subject matter jurisdiction through a cross-claim arising under a state action lacking a federal question, this Court refuses to exercise its supplemental jurisdiction pursuant to 28 United States Code § 1367(c)(2) because the state claims predominate over the issue of contribution. Further, this Court will not exercise jurisdiction over state claims where the defendants have removed a case on the eve of trial concerning cross-claims for contribution against a non-party currently involved in bankruptcy proceedings in Delaware, especially given the fact that the legal basis for removal — the filing for bankruptcy relief — was known as early as June 25, 2001, when Gypsum sought Chapter 11 relief. *See* 28 U.S.C § 1367(c)(4). Consequently, the Court finds that all state claims should be remanded to the Circuit Court of Holmes County.

Again, assuming *arguendo*, that the cross-claim for contribution is ripe and federal subject matter jurisdiction exists, the Court finds that it should, in the interest of comity with

3

State courts and respect for State law, abstain from hearing the proceeding pursuant to this

Court's discretionary authority under 28 United States Code § 1334(c)(1). It is therefore,

    ORDERED AND ADJUDGED that the plaintiffs' motion to remand [2-1] be, and is

hereby, granted. It is further,

    ORDERED AND ADJUDGED that the above referenced action be, and is hereby,

remanded to the Circuit Court of Holmes County, Mississippi. The Clerk of Court is directed to

immediately forward a copy of this order, together with the Court record, to the Circuit Court of

Holmes County, Mississippi. It is further,

    ORDERED AND ADJUDGED that the parties bear their respective costs.

    SO ORDERED AND ADJUDGED this the 3rd day of October, A.D., 2001

                              _____
                                UNITED STATES DISTRICT JUDGE

4

☑ 002/040

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

NOV - 1 2001

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| JANIE W. ADAMS, et al., | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| -vs- | § | Case No. A-01-CA-565-SS |
| | § | |
| ARMSTRONG WORLD INDUSTRIES, | § | |
| INC., et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

BE IT REMEMBERED on the _1st_ day of November 2001 the Court reviewed the file in

the above-styled cause, and specifically the Plaintiffs' Motion to Remand or, in the Alternative, to

Abstain [#7] and supplemental brief in support thereof [#11], Defendants' opposition thereto [#9],

and Plaintiffs' reply [#15]; and Defendants' Motion to Stay this Case Pending MDL Transfer [#10]

and Plaintiffs' response thereto and cross-motion for immediate determination of Plaintiffs' Motion

for Remand [#16]  Having considered the motions and responses, the case file as a whole and the

applicable law, the Court enters the following opinion and order.

### Factual and Procedural Background

Janie W. Adams, George Gray Midgett, and James E. Parris ("Plaintiffs"), all North Carolina

residents, are surviving family members of employees who allegedly died as a result of exposure to

asbestos-containing products designed, manufactured and sold by Defendants.  Plaintiffs sued

Defendants Armstrong World Industries, Inc. ("Armstrong"), Amchem Products, Inc. ("Amchem"),

14

Case 1.01-cv-00181  Document 19  Filed in TXSD on 11/08/2001  Page 44 of 118

and United States Gypsum Company ("U.S Gypsum") in the Travis County court. All three defendants were members of the Center for Claims Resolution ("CCR"), a nonprofit claims handling facility established in 1988 by former asbestos producers to handle asbestos personal injury suits against them. *See Notice of Removal* [#1], at 2. On approximately October 6, 2000. Plaintiffs entered into a settlement agreement with CCR for the collective amount of $400,000, and Defendants agreed to forward the payments within ninety days of the settlement date (approximately January 4, 2001) in return for release from Plaintiffs' claims. *See Plaintiffs' Motion to Remand* [#7], Ex. 4 ("Summary Judgment Motion"), at 2; *Defendants' Opposition* [#9], Ex 2 ("Jordan Declaration"), at 3.

On December 6, 2000, Armstrong filed a voluntary bankruptcy petition under Chapter 11 in a Delaware federal court. *Defendants' Opposition*, at 4. At that time, it terminated its membership in CCR and stopped funding the settlement CCR negotiated with the Plaintiffs. *Id.* On March 13, 2001, Plaintiffs filed a Fifth Amended Petition in the case pending in Travis County court, adding a breach of contract claim for failure to pay the CCR settlement and joining other CCR member companies who were not defendants in the original lawsuit. *See Plaintiffs' Motion to Remand* [#7], Ex. 3 ("Petition"), at 6-7. On June 25, 2001. U.S. Gypsum filed a voluntary bankruptcy petition under Chapter 11. *See Defendants' Opposition*, at 5.

On August 3, 2001, Plaintiffs filed a Motion for Partial Summary Judgment in Travis County Court against the non-bankrupt CCR member defendants for breach of the settlement agreement *See Summary Judgment Motion* Defendants did not respond to the motion. Instead, on August 27, 2001, two days before the scheduled hearing on the summary judgment motion and 165 days after being served with Plaintiffs' fifth amended petition, Defendants removed the case to this Court. *See*

☒004/040

*Notice of Removal; Plaintiffs' Motion to Remand*, Ex. 5 ("Notice of Hearing"). The Notice of Removal only pertained to the claims and causes of actions raised in the summary judgment motion— in other words, the breach of contract action against the non-bankrupt CCR defendants for failure to pay the settlement claim – not to the pending personal injury claims. *See Notice of Removal*, at 1. On September 26, 2001, Plaintiffs filed a Motion to Remand or, in the Alternative, Motion to Abstain with this Court. On October 4, 2001, the Judicial Panel on Multidistrict Litigation conditionally transferred this case to the United States District Court for the Eastern District of Pennsylvania. *See Defendants' Opposition*, Ex. 1.

## Analysis

### I.     Motion to Remand

#### A.     Timeliness

Plaintiff seeks to remand this case to the Travis County state court on the grounds that removal was not timely. A defendant has thirty days after receipt of the plaintiff's pleading that gives rise to the grounds for removal to remove the case to federal court. *See* 28 U.S.C. § 1446(b). Defendants removed the case on August 27, 2001, 165 days after they were served with the fifth amended complaint adding the breach of contract claim. Defendants contend the removal was based on the bankruptcy statute, 28 U.S.C. § 1452, which is governed by Bankruptcy Rule 9027, which allows 90 days to remove a pending case in state court after the order for relief in a case under the Bankruptcy Code. *See Defendants' Opposition*, at 7; Fed. R. Bank. Pro. 9027(a)(2). Plaintiffs respond that the removal was not even timely under Rule 9027, because the breach of contract claim arose *after* Armstrong filed for bankruptcy. Under Rule 9027(a)(3)(A) applies, if the bankruptcy case is already pending when a plaintiff files a cause of action in state court, the defendant must

Case 1:01-cv-00181  Document 19  Filed in TXSD on 11/08/2001  Page 46 of 118

remove the case within 30 days of receiving the pleading  *See* Fed. R. Bank. Pro 9027(a)(3)(A).

Thus, Plaintiffs argue, Defendants should have removed the case within 30 days of receiving the fifth amended petition, and they cannot prolong the removal deadline each time a different defendant files for bankruptcy. This Court finds the removal was not timely, but the Court will discuss the merits of the removal as if it were.

**B.    "Related to" Jurisdiction**

Plaintiffs contend this Court does not have subject matter jurisdiction over this case because the case was improperly removed. Under 28 U.S.C. § 1452(a), a party may remove a claim to the federal district court for the district in which the case is pending if the district court has bankruptcy jurisdiction over the case under 28 U.S.C. § 1334. Section 1334 of Title 28 of the United States Code gives district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." Thus, the determination of whether this Court has jurisdiction over this case involves an inquiry into whether the case is "arising under title 11" or "arising in or related to cases under title 11." In making this determination, the Court keeps in mind that removal statutes are to be strictly construed, with any doubts resolved against removal and in favor of remanding the case to the state court. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Healy v. Ratta*, 292 U.S. 263, 270 (1934).

Defendants contend removal is proper because the breach of contract claim against non-bankrupt parties at issue in this case could effect the bankrupt parties who were original defendants in the underlying tort claim, namely Armstrong and U.S Gypsum. Specifically, Defendants argue that if the Plaintiffs are successful in this suit, the Defendants will sue Armstrong and U.S Gypsum for indemnification under an agreement among all CCR members and thereby become creditors of

⍰006/040

the bankrupt parties. Thus, Defendants conclude, their attempt to seek indemnification from the bankrupt parties would impact the administration of the bankruptcy state and is thereby "related to" the title 11 bankruptcy case.

The Fifth Circuit has held a case is "related to" a bankruptcy case under title 11 "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively), and which in any way impacts upon the handling of the bankrupt estate " *Matter of Majestic Energy Corp* , 835 F.2d 87, 90 (5th Cir. 1988) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d. Cir. 1984)). The potential impact of this case on the bankruptcy estates of Armstrong and U.S. Gypsum is at least one step removed, because none of the bankrupt defendants are involved in the breach of contract claim at issue here, and any impact on those parties or their bankruptcy estates requires the Defendants to file a separate lawsuit Given these degrees of separation, the Court finds this case is certainly not "arising in" a case under title 11. 28 U.S C. § 1334(b). However, given this case's potential impact, albeit removed, on bankrupt parties, the Court concludes this case is "related to" a proceeding under title 11, as required by 28 U.S.C. § 1334(b). *See Broyles v. U.S Gypsum Co* , – B.R. –, 2001 WL 1078178, at *2 (E.D. Tex. 2001) ("The Court finds this action is at least 'related to' the bankruptcy case because any result may have the effect of either reducing or enlarging the property of the bankruptcy estate."), *In re Celotex Corp.*, 124 F.3d 619, 626-27 (4th Cir. 1997) ("any recovery by [the plaintiff] against [the non-bankrupt defendant] would impact the handling and administration of [the debtor's] bankruptcy estate by changing the character of [the non-bankrupt defendant's] indemnification claim against [the debtor] from contingent and unliquidated to certain and liquidated.") Therefore, this Court has subject matter jurisdiction over this case under 28 U.S.C § 1334 (b).

007/040

## C.    Mandatory Abstention

Even though this Court has jurisdiction over this case under 28 U.S.C. § 1334(b), section

1334 requires the Court to abstain from exercising its jurisdiction in the following situations:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law
> cause of action, related to a case under title 11 but not arising under title 11, with respect to
> which an action could not have been commenced in a court of the United States absent
> jurisdiction under this section, the district court shall abstain from hearing such proceeding
> if an action is commenced, and can be timely adjudicated, in a State forum of appropriate
> jurisdiction.

28 U.S.C. § 1334(c)(2). Here, Plaintiffs timely filed a motion to abstain within 30 days of the filing

of the notice of removal  This case involves a breach of contract claim under state law, related to

but not arising under a bankruptcy case, and the record does not reflect any source of federal

jurisdiction other than bankruptcy jurisdiction under 28 U.S.C. § 1334(b).  The case has been

pending in state court in Travis County for a number of years,[1] and there is nothing in the record to

indicate that the breach of contract claim cannot be timely adjudicated in that forum  The only

visible pause in that litigation was the Defendants' attempt to remove the case to this Court when

a potentially dispositive summary judgment motion on this claim was pending in the state court and

presumably on the cusp of resolution.

Abstention is permissive, but not required, where the case involves a "core" proceeding under

bankruptcy law. *See In re Southmark*, 163 F.3d 925, 929 (5th Cir. 1999). Despite Defendants' best

efforts to construe this case as a core proceeding under bankruptcy, the case law in the Fifth Circuit

---

[1] It is not clear from the record exactly how long this case has been pending in state court.
According to the Plaintiffs, it has been going on for six years. *See Plaintiffs' Motion*, at 7 n.2.

-6-

☑ 008/040

demonstrates otherwise. None of the Defendants in this case as removed has filed for bankruptcy[2] Therefore, any impact this case will have on the administration of any bankruptcy estate is tangential to the outcome in the case before the Court. *See WRT Creditors Liquidation Trust v. C.I.B.C Oppenheimer Corp.*, 75 F.Supp.2d 596, 606 (S.D.Tex. 1999) ("Core proceedings are matters or proceedings that 'are an integral part of the bankruptcy case,' including 'other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship.' 'Related-to' matters are those which, because they are peripheral to the concerns of the bankruptcy case and based on extrinsic sources of law, require mandatory abstention." (citations omitted)) Other district courts in the Fifth Circuit have abstained from exercising jurisdiction over cases involving non-bankrupt defendants like this case. *See Broyles v. U.S. Gypsum*, – B.R. –, 2001 WL 1078178 (E.D. Tex. 2001); *Luevano v. Dow Corning Corp.*, 183 B.R. 751 (W.D. Tex. 1995). This Court likewise finds abstention appropriate in this case.

Even if abstention were not mandatory under 28 U.S.C. § 1334(c)(2), this Court would abstain from exercising jurisdiction in this case under the discretionary abstention provision of 28 U.S.C § 1334(c)(1), which allows a district court to abstain from hearing a case "related to" a bankruptcy proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S C. § 1334(c)(1). This case involves the application of state law, has

---

[2] Defendants contend two defendants named in plaintiffs' fifth amended petition, Gasket Holdings, Inc. and T & N, filed for bankruptcy on October 1, 2001 *See Defendants' Opposition*, at 5. Earlier in that same pleading, however, Defendants state the only entities that were properly served with that petition and who removed the case to this Court were Amchem, CertainTeed Corporation, Dana Corporation, Inc., Pfizer, Inc., and Union Carbide Corporation. *See id.* at 2 n.1 Additionally, Plaintiffs contend there are no bankrupt defendants remaining in this case. *See Plaintiffs' Reply*, at 3 Thus, as far as the Court can tell from the record, the only parties in the case before the Court are non-bankrupt parties. If the state court finds, on remand, some bankrupt parties are somehow still included in the suit, it has the authority to sever them.

009/040

long been pending before the state court and was on the eve of possible resolution when the Defendants removed it to this Court. Out of fairness to the Plaintiffs and in the interest of comity with state courts, this Court exercises its discretion to abstain from hearing this case, as other courts have done[3] *See Broyles v U.S. Gypsum,* – B.R. –, 2001 WL 1078178, at *5-*6 (E.D. Tex 2001).

II.     **Motion to Stay**

Because this Court abstains from exercising jurisdiction over this case, it will not stay the proceedings pending the MDL transfer, but instead will remand the case to state court, which is the proper place for the case to be heard.

In accordance with the foregoing:

IT IS ORDERED that Defendants' Motion to Stay the Case Pending MDL Transfer [#10] is DENIED;

IT IS FURTHER ORDERED that Plaintiffs' Motion to Remand [#7] on the grounds of timeliness of removal is GRANTED;

IT IS FINALLY ORDERED, in the alternative, that Plaintiffs' Motion to Abstain [#7] is GRANTED, and the remand is ordered on that basis.

SIGNED this the /21 day of November 2001.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

[3] In fact, in one of the few cases the Defendants rely upon to demonstrate the inappropriateness of mandatory abstention, the district court chose to abstain from exercising its jurisdiction on equitable grounds. *See Defendants' Opposition,* Ex. 4 (*In re Kelley & Ferraro*).

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 51 of 118

☑ 010/040

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION



| | | |
|---|---|---|
| ALEJANDRO LUPERCIO, et al., | § | |
|     Plaintiffs | § | |
| | § | |
| v. | § | EP-01-CA-228-DB |
| | § | |
| GAF CORPORATION (successor to | § | |
| RUBEROID CORPORATION), et al., | § | |
|     Defendants | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered "Plaintiffs' and Intervenor's Motion to Remand and Abstain, and Brief in Support" ("Motion to Remand"), filed in the above-captioned cause on July 2, 2001. On July 16, 2001, Defendants filed their "Opposition of Defendants to Plaintiffs' Motion to Remand or Abstain." Plaintiffs filed their "Reply Brief in Support of Motion to Remand or Abstain" on July 24, 2001

### BACKGROUND

Plaintiffs Alejandro Lupercio, et al., commenced this cause in County Court at Law Number Three in El Paso County, Texas, on November 17, 2000. Plaintiffs allege breach of settlement agreements with the Center for Claims Resolution ("CCR"), a Delaware corporation organized to represent Defendants and others in resolving asbestos-related claims Plaintiffs seek payment from Defendants of settlement claims owed but not paid by CCR. Defendants filed Notice of Removal on June 25, 2001, pursuant to 28 U.S.C. § 1452(a). The instant motions soon followed and on August 27, 2001, the Court heard oral arguments.

39

⬚011/040

## AUTHORITIES

Under 28 U.S.C. § 1452(a), a party may remove a case to the federal district court if that court has jurisdiction under 28 U.S.C. § 1334. Title 28 U.S.C. § 1334(b) confers jurisdiction on the district court over cases "arising under title 11, or arising in or related to cases under title 11." Title 11 regulates the administration of bankruptcy proceedings. "Related to" jurisdiction over a case arises under § 1334(b) when "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (adopting the standard as stated by the United States Court of Appeals for the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)); *In re Zale Corp.*, 62 F.3d 746, 752 (5th Cir. 1995). Alterations of the bankruptcy debtor's rights, liabilities, options, or freedom of action all qualify as effects that support "related to" jurisdiction. *In re Zale Corp.*, 62 F.3d at 752. Upon a timely motion by a party, however, a district court must abstain from presiding over a case "related to a case under title 11 but not arising under title 11 or arising in a case under title 11," where the action could not have been commenced in federal court absent jurisdiction under § 1334, and the case can be timely adjudicated in state court. 28 U.S.C.A. § 1334(c)(2) (West Supp. 2001).

## DISCUSSION

Defendants assert that the Court may properly exercise jurisdiction in this case because two members of CCR, United States Gypsum Company ("U.S. Gypsum"), at one time a defendant in this case, and Armstrong World Industries, Inc. ("Armstrong"), have filed bankruptcy petitions. Defendants argue that the instant case is "related to" those bankruptcy proceedings, within the meaning of 28 U.S.C. § 1334(b). Defendants also aver that the instant

2

☑ 012/040

case is a core matter, as that term is described in 28 U.S.C. § 157, with respect to the bankruptcy proceedings and, therefore, it is not proper for the Court to abstain. Finally, Defendants suggest that the Court transfer the case to the United States District Court for the District of Delaware if there are any doubts as to whether abstention is appropriate.

Plaintiffs, on the other hand, argue that the Court may not properly exercise jurisdiction because the case is not sufficiently related to a Title 11 case, as required by 28 U.S.C. § 1334(b). In support of this argument, Plaintiffs point out that, at the time of removal, U.S. Gypsum was not a defendant in the case and no other defendant had filed for bankruptcy.[1] Specifically, U.S Gypsum filed for bankruptcy and was non-suited by Plaintiffs on the same day the case was removed   Plaintiffs contend that, because Defendants in this case are not parties to the bankruptcy proceedings, there is no basis for "related to" jurisdiction. In response, Defendants point out that it is likely that U.S. Gypsum and Armstrong will be liable, based on their contractual obligations with the CCR, to indemnify Defendants should Plaintiffs prevail in this case. Defendants emphasize that the potential resulting obligations will be satisfied, to the extent possible, from the assets that currently comprise the bankruptcy estates.

The Court agrees with Defendants that the outcome of the instant case could conceivably effect the administration of the bankruptcy estates  Because neither U.S Gypsum nor Armstrong are parties in this case, they are relegated to third party status  Most courts,

---

[1] The Court notes that, subsequent to removal, four Defendants filed for bankruptcy. Three filed in the United States District Court for the District of Delaware, and one in the United Kingdom. Defendants, however, must prove jurisdiction at the time of removal. *Howery v. Allstate Ins. Co.*, No. 99-20878, 2001 WL 203072, *2 (5th Cir. 2001); *Texas Beef Group v. Winfrey*, 201 F.3d 680, 686 (5th Cir  2000). The post-removal petitions, therefore, have no bearing on the Court's remand analysis

3

☑ 013/040

however, consider "related to" jurisdiction proper where the subject of a third-party dispute is property of a bankruptcy estate. *In re Zale*, 62 F.3d at 753 (citations omitted). Here, the third-party dispute rests squarely on the disposition of the property that comprises the bankruptcy estates. Accordingly, the Court finds that "related to" jurisdiction, pursuant to 28 U.S.C. 1334(b), is proper in this case.

Plaintiffs next argue that, even if the Court finds "related to" jurisdiction proper in this situation, the Court must abstain from the case and remand it, pursuant to 28 U.S.C. 1334(c)(2), because it is not a case under Title 11 nor does it arise in a case under Title 11. Title 28 U.S.C. 157(b)(2) provides a non-exclusive list of those proceedings that are deemed to be core proceedings under Title 11. Defendants assert that the instant case is a core proceeding, arguing that it falls into two of the listed categories: 1) matters pertaining to the administration of the estate and 2) other proceedings, not including personal injury tort and wrongful death claims, that affect the liquidation of bankruptcy estate assets. 28 U.S.C.A. § 157(b)(2)(A), (b)(2)(O) (West 1993). Defendants support their position with essentially the same argument they use to support "related to" jurisdiction. That is, because of the possibility that U.S. Gypsum and Armstrong may incur liabilities from this litigation that may ultimately be satisfied from the bankruptcy estate, the mandatory abstention provision of 28 U.S.C. 1334(c)(2) does not apply.[2]

The Fifth Circuit, in *In re Wood*, held that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." 825 F.2d at 97. The Court is of the

---

[2] Defendants do not claim that jurisdiction is proper under any provision other than 28 U.S.C. § 1334, nor do they argue that failure to meet any other element of 28 U.S.C. 1334(c)(2) renders abstention not mandatory.

4

opinion that, unlike the conceivable effect standard required to confer "related to" jurisdiction under 28 U.S.C. 1334(b), the core proceeding standard requires a direct and certain tie between bankruptcy law and the removed cause of action. In *In re Wood*, the court considered a case involving wrongful appropriation of corporate assets by two defendants, one of whom had filed a voluntary bankruptcy petition. *Id.* at 91. The court found that "[t]he essential issue in the proceeding is whether the defendants are liable to the plaintiff under state law." *Id.* at 98. The court reasoned that, although it was possible that the defendants' liabilities, if found, may have lead to a claim against the bankruptcy estate at issue, "[a]t this juncture . . . these concerns are speculative and insubstantial issues in the proceeding." *Id.* In the instant case, the essential issue is whether Defendants are liable to Plaintiffs under Texas law for unpaid settlement claims, with all other issues remaining speculative. The Court is of the opinion that, although the possible effect on the administration of the U.S. Gypsum and Armstrong bankruptcy estates is enough to confer "related to" jurisdiction, it does not raise the removed cause of action to the level of a core proceeding.

The Court is similarly unpersuaded by Defendants' attempt to characterize the instant case as a *non*-core proceeding that is exempt from mandatory exemption in order to shoe-horn it into 28 U.S.C. § 157(b)(4). Title 28 U.S.C. § 157(b)(2)(B) states that core proceedings do not include "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." Section 157(b)(4) provides an exception to mandatory abstention for these non-core proceedings. The Court finds, however, that the instant case is not a case under Title 11 at all, but is, instead, a state law breach of contract complaint and, therefore, does not meet the characterization of a non-

5

core proceeding provided in 28 U.S.C. § 157(b)(2)(B)  The Court is, therefore, of the opinion

that the exception to mandatory abstention provided in 28 U.S.C. § 157(b)(4) does not apply.

For the foregoing reasons, the Court is of the opinion that it must abstain in

accordance with the mandatory provisions of 28 U.S.C. 1334(c)(2) and remand the case.

Having-determined that abstention is mandatory and that the case should be

remanded, the Court need not reach Plaintiffs' and Defendants' remaining arguments concerning

permissive abstention and equitable remand.  Similarly, the Court declines Defendants' invitation

to pass these issues to another court if there is "any remaining doubt."  Much like the court in the

Eastern District of Virginia, transfer to Delaware strikes this Court as "an unnecessarily dilatory

approach."  Besides, in the Fifth Circuit, "doubts regarding whether removal jurisdiction is

proper should be resolved *against* federal jurisdiction." *Acuna v  Brown & Root, Inc.*, 200 F.3d

335 (5th Cir  2000) (emphasis added).

Finally, Plaintiffs ask the Court to order Defendants to pay their attorney fees

incurred as a result of this removal.  Title 28 U.S.C. 1447(c) provides that "an order remanding a

case may require payment of just costs . . . including attorney fees."  There is no automatic award

of attorney fees once it is determined that a case was improperly removed. *Valdes v  Wal-Mart*

*Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000)  In deciding this matter, the Court must

objectively consider the merits of Defendants' case and must not consider Defendants' motive

for removal. *Id.*  In this case, the Court is of the opinion that mandatory abstention was not

obvious, as Plaintiffs claim, and that Defendants' case for removal was not without merit  For

that reason, the Court is of the opinion that no attorney fees should be awarded to Plaintiff.

6

☑016/040

Accordingly, **IT IS HEREBY ORDERED** that the above-captioned cause is

**REMANDED** to the County Court at Law Number Three of El Paso County, Texas

IT IS FURTHER ORDERED that all other pending motions before this Court,

if any, are **DENIED AS MOOT**.

SIGNED this 19th day of October, 2001.

THE HONORABLE DAVID BRIONES
UNITED STATES DISTRICT JUDGE

7

07/23/01  13:41 FAX 214 443 0358     STANLEY MANDEL & IOLA    → WATERS & KRAUS    ☒017 040
                                                                                  ☒002
07/20/01  FRI 11:16 FAX 757 825 4115     GLASSER AND GLASSER

FILED

JUL 16 2001

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

PAULINE B. ADAMS, etc.,
       Plaintiff,

      v.                                    Civil Action No. 2:01cv321

C.E THURSTON & SONS, INC, *et al.*
       Defendants.


CYNTHIA L. BAKER, etc.,
       Plaintiff,

      v.                                    Civil Action No. 2:01cv323

C.E THURSTON & SONS, INC, *et al.*
       Defendants.


PHYLLIS ANN BALDWIN, etc.,
       Plaintiff,

      v.                                    Civil Action No. 2:01cv320

C.E THURSTON & SONS, INC, *et al.*
       Defendants.


NANCY C. CRAWFORD, etc.,
       Plaintiff,

      v.                                    Civil Action No. 2:01cv319

C.E THURSTON & SONS, INC, *et al.*
       Defendants.


MORRIS FINK,
       Plaintiff,
      v.                                    Civil Action No. 2:01cv315

C.E THURSTON & SONS, INC, *et al.*
       Defendants.



RAYMOND P. HINES,
        Plaintiff,

    v.                                Civil Action No. 2:01cv317

C.E THURSTON & SONS, INC, *et al.*
        Defendants.


LORI MASON, etc.
        Plaintiff

    v.                                Civil Action No. 2:01cv363

C.E THURSTON & SONS, INC, *et al.*
        Defendants.


WILLIAM H. MONROE, Jr., etc.,
        Plaintiff,

    v.                                Civil Action No. 2:01cv316

C.E THURSTON & SONS, INC. *et al.*
        Defendants.


NOREEN F. ROCHELLE, etc.,
        Plaintiff,

    v.                                Civil Action No. 2:01cv318

C.E THURSTON & SONS, INC, *et al.*
        Defendants.


EZZY WYRON,
        Plaintiff,

    v.                                  Civil Action No. 2:01cv322

C.E THURSTON & SONS, INC, *et al.*
        Defendants.

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 60 of 118

## ORDER AND OPINION

On June 25, 2001, the Court heard oral argument with respect to the following motions filed in the above-referenced matters: (1) Defendant C.E. Thurston & Sons' ("Thurston") motions to transfer; (2) Plaintiffs'[1] motions to remand or to abstain; and (3) Defendant's motions for extension of time.[2] Thurston removed each of the above-referenced cases from the Circuit Court for the City of Portsmouth Virginia ("Portsmouth Circuit Court"). All the parties agree that this Court is not the proper forum in which to have these removed actions resolved[3] Plaintiffs argue in favor of remand to Portsmouth Circuit Court, while Thurston seeks the transfer of these cases to the United States District Court for the District of Delaware where the bankruptcy case of its alleged co-obligor, Armstrong World Industries, Inc. ("Armstrong"), is pending. For the reasons set forth below, the Court finds that remand of these cases to Portsmouth Circuit Court is appropriate.

## I.  Factual and Procedural Background

Each of the individual Plaintiffs in these cases brought a state court action against multiple defendants, including Thurston, seeking damages for personal injuries or wrongful death alleged to have been caused by asbestos-containing products manufactured or distributed by

---

[1]  This Order and Opinion refers to the plaintiffs in these matters collectively as "Plaintiffs."

[2]  Only the motions pending in the Fink, Mason and Baker cases were referred to the Court for oral argument. Identical motions, however, are pending in each of the nine captioned cases. Therefore, this Order and Opinion shall be entered in each case.

[3]  The parties agree that each Plaintiff is a Virginia resident and that Thurston is a Virginia corporation. Accordingly, there is no dispute that the parties are not diverse for purposes of federal court subject matter jurisdiction.

3

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 61 of 118

those defendants. Settlement negotiations related to these suits took place between counsel for each individual Plaintiff and the Center for Claims Resolution ("CCR"). The CCR is a non-profit Delaware corporation which acted as the agent for Thurston and other asbestos manufacturers and suppliers for the purpose of negotiating the settlement of asbestos-related claims. Pursuant to the Producer Agreement Concerning Center for Claims Resolution (the "Producer Agreement"), the member companies, including Thurston, granted the CCR authority to settle asbestos-related claims against them.

In November 1998 and July 1999, individual settlements were reached with the CCR in each Plaintiff's case. Armstrong, A.P. Green Industries ("A.P. Green"), and GAF Corporation ("GAF") were members of the CCR at the time the settlement agreements were entered into, but those companies have defaulted on their settlement obligations in these cases as well as, apparently, in numerous other settlements throughout the country. In particular, on December 6, 2000, Armstrong filed a voluntary petition for relief under chapter 11 of the bankruptcy code in the United States Bankruptcy Court for the District of Delaware, which is currently pending before United States District Judge Joseph J. Farnan, Jr. It appears that Armstrong's primary reason for seeking bankruptcy protection is its inability to pay the mounting asbestos-related claims against it. On or about January 5, 2001, GAF filed for bankruptcy as well, also citing its inability to pay asbestos-related claims.[4]

Prior to April 2001, no payment related to the settlement agreements had been made by the CCR or by any of the member companies to the Plaintiffs. On or about April 13, 2001,

---

[4]      It is not clear from the parties' pleadings in which court GAF filed its bankruptcy petition.

4

Case 1.01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 62 of 118

Plaintiffs in the _Fink_ and _Baker_ matters filed in state court motions to enforce the settlement agreements in which they sought full payment from Thurston, which appears to be the only remaining solvent obligor under these settlement agreements. Plaintiffs in the _Mason_ case filed in Portsmouth Circuit Court a motion for judgment against Thurston asserting breach of contract claims with respect to their settlement agreements and, similarly, seeking full recovery from Thurston. Identical or similar motions have been filed in each of the above-captioned cases. After the filing of these motions in state court, the CCR tendered a partial payment to each Plaintiff in the amount that it calculated, pursuant to the Producer Agreement, to be Thurston's share under the settlement agreements.

On May 3, 2001, Thurston, pursuant to 28 U.S.C. § 1452(a), removed to federal court the motions to enforce settlement agreement in the _Fink_ and _Baker_ cases. On May 21, 2001, Thurston removed the motion for judgment filed in _Mason_. The removal notices in _Fink_ and _Baker_ make clear that the removal "applies _only_ to the claims and/or causes of action raised by the settlement enforcement proceeding, and _not_ to any asbestos personal injury claims or other matters pending in the state court case." _Fink_, Dkt. No. 1; _Baker_, Dkt. No 1 (emphasis in originals). Identical grounds for removal are cited in all nine cases. Thurston claims that each suit is one "arising under title 11, or arising in or related to [a case] under title 11," and, accordingly the Court possesses original jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b). In sum, the primary only outstanding issue raised in each of the removed enforcement proceedings is whether Thurston is, as a matter of contract law, jointly and severally liable for the total settlement amount set forth under the respective settlement agreements.

## II.    Discussion

The three issues before the Court are (1) whether the removed enforcement actions are sufficiently "related to" the Armstrong bankruptcy matter to vest this Court with subject matter jurisdiction; (2) should the Court possess jurisdiction over the subject matter of these cases, whether the Court, nevertheless, must abstain from hearing these matters to permit the state court to adjudicate whether Thurston is jointly and severally liable, along with Armstrong and the other relevant companies, for the entire settlement amount described in each of the settlement agreements at issue; and (3) should the Court possess jurisdiction over the subject matter of these cases and abstention not be mandatory, whether permissive abstention, nevertheless, would be in the interests of justice.  The critical statutes for purposes of resolving these issues are 28 U.S.C § 1452 ("Section 1452") and 28 U.S.C. § 1334 ("Section 1334").

Section 1452, in pertinent part, provides as follows:

### Removal of claims related to bankruptcy cases

(a) A party may remove any claim or cause of action in any civil action . . . to the district court for the district where such civil action is pending. *if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.*

(b) *The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.*  An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452 (emphasis added).  Section 1334, in relevant part, provides as follows:

### Bankruptcy cases and proceedings

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction over all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Nothing in this section prevents a district court in the interests of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(c)(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

(d) Any decision to abstain or not to abstain made under this subsection (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1334.

    Thus, the Court has original, but not exclusive, jurisdiction over proceedings "arising in" or "related to" chapter 11 bankruptcy cases, while it possesses original and exclusive jurisdiction over bankruptcy cases "under" chapter 11. Further, even with respect to proceedings "arising in" or "related to" chapter 11 cases, abstention is required if (1) a party "in a proceeding based

11/08/01   11:15 FAX 2148712209       RIGGEL LAW OFFICES                      @024/040

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 65 of 118

upon a State law claim or State law cause of action" files a timely motion, (2) the action "could
not have been commenced" in federal court absent bankruptcy jurisdiction under Section 1334,
and (3) if the action was "commenced, and can be timely adjudicated, in a State forum of
appropriate jurisdiction." See In re RBGSC Investment Corp., 253 B.R. 369, 381 (E.D. Pa.
2000). Finally, even in cases where mandatory abstention is not required, permissive abstention
is an option "in the interests of justice, or in the interest of comity with State courts and respect
for State law." 28 U.S.C. § 1334(c)(1).

### A.    Subject Matter Jurisdiction Under Section 1334

As set forth above, Section 1334(b) confers jurisdiction upon district courts in three
circumstances – (1) cases "under" chapter 11, (2) proceedings "arising in" chapter 11 cases, and
(3) proceedings "related to" chapter 11 cases. Thurston does not argue that the cases before the
Court are actual bankruptcy proceedings "under" chapter 11, over which the Court would have
original and exclusive jurisdiction. Rather, Thurston argues that subject matter jurisdiction over
these cases exists under Section 1334(b) because, at the very least, these proceedings are "related
to" the Armstrong bankruptcy case currently pending in federal court in Delaware. In A.H.
Robins v. Piccinin, 788 F.2d 994, 1002 n. 11 (4th Cir. 1986), the Fourth Circuit adopted the
Third Circuit's test for determining the existence of "related to" jurisdiction under Section 1334.
This test provides as follows:

> The usual articulation of the test for determining whether a civil
> proceeding is related to bankruptcy is whether *the outcome of that
> proceeding could conceivably have any effect on the estate being
> administered in bankruptcy.* Thus, the proceeding need not
> necessarily be against the debtor or the debtor's property. An action
> is related to bankruptcy if the outcome could alter the debtor's rights,
> liabilities, options or freedom of action (either positively or

8

Case 1:01-cv-00181 Document 19 Filed in TXSD on 11/08/2001 Page 66 of 118

negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

Owens-Illinois. Inc. v. Rapid American Corp., 124 F.3d 619, 625-26 (4th Cir. 1997), quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original). "Related to" jurisdiction under Section 1334(b) is broad because "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate . . . ." Id., at 625.

Thurston's primary argument in favor of a finding that these cases are "related to" the Armstrong bankruptcy petition is that, should Thurston be determined to be jointly and severally liable under the settlement agreements, Armstrong would be obligated under the Producer Agreement to indemnify Thurston for its share of the settlement payments to the Plaintiffs. In other words, the outcome of the removed enforcement actions has the potential to expose the Armstrong bankruptcy estate to indemnity claims by Thurston arising from the companies' joint and several obligations under the settlement agreements. In Owens-Illinois, the Fourth Circuit held that "related to" jurisdiction exists where contractual indemnity claims against the debtor are involved because "any recovery by [the plaintiff] against [the non-debtor] would impact the handling and administration of [the debtor's] bankruptcy estate by changing the character of the [non-debtor's] indemnification claim against [the debtor] from contingent and unliquidated to certain and liquidated." Owens Illinois, 124 F.3d at 626-27. Indeed, in finding that jurisdiction existed where "the outcome of the Contribution Action could conceivably have an effect on the Celotex bankruptcy case," the Fourth Circuit in Owens Illinois adopted a very broad and inclusive standard for "related to" jurisdiction where an indemnity agreement between the debtor

9

and a non-debtor may exist. Id., at 626.

Accordingly, a critical issue in the instant cases is whether any indemnity obligation on the part of Armstrong actually exists should Thurston be held jointly and severally liable to the Plaintiffs under the settlement agreements. As evidence of the existence of an indemnity obligation between the CCR members, Thurston directs the Court's attention to Section VI of the Producer Agreement, which provides that "Liability payments and allocated expenses shall be apportioned to each [CCR member] .... Such apportionment shall establish the responsibility of each [CCR member] for a percentage share of liability payments ....". Thurston's Opposition, Ex. 5, Section VI. Thurston also has submitted the declaration of Joseph Jordan, the Chief Financial Officer of the CCR, which states, "[u]nder the Producer Agreement, when a member company fails to pay its share, the other members have an automatic right to indemnity for any portion of that share they are forced to pay." Thurston Opp., Ex. 1, ¶ 7. Finally, Thurston argues that, at the very least, there exists an implied right to indemnity for Armstrong due to the "special relationship" between Thurston and Armstrong under the Producer Agreement.

The Court finds that Section 1334 confers federal subject matter jurisdiction over the removed actions because Thurston has demonstrated a sufficient likelihood that it would have either an express or implied contractual right to indemnity from Armstrong under the Producer Agreement should Thurston be held jointly and severally liable under the settlement agreements. Since the outcome of the Plaintiffs' settlement enforcement proceedings "could conceivably have an effect" on the Armstrong bankruptcy estate by triggering an indemnity obligation under the Producer Agreement, federal jurisdiction exists pursuant to Section 1334.

### B.    Mandatory Abstention

There are six antecedent requirements for mandatory abstention under Section 1344(c)(2)
"First, there must be a timely motion for abstention and (second) the proceeding must be based
upon a state law cause of action. Third, the proceeding must be related to a case under title 11
and (fourth) the proceeding must not arise under title 11. Fifth, the action must be one that could
not have been commenced in federal court absent jurisdiction under [Section 1334], and, sixth,
an action is commenced, and can be timely adjudicated, in a state forum of appropriate
jurisdiction." RBGSC, 253 B.R. at 381. The only one of these factors whose existence is in
dispute is whether the enforcement actions constitute proceedings "arising under" chapter 11 of
the bankruptcy code. In other words, the issue is whether these cases, which likely implicate an
indemnity obligation of the debtor Armstrong, are "core" to Armstrong's bankruptcy
proceedings. If these cases raise a "core" issue "arising under" chapter 11, then mandatory
abstention is not appropriate. Id. On the other hand, if no "core" issue is raised, then abstention
is required.

At 28 U.S.C. § 157(b)(2), "Congress set forth a non-inclusive list of categories of
bankruptcy proceedings that constitute core proceedings." Section 157(b)(2) lists the core
proceedings that a bankruptcy judge may hear and determine under title 11. The Supreme Court,
however, has made clear that Article III places constitutional limitations on the scope of the
bankruptcy courts' jurisdiction. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458
U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Thus, while many of the categories listed in

11

Section 157(b)(2) could be construed quite broadly,[5] such broad construction "risk[s] exceeding the constitutional limitations of Marathon." Finnman, 960 F.2d at 401; Humbolt Express, Inc. v. The Wise Company, Inc., 190 F.3d 624, 631 (4th Cir. 1999) ("a broad reading of the literal terms of [Section 157(b)(2)] could lead to the result that courts treat just about every dispute as 'core'"). Thus, under Marathon and Finnman, "core" proceedings are limited to those proceedings in which "[f]ederal bankruptcy judges are authorized to enter appropriate orders and judgments." Finnman., at 398. If the findings and conclusions of the bankruptcy judge in a proceeding would be subject to de novo review by the district court, then the proceeding is non-core. Id.

The Court finds that the contract disputes between the Plaintiffs and Thurston as to whether Thurston is subject to joint and several liability under the settlement agreements are non-core proceedings relative to the Armstrong bankruptcy. Thurston acknowledges that whether or not it is jointly and severally liable under the settlement agreements is a matter of Virginia contract law. It would make little sense to send these cases to Judge Farnan for a determination under Virginia law as to the issue of joint and several liability. Thurston may submit its indemnity claims against Armstrong in the Delaware bankruptcy proceedings should the state court determine that Thurston is jointly and severally liable for the entire settlement amounts due the Plaintiffs. The Court can discern no reasonable basis for requiring the Plaintiffs to proceed with their enforcement actions in that forum as well. Accordingly, the Court finds that abstention with respect to and remand of the above-captioned cases, which involve issues that are not "core"

---

[5]    See, e.g., 28 U.S.C. § 157(b)(2)(A) and (O) ("Core proceedings include, but are not limited to – matters concerning the administration of the estate . . . and other proceedings affecting the liquidation of the assets of the estate").

12

to the Armstrong bankruptcy, is required under Section 1344(c)(2).

### C.  Permissive Abstention

Finally, even if the dispute between Plaintiffs and Thurston as to whether joint and several liability exists under the settlement agreements were to be construed as "core" to the Armstrong bankruptcy proceeding, and thus not subject to mandatory abstention, "permissive" or "equitable" abstention under Section 1334(c) is appropriate in these cases. "[I]n considering whether equity requires abstention and remand, courts assess (1) the effect on the efficient administration of the bankruptcy estate, (2) the extent to which issues of state law predominate, (3) the difficulty or unsettled nature of the applicable state law, (4) comity, (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (6) the existence of a right to jury trial, and (7) prejudice to the involuntarily removed [party]." RBGSC, 253 B.R., at 381-82.

These factors weigh heavily in favor of equitable abstention to permit the resolution of these matters in the state court. Indeed, the issue of joint and several liability between the CCR members under the settlement agreements may already have been resolved by the state courts in Crawley v. Armstrong World Industries, Inc., L93-1580 (Portsmouth Cir. Ct. June 8, 2000). On June 8, 2000, Judge Cales of the Portsmouth Circuit Court held, inter alia, that CCR members were liable jointly and severally for the full amount of the settlement agreement in that case. Plaintiff's Motion to Remand, Ex. A. On May 1, 2001, the Supreme Court of Virginia found that there was no reversible error in that case and rejected Thurston's petition for appeal. Id., Ex. B. Therefore, it would make little sense for the Court to transfer this case to federal court in Delaware for a determination by Judge Farnan, which would require an application of Virginia

13

contract law, when it seems that the state court is in a position to resolve that issue in these cases expeditiously.

Lastly, the Court is aware that various district courts have transferred at least four allegedly similar cases to the district court in Delaware for a determination by Judge Farnan as to whether remand to state court would be appropriate. See Defendant's Motion to Transfer, Ex. 1-3. Thurston urges the Court to follow those examples. None of the transfer orders entered in those case, however, offer any insight into the reasoning behind transfer. Rather it seems that in each case the court simply deferred to Judge Farnan with respect to whether remand would be appropriate. The Court has no knowledge of the particular facts and circumstances related to those cases. Based on the facts of the instant cases, however, transfer to Delaware strikes the Court as an unnecessarily dilatory approach to resolving Plaintiffs' state law claims related to the settlement agreements. Accordingly, even if abstention were not required in this case, the Court would decline to follow the example of the transfer cases cited by Thurston.

III.  Conclusion

For the reasons set forth above, the Court GRANTS Plaintiffs' motion to remand, and the Court ORDERS that each of the above-captioned cases be remanded to the state court from which they were removed. Defendant's motions to transfer are DENIED. Defendant's motions for extension of time in which to respond to Plaintiffs' motions to enforce the settlement agreements during the pendancy of its transfer motions are GRANTED. Defendant shall respond to Plaintiffs' motions for enforcement of the settlement agreements in accordance with the rules and procedures of the state court to which these cases are remanded.

The Clerk is DIRECTED to send copies of this Order and Opinion to all counsel of

14

07/23/01  13:42 FAX 214 443 0358      STANLEY MANDEL & IOLA    -  WATERS & KRAUS    ☑031/040
07/20/01  FRI 11:26 FAX 757 625 4115        GLASSER AND GLASSER                    ☑016

record.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

July _16_ 2001
Norfolk, Virginia

VIRGINIA: IN THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH

DONALD IVAN CRAWLEY

        Plaintiff,

v.

ARMSTRONG WORLD INDUSTRIES, INC., and

C. E. THURSTON & SONS, INC., and

GAF CORPORATION

        Defendants.

At Law No. L93-1580

### FINAL JUDGMENT ORDER

THIS CAUSE CAME TO BE HEARD upon the Plaintiff's Motion to Enforce Settlement Agreement, and was argued by counsel.

Based on the evidence and arguments presented, the Court makes the following findings of fact:

1. At all relevant times, up to and including December 10, 1999, the Center for Claims Resolution (hereafter, the "CCR") was acting as the authorized agent for a group of asbestos manufacturers and/or suppliers with authority to settle asbestos-related claims made against its members, including the claim made by the plaintiff herein, Donald Ivan Crawley, for asbestos-related personal injuries.

2. At all relevant times, up to and including December 10, 1999, the principals for which the CCR was authorized to act were disclosed, and specifically included **Armstrong World Industries, Inc., C. E. Thurston & Sons, Inc. and GAF Corporation**, as well as other members.



3    On December 10, 1999, plaintiff settled his claim in this lawsuit with the CCR as agent for **Armstrong World Industries, Inc.,** C. E. **Thurston & Sons, Inc. and GAF Corporation,** and all other members, and it was agreed, _inter alia_, that plaintiff would receive a payment of ▨▨▨▨ as consideration for executing a "Limited Release and Covenant not to Sue" (hereafter, "Limited Release") in favor of all CCR members, including **Armstrong World Industries, Inc.,** C. E. **Thurston & Sons, Inc. and GAF Corporation.** The terms of this settlement were confirmed by Robert D. Capritti on behalf of the CCR and its members by letter dated December 10, 1999. The agreed settlement amount of ▨▨▨▨ was due to have been paid ninety days from December 10, 1999, which is on or before March 9, 2000.

4.   Plaintiff provided all documentation as required by the settlement in a timely manner, including the "Limited Release" appended hereto, which was prepared by the defendants' agent, the CCR, and duly signed by the plaintiff.

5.   After the settlement was reached (for reasons unrelated to the plaintiff) defendant **GAF Corporation** either voluntarily withdrew from, or was involuntarily expelled from, the CCR.

6.   Plaintiff received a letter, dated March 15, 2000, and a check in the amount of ▨▨▨▨, which said amount is ▨▨▨▨ less than the agreed settlement.

7.   There remains owing to the plaintiff by the defendants, **Armstrong World Industries, Inc.,** C. E. **Thurston & Sons, Inc. and GAF Corporation,** jointly and severally, the amount of ▨▨▨▨, which said amount was due and payable on or before March 9, 2000; wherefore it is

ADJUDGED, ORDERED AND DECREED, that Plaintiff, Donald Ivan Crawley, is hereby granted judgment in the amount of ▨▨▨▨, together with interest at the judgment rate from March 10, 2000, and costs and attorneys

Glasser and Glasser, P. C.
Dominion Tower
Waterside Drive, Suite 1000
Norfolk, Virginia 23510
(757) 625-8787

☑034/040

████████ against Armstrong World Industries, Inc., C. E. Thurston & Sons, Inc. and GAF Corporation, jointly and severally; and it is further

ADJUDGED, ORDERED AND DECREED, that the plaintiff is hereby awarded immediate execution on this judgment; and it is further

ADJUDGED, ORDERED, AND DECREED, except as provided in this Order, that the foregoing defendants are released from further liability to the Plaintiff, but only to the extent provided by the "Limited Release and Covenant Not to Sue" which was prepared on behalf of the defendants by their agent and signed by the Plaintiff, and which is attached hereto and incorporated herein as if set forth verbatim.

Entered this ____ day of _____, 2000.

_____
JUDGE

I ASK FOR THIS:

_Richard S. Glasser_
Richard S. Glasser, Esquire
Steven L. Lauer, Esquire
Glasser & Glasser, P.L.C.
999 Waterside Drive
Suite 600
Norfolk, Virginia 23510
(757) 625-6787
Counsel for Plaintiff

A copy Teste: Walter M. Edmonds, Clerk of the Circuit
Court of the City of Portsmouth, Virginia

By _Gail A. Hester_ D.C.

Glasser and Glasser, P.L.C.
Dominion Tower
Waterside Drive, Suite 600
Norfolk, Virginia 23510
(757) 625-6787

3

☑ 035/040

9401000007
VA

## LIMITED RELEASE AND COVENANT NOT TO SUE

THIS AGREEMENT is a Release and Covenant Not to Sue executed on the 17th day of January, 2000, by DON CRAWLEY, Social Security No. 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, and BETH O. CRAWLEY (hereinafter referred to as "Covenantors"), and by members of the Center for Claims Resolution, more specifically: Amchem Products, Inc.; Armstrong World Industries, Inc.; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company) and the NGC Asbestos Disease and Property Damage Settlement Trust; CertainTeed Corporation; C.E. Thurston & Sons, Inc.; Dana Corporation; Ferodo America, Inc.; Gasket Holdings, Inc. (f/k/a Flexitallic, Inc.).; GAF Corporation; I.U. North America, Inc.; Maremont Corporation; National Service Industries, Inc.; NOSROC Corp.; Pfizer Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T&N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); and United States Gypsum Company; (hereinafter referred to as "Covenantees").

## WITNESSETH:

In consideration of the sum of One Dollar and 00/100 ($1.00), and other good and valuable consideration, paid to DON CRAWLEY and BETH O. CRAWLEY and their attorney, CHARLOTTE E. VAUGHN, ESQ., the receipt of which is hereby acknowledged, the parties do hereby enter into this Release and Covenant Not to Sue as follows:

Covenantors will not institute, maintain or prosecute any action or suit at law or in equity against (a) Covenantees and/or any actual and/or alleged parent corporations, subsidiaries, predecessors, and successors, and their respective present and former parent corporations, subsidiary corporations, successor corporations, predecessor corporations, and affiliated corporations; (b) any of the aforesaid or above-described corporations' present and former successors, predecessors, and assigns; and/or (c) present and former insurance carriers, directors, officers, agents, servants, employees, and stockholders of all such heretofore described entities; for any claim, demand, action or cause of action, civil or maritime, including any claim for consortium, loss of society, care, services, support or companionship, whether developed or undeveloped, resulting or to result, known or unknown, past, present or future, for, or arising out of, the disease of pulmonary asbestosis due to DON CRAWLEY's exposure at any time during his lifetime to any asbestos products manufactured, sold or distributed by the Covenantees. Covenantors further agree to dismiss with prejudice the action pending in the CIRCUIT COURT in 3RD CIRCUIT PORTSMOUTH, VIRGINIA, DOCKET# L931580, as to the above Covenantees.

1

Covenantors and Covenantees agree that the Covenantors specifically reserve all rights of action, claims and demands against any and all persons, firms, and/or corporations, including the Covenantees, their parents, subsidiaries, predecessors, and successors, for personal injury or death resulting from mesothelioma, lung cancer, primary colon-rectal, laryngeal, esophageal or stomach cancer which was not alleged in the existing cause of action allegedly resulting or to result from DON CRAWLEY's exposure to any asbestos products mined, manufactured, sold or distributed by the Covenantees.

It is understood by the Covenantors that the payment hereunder is not to be construed as an admission of liability on the part of the Covenantees, by whom liability has been expressly denied.

Covenantors expressly reserve all rights of action, claims, and demands against any and all persons, firms or corporations other than the Covenantees and/or Covenantees' actual and/or alleged parent corporations, subsidiary, predecessor, successors, officers, directors, and employees.

Covenantors further expressly reserve all rights of action, claims, and demands against any and all persons, firms, or corporations, including the Covenantees, their parents, subsidiaries, predecessors, and successors, by reason of any personal injury arising out of BETH O. CRAWLEY's exposure to any asbestos product mined, manufactured, sold, or distributed by any and all persons, firms or corporations, including the Covenantees.

It is agreed by and between Covenantors and Covenantees that the sum of One Dollar and 00/100 ($1.00), and other good and valuable consideration, is the sum being paid in good faith to the Covenantors, DON CRAWLEY and BETH O. CRAWLEY, by, the Covenantees in consideration of the execution of this Agreement. This Covenant shall inure to the benefit of the Covenantees and it shall bind Covenantors, their heirs and legal representatives.

Covenantors and Covenantees agree that this Release and Covenant Not to Sue is executed under Section 8.01-35.1, Code of Virginia as amended. It is expressly understood that this provision does not alter the finality of the settlement set forth herein, and in no event shall Covenantees be liable for any additional payment to Covenantors for, or as a consequence of, pulmonary asbestosis of DON CRAWLEY. If Covenantees are found liable for any injury for, or as a consequence of, pulmonary asbestosis due to DON CRAWLEY's exposure to asbestos products manufactured by Covenantees, the Covenantors will indemnify Covenantees for any such loss.

Covenantors agree to assume full responsibility to discharge or otherwise satisfy any claim or lien for reimbursement of payments or disbursements made to, or on behalf of DON CRAWLEY for, or as a consequence of, pulmonary asbestosis under any Workmen's or Employee's Compensation program and/or retirement programs and/or

2

medical insurance or reimbursement plan, and it is understood that Covenantees have no responsibility for the same and that Covenantors will hold Covenantees harmless from any such claim.

Covenantors agree that, except for separate settlement agreements, all amounts recovered in judgment by Covenantors against any other persons, firms, or corporations jointly or severally liable to Covenantors for any claims for injuries and damages as a consequence of DON CRAWLEY's exposure to asbestos products, shall be reduced by the amount of settlement.

Covenantors have carefully read this Release and Covenant Not to Sue and understand the contents thereof and agree thereto.

This instrument reflects the entire Covenant between Covenantors and Covenantees and no statements, promises or inducements made by the parties hereto that are not contained herein shall be valid or binding.

IN WITNESS WHEREOF, Covenantors have executed this Covenant Not to Sue on the date above written.

DON CRAWLEY
Social Security No. 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

BETH O. CRAWLEY

Subscribed And Sworn
before me this 17 Day
OF Jan 00.

Lyda A Rothwell
Notary

My Commiss Expires
4-30-00

3

038/040

STATE OF VIRGINIA

CITY/COUNTY OF _Id. of W5/7_ to-wit.

The foregoing Covenant Not to Sue was acknowledged and subscribed to before me on this _12_ day of _January_, _200_, by DON CRAWLEY and BETH O. CRAWLEY.

_____
NOTARY PUBLIC

My Commission expires: _4/30/00_

VAXXHWLC
December 22, 1999
1:48 PM

4

# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on* Tuesday   *the* 1st   *day of* May, 2001.

Armstrong World Industries,
   Inc., et al.,                                              Appellants,

   against         Record No. 002209
                   Circuit Court No. L93-1580

Donald Ivan Crawley,                                          Appellee.

          From the Circuit Court of the City of Portsmouth

          Upon review of the record in this case and consideration
of the argument submitted in support of and in opposition to the
granting of an appeal, the Court is of opinion there is no
reversible error in the judgment complained of as to C.E. Thurston
and Sons, Inc.  Accordingly, the Court refuses the petition for
appeal as to that appellant.

                         A Copy,

                            Teste:

                                David B. Beach, Clerk

                            By:  *Wendy K Jack*

                                Deputy Clerk

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 81 of 118

☑040/040

07-23-01  13:43 FAX 214 443 0358          STANLEY MANDEL & IOLA     ~ WATERS & KRAUS     ☑035 040
07/20/01  FRI 11:27 FAX 757 625 4115          GLASSER AND GLASSER                         ☑020

SEEN: *✓ objects to*

_____
Counsel for Defendant Armstrong World Industries, Inc. *, mustion ) Center for claims Registration*

SEEN: *✓ objected to,*

_____
Counsel for Defendant C. E. Thurston & Sons, Inc. *, Motion, Center for claims Resolution*

SEEN:
*and objected to*

_____
Counsel for Defendant GAF Corporation

Glasser and Glasser, P.L.C.
Dominion Tower
9   aterside Drive  Suite 600
  rfolk, Virginia 23510
     (757) 625-6787

4

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 82 of 118

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC 1 9 2000

CLERK, US. DISTRICT COURT
By _____ Deputy

PATRICIA PAINTER and JERRY
PAINTER, individually and as Wrongful
Death Beneficiaries of Bennie Painter,

Plaintiffs,

v.

CERTAINTEED CORP., T&N, PLC., and
UNITED STATES GYPSUM CO.,

Defendants.

§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 3:00-CV-2714-M

ENTERED ON DOCKET

DEC 2 0 2000

U.S. DISTRICT CLERK'S OFFICE

## ORDER

The Court has before it Plaintiffs' Motion for Expedited Remand, filed on December 15, 2000 in the above-entitled case, and Removing Defendants' Motion to Transfer to the District of Delaware, filed on December 18, 2000. Having considered the motions, applicable law and arguments of counsel at a hearing held on December 18, 2000, the Court is of the opinion that, for reasons stated on the record in open court, Plaintiffs' Motion for Expedited Remand should be GRANTED and Defendants' Motion to Transfer should be DENIED as moot. The Court, however, will not assess costs against Defendants.

The Court hereby REMANDS this case to the Dallas County Court at Law No. 3 and the Clerk of Court is hereby ORDERED to effect the remand in the usual manner.

SO ORDERED.

DATED: December 19, 2000.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS





'REDACTED'

1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2             FOR THE NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION
 3
   PATRICIA PAINTER AND JERRY     (   CIVIL ACTION NUMBER
 4 PAINTER, et al.                (
                 Plaintiff,       (
 5                                (   3:00-CV-2714-M
   VERSUS                         (
 6                                (
   CERTAINTEED CORP. T&N, PLC,    (   December 18, 2000
 7 UNITED STATES GYPSUM CO.       (
                 Defendant.       (   2:30 p.m.
 8
 9              TRANSCRIPT OF MOTIONS HEARING
           BEFORE THE HONORABLE BARBARA M.G. LYNN
10              UNITED STATES DISTRICT JUDGE

11 A P P E A R A N C E S:

12 FOR THE PLAINTIFF:        KAY GUNDERSON REEVES
                             JUDY BRADSHAW
13                           MEGAN KRAMER
                             KAESKE - REEVES LLP
14                           6301 Gaston Avenue, Suite 735
                             Dallas, Texas 75214
15                               214.821.1221

16

17 FOR THE DEFENDANT:        GARY D. ELLISTON
                             DEHAY & ELLISTON LLP
18                           3500 Bank of America Plaza
                             901 Main Street
19                           Dallas, Texas 75202-3736
                                 214.210.2400
20
                             LAWRENCE GERMER
21                           GERMER BERNSEN & GERTZ LLP
                             805 Park Street
22                           Beaumont, Texas 77701
                                 409.828.2080
23

24

25
```

```
 1      COURT REPORTER:          P. SUE ENGLEDOW RPR/CSR NO. 1170
 2                               P.O. Box 1247
                                 Red Oak, Texas 75154
 3                                  214/753-2325

 4         Proceedings reported by mechanical stenography,
        tra script produced by computer.
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 1.01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 85 of 118

3

```
              P R O C E E D I N G S
```
                December 18, 2000
                    2:30 p.m.
                 MOTIONS HEARING

       (Judge enters courtroom.)

       (Court opening.)

              THE COURT:  Good afternoon everyone.  I appreciate

everybody coming by on such short notice.

       We're here on Painter versus Certainteed Corporation,

cause number 3:00-CV-2714-M.  We're here on the motion filed

by the plaintiffs for remand, the response to the motion for

remand, and a motion to transfer to Delaware where the

Armstrong bankruptcy is pending.

       Let me have the announcements first for the plaintiff,

please.

              MS. REEVES:  Yes, your Honor.  Kay Reeves appearing

on behalf of the plaintiffs Painter.

              THE COURT:  For the defendant?

              MR. ELLISTON:  Gary Elliston and Larry Germer on

behalf of the defendants, your Honor.

              THE COURT:  Thank you.

       Mr. Germer, I appreciate your coming up on such short

notice.

       For the record, we had a conference call on Friday in

which Ms. Reeves and Mr. Germer and I participated.  I think

you all have met my law clerk, Raman Gill, who also was

Case 1:01-cv-00181  Document 19  Filed in TXSD on 11/08/2001  Page 86 of 118

4

1    pre⎯ent during the call.

2         I have received filings by the defendants since our

3    Fri⎯ay telephone conference pursuant to my request.  Those

4    hav⎯ been served on you, have they not, Ms. Reeves?

5         MS. REEVES:  Yes, your Honor, they have.

6         THE COURT:  So we're here on the motion to remand

7    and then I'll hear from the defendants on their response and

8    their motion to transfer.

9         I'll hear from you first, Ms. Reeves.

10        MS. REEVES:  Thank you, your Honor.  As set forth in

11   my brief, and as we discussed on Friday, I have a three

12   pronged -- three prongs to support my motion for remand.

13        First, the jurisdictional facts alleged in the notice of

14   removal were incorrect, in the first place.  There is nothing

15   in the underlying motion that was removed from state -- County

16   Court at Law Number 3 that impacted in any way the estate, the

17   right, the obligations of the bankrupt.  The underlying motion

18   was a motion to compel settlement funds.  It did not mention a

19   bankrupt party, did not allege joint conduct by a bankrupt

20   party, did not allege joint and several liability between the

21   defendants, the removing defendants here, and any bankrupt

22   entity.

23        And I would note at this point that that is one key

24   ground on which this case is distinct from the Wood case

25   relied upon heavily by the movant and defendant.

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 87 of 118

                                                                          5

 1          This is not a case where I have brought the removed

 2     motion against a party alleging that they have joint conduct

 3     and that that joint conduct is the substance of the instant

 4     motion against these defendants.

 5               THE COURT:  Well, let me step ahead for a minute.

 6     Let s get to the point, as I understand what the point is

 7     here.  I mean, what will happen here, as I understand it, if I

 8     remand this case, there will be a hearing before Judge

 9     Jenovein in County Court Number 3, the plaintiffs will be

10     taking the position that the full settlement amount, which in

11     the documents I have shows up as                 Am I

12     remembering that correct?

13               MS. REEVES:  Correct, your Honor.

14               THE COURT:  A portion of which is allocable to these

15     plaintiffs, but that number is ascertainable not from the

16     papers, but from what you have represented to me, that that's

17     an allocation that's been made by plaintiffs' counsel among

18     a variety of plaintiffs, these plaintiffs and others.  That

19     amount is not reflected in the documents that I have before

20     me.  It's in the $

21               MS. REEVES:  That's correct, your Honor, although I

22     would say that              was consideration for the entire

23     agreement, including the settlement, so what was out to

24     Mr. Painter.  So what was allocated to the Painters --

25               THE COURT:  That's your internal business.  My point

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 88 of 118

6

```
  .00    1    is, I don't want the record to be misstated.  There is not an

         2    agreement that you're trying to enforce before Judge Jenevein

         3    to get $ .            for the Painters, or are you?

         4            MS. REEVES:  Well, the settlement agreement was a

         5    settlement agreement for the Painters' claims, consideration

         6    of which was the settlement of nine additional claims for a

         7    total.

         8            THE COURT:  What are you going to be asking Judge

         9    Jenevein to do?

        10            MS. REEVES:  We have asked Judge Jenevein to compel

        11    the removing parties to either pay the full amount of the

        12            ..., or to compel CCR, their agent, to pay that

        13    money.  The CCR is the sole and exclusive party that

        14    negotiated the settlement amount and has exclusive right to do

:59:00  15    that and to make payment to the plaintiffs.

        16       CCR is not itself a party to the underlying action, we do

        17    not believe that the Court can enter a judgment against CCR,

        18    and we will not be asking them to do that, but these

        19    defendants can be ordered to compel their agent to pay the

        20    funds to us.

        21            THE COURT:  Well, the original motion to compel,

        22    which is attached to the notice of removal, was in fact a

        23    motion to compel CCR, the Center for Claims Resolution, to

        24    settle pursuant to the terms of that.  And that motion says

        25    the agreement indicated that the plaintiffs would settle their
```

Case 1:01-cv-00181  Document 19  Filed in TXSD on 11/08/2001  Page 89 of 118

:30    1  claims as against CCR in return for payment in the amount of

2  $       .  That's what the original motion says.

3  There is now an amended motion which I had received

4  subsequent to the initial notice of removal, I believe, as an

5  attachment to your papers.

6          MS. REEVES:  Yes, your Honor.

7          THE COURT:  And it reflects -- Ms. Reeves, if you

8  can direct me to it.

9          MS. REEVES:  Your Honor, the amended motion was

10  filed in large part because we felt that the original motion

11  was really not correct on what the terms of the settlement had

12  actually been.

13          THE COURT:  For the moment I just want to find it.

14          MS. REEVES:  If you are asking me what are we

:01:00   15  seeking?

16          THE COURT:  I just want you to tell me where it is

17  in the record for the moment.

18          MS. REEVES:  The attachment B to our motion for

19  expedited remand.

20          THE COURT:  The confusion I have got, there is two

21  Exhibits B.  I guess some of the exhibits are exhibits to

22  other exhibits.

23  All right.  So the amended motion was filed against four

24  named defendants:  United States Gypsum, Federal Mogul, T&N,

25  PL, and Certainteed, which are jointly represented by the

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 90 of 118

8

30   1   Center for Claims Resolution.

2       As I understand the facts, there were, is it correct,

3   five defendants; that is, these four and Armstrong in the

4   original action?

5          MS. REEVES:  Actually, your Honor, there were more

6   defendants that were members of the CCR in the original action

7   National Gypsum.  The Asbestos Claims Management Trust had

8   been a member of the CCR and declared bankruptcy.

9          THE COURT:  Let me ask you --

10         MS. REEVES:  Armstrong was, yes, your Honor, named

11  in the original petition.

12         THE COURT:  Okay.  I'm not asking my question

13  clearly.

14      As of the time of the agreement to settle, who was left

:02:30   15  in the case?

16         MS. REEVES:  Of the CCR?

17         THE COURT:  Who was left in the case as to -- well,

18  let me put it this way.

19      Are there additional defendants remaining in the case

20  after the settlement with the CCR parties?

21         MS. REEVES:  There were, yes.  The case was set for

22  trial on September the 18th and there were parties remaining

23  in the case on the trial setting date and settlements were

24  made with those parties.

25         THE COURT:  Well, right now the only parties

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 91 of 118

☑011/038

☑012

9

1  remaining whose elements are in issue then are these four

2  defendants and Armstrong; is that correct?

3          MS. REEVES:  There are other parties whose

4  settlement payments are late, your Honor, but we seem to have

5  been having more progress in working something out with them

6  and so we have not yet filed with Judge Jenevein a comparable

7  motion for those other defendants, but it is my understanding

8  that all of the defendants named in the original Painter

9  action have been resolved by settlement or nonsuit.

10          THE COURT:  Well, let me put the question this way.

11      Was it contemplated by the plaintiffs that the parties

12  behind the settlement with the Center for Claims Resolution

13  were United States Gypsum, Federal Mogul, T&N, Certainteed,

14  and Armstrong?

15          MS. REEVES:  Your Honor, the Center for Claims

16  Resolution is not very forthcoming about how payments are made

17  and who among the CCR members are obligated when they settle

18  any particular case.  I myself do not know how they decide who

19  pays.

20      It is my general understanding that it does not matter

21  how many CCR defendants are paid, that they all contribute to

22  settlement payments, and when a release is signed, all of the

23  CCR parties are released, not just those named in the

24  petition, and not just those sued in counterclaims or

25  something of that nature.

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 92 of 118

10

30    1          So when you ask what we contemplated, the CCR is murky,

      2    but we knew that they would ask for a release to be signed as

      3    to all, and such a release was executed, your Honor.  In terms

      4    of who made what particular --

      5          THE COURT:  Okay.  I wasn't getting to that.  I

      6    wasn't getting to that issue.

      7          Then these parties that are listed as release parties in

      8    the release, which is --

      9          MS. REEVES:  Include Armstrong, your Honor.

     10          THE COURT:  They include Armstrong.  Do they also

     11    include parties who were not -- let me say it differently --

     12    persons or entities who were not parties to your lawsuit at

     13    all

     14          MS. REEVES:  Yes, your Honor.

1:05:00   15          THE COURT:  What you're representing to me,

     16    Ms. Reeves, is that you had no communication of any kind with

     17    the Center for Claims Resolution as to who would be paying

     18    what?  .

     19          MS. REEVES:  My partner is the primary negotiator

     20    for us, your Honor, but neither he nor I was told what

     21    percentage any particular defendant would be paying.  And I

     22    can represent that in previous conversations I have had about

     23    how the CCR worked, I have been told that CCR doesn't tell how

     24    that all works out.

     25          Having seen the producers' agreement this morning for the

Case 1:01-cv-00181  Document 19  Filed in TXSD on 11/08/2001  Page 93 of 118

11

30  1   first time and learning that perhaps even what was tendered to

2   the Court is not the up to date producers' agreement, the way

3   the attachments explain the allocation is utterly unclear to

4   me and it seems that as to high value claims like this one, a

5   little bit ad hoc and not even described in the producers'

6   agreement appropriately.

7           THE COURT:  That's the first time you have seen

8   that, or some iteration of that?

9           MS. REEVES:  Yes, your Honor.

10          THE COURT:  Let me try to just cut to the chase

11  here, and if I'm missing something, by all means correct me,

12  but it's my understanding that essentially the plaintiffs'

13  position is, look, we had an agreement with CCR, the parties

14  tha  are alive and well that we know to be members of CCR are

1:06:30  15  the parties who we have named now in connection with our

16  amended motion, we want to go before Judge Jenevein and get

17  Judge Jenevein to compel that the full payment be made, if the

18  parties that pay have a claim for contribution against

19  Armstrong, God be with them, they may go to Delaware and

20  assert it if they like?

21          MS. REEVES:  That's correct, your Honor, although I

22  think that there are other possibilities of what could happen

23  with a Judge Jenevein.  I mean, in the event that he doesn't

24  decide to enter judgment for the total amount against the

25  three, I can ask for a trial setting on the underlying claim.

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 94 of 118

12

1 | He could enter judgment severally against the four named

2 | defendants, each of them, you know, responsible for a quarter.

3 | There are various options, none of which would directly

4 | impact -- or even absent another action or two, and I would

5 | say it would be at least two, having looked at the producers'

6 | agreement and seeing that they have to do an ABR, I think,

7 | before they can prosecute an action, that this is far too

8 | removed to constitute related to jurisdiction.

9 | Finally, your Honor, I think it's important to note that

10 | because there is such a lot in the record from the defendants

11 | about the producers' agreement and how it works that really

12 | wasn't in the underlying pleading that your Honor looked at to

13 | determine if there is removal jurisdiction, that your Honor

14 | does not have to get into all of the details about what's

15 | going to happen and how it might work and what the play would

16 | be and what are the steps, because at the end of the day the

17 | best they can show with all of this is related to

18 | jurisdiction, the very Wood case upon which they rely for

19 | their support that this is related to is -- says at the end of

20 | the case that what -- regardless, that joint conduct was

21 | insufficient to demonstrate a core proceeding.

22 | This is not a core proceeding.  And so given that, even

23 | if it is related to, and we can test that for the reasons your

24 | Honor outlined, your Honor must abstain.  There is a state

25 | court proceeding that's been on file, my motion is timely for

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 95 of 118

13

    30    1    you to abstain, Judge Jenevein was going to hear this action

          2    on Friday when this case ensued.

          3        The Celotex case that was cited by the defendants

          4    absolutely says nothing about abstention except that the party

          5    in that case waived their right to waive an abstention

          6    argument.  I would say that the producers' agreement does not

          7    provide for the sort of indemnification or any indemnification

          8    such as what is at issue in the Celotex case in which a

          9    finding would have triggered an automatic indemnification

         10    obligation by the debtor.

         11        So, Your Honor, I think you don't have to involve

         12    yourself in what perhaps would be a morass of possibilities

         13    and what's the nature of their agreement by looking at the

         14    mandatory abstention provisions and the elements which are

1:09:30  15    present here.  So I think that your Honor could rule on that

         16    basis alone.

         17            THE COURT:  All right.  You didn't fly all the way

         18    up here for nothing, did you, Mr. Germer, you're not going to

         19    let Mr. Elliston have all the fun, are you?

         20            MR. GERMER:  I asked him to let me talk, but he

         21    said, Germer, I have seen you in action, you better let me

         22    handle this.

         23            THE COURT:  Well, I have seen him in action.

         24            MR. GERMER:  Your Honor, I did want to say that I do

         25    appreciate very much you giving us this additional time.  As

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 96 of 118

00      1    you can see, a lot of work was done over the weekend.  We've

        2    tried to get more information to the Court.  We appreciate

        3    you, number one, giving us the time today and for letting us

        4    have this hearing.

        5           THE COURT:  That's fine.  Obviously, Mr. Elliston,

        6    I'm pulling your leg.  I'm happy to hear from you.

        7        Let me just say before you begin, and obviously I

        8    continue to interrupt with questions, as is my nature.

        9        I remain concerned -- having read the papers and looked

       10    at the cases, I remain concerned that this issue is at best

       11    premature, because I do not know what Judge Jenevein will do.

       12    This is, at this juncture, to me, very hypothetical.

       13        I do not want that quoted back to me in the event that I

       14    remind you and you try to come back here again, that I invited

       15    you to do that.  I'm not addressing if, as, and when I would

       16    look at it again.  But at this juncture I don't know that

       17    Judge Jenevein would conclude that Armstrong has any

       18    responsibility here at all.  He may.  But he may also conclude

       19    that there is no responsibility of Armstrong, and the only way

       20    that the plaintiffs can collect from Armstrong is to go file a

       21    claim in Armstrong's bankruptcy, and clearly that would be

       22    something that would need to be filed in Armstrong's

       23    bankruptcy.

       24        I don't predict what Judge Jenevein would do, but this

       25    notion that because of what the plaintiffs are doing that

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 97 of 118

15

```
  30   1    inevitably this involves a contribution claim is based on a
       2    series of assumptions that may turn out to be invalid.
       3           MR. ELLISTON:  Your Honor, thank you.  If I could
       4    address that, and actually the reason I asked Mr. Germer to
       5    let me speak first was I anticipated that you would want to
       6    cut to the chase and ask some questions, so I wanted to stand
       7    first because I do have a little more factual background in
       8    this than Mr. Germer, and hopefully we can work through this
       9    and address your Honor's question.
      10           The defendants, as I understand it, at the time of the
      11    settlement that were members of the CCR were in fact
      12    Certainteed, T&N, U.S. Gypsum, the three removing defendants,
      13    and Armstrong World Industries, who we refer to as AWI.
      14           That settlement was negotiated by the CCR representative
12:30 15    on behalf of its disclosed principals, which would be those
      16    four defendants.
      17           And plaintiffs' counsel is correct, the CCR manages the
      18    asbestos personal injury litigation for its members, it
      19    negotiates the settlements.  CCR was not a defendant in that
      20    plaintiff case, but they negotiated the settlement on behalf
      21    of those four disclosed principals at the time.
      22           Now, on december 6, as your Honor knows, AWI declared
      23    bankruptcy.
      24           THE COURT:  What is Federal Mogul?
      25           MR. ELLISTON:  Federal Mogul, your Honor, is not a
```

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 98 of 118

1  member of the CCR, but Federal Mogul purchased the assets of

2  T&N and other related companies, and so there is an allegation

3  by plaintiffs in the underlying case that Federal Mogul would

4  ultimately be responsible for T&N's liabilities.  But Federal

5  Mogul itself is not a member of the CCR.

6      So, in any event, the three members of the CCR that are

7  solvent, U.S. Gypsum, Certainteed, and T&N have tendered

8  checks to the plaintiff paying their allocated shares of the

9  settlement, which of course plaintiffs have rejected, and what

10 plaintiffs seek to do here is to have the three solvent

11 defendant members of the CCR pay the share of the insolvent

12 member, which would be Armstrong World Industries.

13     In other words, even though they don't plead it as such,

14 what they're seeking to impose is joint and several liability

15 under this settlement agreement.

16     And, your Honor, maybe -- I understand your Honor's

17 concern about this being premature, but what the CCR solvent

18 members are attempting to do is to get these matters into the

19 federal court system and get them to the bankruptcy court,

20 because this is not an isolated event, as you might imagine.

21     As we set forth in our motion, AWI is -- owes in excess

22 of $50 million for settlements that have previously been

23 negotiated, and it will involve thousands of claimants across

24 America, not just these folks, and so we believe that the

25 evidence is clear that this is related to the bankruptcy.

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 99 of 118

17

1        THE COURT:  Well, they're not going to be -- they

2    won t be bound in any way.  If I'm missing this, correct me,

3    but let's say that Judge Jenevein concludes that you are

4    res;onsible for their share.  Then -- and I left you to your

5    own devices in state court -- you would either come back here

6    and try to get it over there, or you would go there directly.

7    But Armstrong is not going to be bound by that decision by

8    Jud e Jenevein, is it?

9        MR. ELLISTON:  I agree with your Honor.

10        THE COURT:  The reason I'm asking you that,

11   Mr. Elliston, with all respect to your clients -- and I invite

12   you to correct me on this, I really do not pretend to be an

13   exp rt in this particular matter, but as I understand it, the

14   iss e of my jurisdiction here is really predicated -- my

15   pot ntial jurisdiction, because this is related to a

16   ban ruptcy, is predicated on the notion that I should not let

17   som thing untoward happen to the debtor.  Not that I should

18   loc out for anybody in your client's position who might in

19   tur  be asserting a claim against the debtor.  Because if you

20   do, that will certainly be in the bankruptcy court.

21        Now, I may be wrong, and I invite you to correct me, but

22   unl ss I'm missing something, the notion that I should be

23   syn athetic to the fact that -- and in a global sense, I am.

24   It' a question of whether I'm sympathetic to the extent that

25   it results in my exercising jurisdiction -- should I be

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/06/2001   Page 100 of 118

18

```
    00    1    sympathetic to the fact that there is going to be a lot of
          2    litigation where all of the parties are not present in one
          3    particular matter, which certainly would be more convenient
          4    for your clients, but at the same time plaintiffs are going to
          5    be dragged up to Delaware when they are not asserting claims
          6    against Armstrong.  It would be you, your clients, who would
          7    be asserting -- I think it's fair to say contribution claims,
          8    because this is not an indemnity situation, is it, it's just a
          9    contribution claim?
         10        MR. ELLISTON:  Actually, your Honor, we believe it
         11    is an indemnity.  It's a contractual indemnity situation
         12    because of the cost-sharing arrangement and the agreement in
         13    the CCR between the parties.
         14        THE COURT:  But -- I'm not using it in the artful
  :17:30 15    way I should.  It is for a percentage of the total, not for
         16    the total?
         17        MR. ELLISTON:  Correct, your Honor.
         18        THE COURT:  That's what I meant.
         19        MR. ELLISTON:  Well, your Honor, I'm not sure I can
         20    fairly say that your understanding is incorrect as to why the
         21    related-to language is there, but it is our position that if
         22    in fact the plaintiffs win, what occurs here is that -- and
         23    I'm talking about in Judge Jenevein's court.  If in fact they
         24    were to prevail and these defendants, the solvent defendants,
         25    had to step forward and pay the share of AWI, as a practical
```

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 101 of 118

19

00    1   matter it affects the estate because the obligation of AWI to

      2   the plaintiffs is wiped out.  It does put these defendants in

      3   a position where they would have to go to Delaware to seek

      4   indemnification.

      5        On the other hand, if we prevail, if the defendants

      6   prevail before Judge Jenevein below and it is determined that

      7   there are several obligations, then the AWI estate would be

      8   impacted because they would be put in a position that they

      9   would owe their entire share and it would not be the

     10   bankruptcy court who's making that determination, who we

     11   believe should be making the determination, but rather it

     12   would be Judge Jenevein.

     13        THE COURT:  But Ms. Reeves would have to go then to

     14   Delaware -- no disrespect to Judge Jenevein, nor would the

1:19:00   15   situation be any different if it were me, as I understand it,

     16   if Judge Jenevein said these checks that have been tendered by

     17   you on behalf of Certainteed, T&N, U.S. Gypsum, that's all you

     18   need to tender, so Ms. Reeves comes up short, whatever the

     19   number is, she has got to go to the bankruptcy court to

     20   collect that.  And what Judge Jenevein did isn't going to make

     21   a hill of beans of difference to the bankruptcy court.

     22        If I'm correct in my understanding, that's what I started

     23   with earlier, that Armstrong cannot be bound by that

     24   determination, they're not there.

     25        MR. ELLISTON:  I agree with your Honor.  It's the

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 102 of 118

```
 30    1    thir d scenario -- the third scenario would be that Judge
       2    Jenevein would rescind the contract for a number of reasons,
       3    it's not specific enough, it's not specific to the Painters or
       4    to the amount that would be owed to the Painters, that they
       5    would rescind the contract, then you would have AWI put in a
       6    position where they have an unliquidated claim, an indefinite
       7    claim against them that would be reinstated here in the state
       8    court.  When in fact the bankruptcy estate might prefer to
       9    have it remain a liquidated claim, and the bankruptcy court
      10    make that determination there.

      11         So in fact Judge Jenevein could make a determination that
      12    would impact the estate.  Not because he's simply saying you
      13    don t owe it, defendants, you have to go seek indemnity, or
      14    you do owe your several share and the bankruptcy court could
):20:30  15    say, well, we don't care what you say, Judge Jenevein.  But
      16    the third alternative is the contract could be rescinded for a
      17    number of reasons.

      18         THE COURT:  The settlement contract?  Is that what
      19    you re referring to?

      20         MR. ELLISTON:  Correct.

      21         THE COURT:  And --

      22         MR. ELLISTON:  And the determination there, your
      23    Honor, because if -- you have seen the letter agreement, it's
      24    not specific as to the Painters, there's not separate amounts
      25    for any of the defendants or the plaintiffs.  And, of course,
```

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 103 of 118

21

1   you: Honor can imagine, there is a lot of dispute between the

2   parties as to values for each of the individual cases and who

3   would owe what under each of those individual cases.  And I

4   don t want to go too deep there, because I'll be frank with

5   you Honor, I don't know what would occur in front of Judge

6   Jenevein with regard to motions and defenses, but I can see

7   where certainly in this particular case the administration of

8   the estate of AWI in front of the bankruptcy court could be

9   affected.  Certainly understanding that we're not just talking

10  about this case or these ten cases, but we're talking about

11  thousands of cases nationwide.  What your Honor does here, and

12  what we anticipate other federal court judges will do here,

13  will be extremely important and will have an impact upon the

14  estate of AWI.

15          THE COURT:  Let me say that back to you,

16  Mr. Elliston.  I just want to make sure I'm understanding

17  tha .

18       So with respect to your third scenario, what you're

19  envisioning here is that Armstrong might think this is a good

20  deal and it would rather pay its share, the bankruptcy

21  notwithstanding, but Judge Jenevein would determine that the

22  agreement is unenforceable on its terms and set it aside

23  but -- I can't take judicial notice of this, but just on a

24  visceral level, I have to assume that Armstrong knows

25  something about what's happening here.  They're not here.  But

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/06/2001   Page 104 of 118

30    1   presumably based on the agreement the Center has had to advise

      2   Armstrong about the goings on here.

      3        Is it fair for me to assume that?  You're asking me to

      4   assume that Armstrong is sort of looking over these

      5   proceedings and really wanting to enforce the settlement

      6   agreement, but not ponying up the money in effect.

      7            MR. ELLISTON:  No, Your Honor, I did not intend to

      8   indicate that.  And I think your Honor should not assume that

      9   AWI is aware of what's transpiring here.  Once they went into

     10   bankruptcy court and sought the bankruptcy protection -- and

     11   I'm going to speak a little bit out of turn myself -- it is my

     12   assumption, your Honor, that they were suspended or terminated

     13   as part of the CCR.

     14        In any event, your Honor, I believe that all actions

:23:30  15  against AWI would be stayed under the bankruptcy court, so

     16   therefore I would not anticipate that they are watching or

     17   overseeing this.

     18            THE COURT:  I'm not making myself clear, and it was

     19   my use of language, not the way you heard it.  Let me step

     20   back a minute.

     21        What I meant to say, Mr. Elliston, was this.

     22        It would not be a hasty assumption on my part that in

     23   September, which is about two and a half months before the

     24   bankruptcy was filed based on the information I have before

     25   me, that Armstrong, which indisputably was a member of CCR --

Case 1:01-cv-00181  Document 19  Filed in TXSD on 11/08/2001  Page 105 of 118

1        MR. ELLISTON:  Correct.

2        THE COURT:  -- would know that an agreement was

3  struck with the plaintiff, and whatever the deal was with

4  respect to Armstrong's participation, it knew that.

5        MR. ELLISTON:  Correct, they did.

6        THE COURT:  So when it went into bankruptcy, even

7  though obviously all the actions are stayed, Armstrong would

8  know what deal it had.

9        MR. ELLISTON:  Correct.

10       THE COURT:  So that if it considered it a good deal,

11  it would have the knowledge to -- if those in charge of the

12  administration of the estate wanted to, to make contact with

13  the parties and say we're in bankruptcy, but this is a sweet

14  deal here, we still want to do it, which is in affect what you

15  are asking me to protect it from.  And -- protect it from

16  losing that deal, and the point I was making, I didn't mean to

17  be as specific as my language indicated, I don't mean that the

18  debtor is necessarily aware of the fact that we have a hearing

19  today, but the debtor would have known whether it eventually

20  was evicted -- or tossed out or whatever terms of art might be

21  applicable -- from CCR, it would know what agreement it had

22  made prior to the bankruptcy.  And if it thought that was such

23  a great deal, there are parties that it could contact to say

24  don't leave us out, we want to stay a part of that agreement.

25       MR. ELLISTON:  Without a doubt, your Honor, AWI

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 106 of 118

30 | 1 | would have been aware of the settlement and would have been in
| 2 | a position to make the determination whether to fund the
| 3 | outstanding settlements or not fund the outstanding
| 4 | settlements.  And as we have indicated, on a motion they have
| 5 | not funded those outstanding settlements, rather choosing to
| 6 | go into the bankruptcy court.
| 7 | As to what authority they might have or what ability they
| 8 | might have to fund these settlements separate and apart from
| 9 | the -- or as part of the bankruptcy action, I would profess or
| 10 | proclaim my ignorance, but certainly they were aware of the
| 11 | underlying agreement.
| 12 | THE COURT:  All right.  Does the plaintiff -- I want
| 13 | to make sure I know what facts are not disputed.
| 14 | Is it known at the time of the settlement who the CCR
1:26:30 | 15 | members were; that is, who of the defendants here were in CCR?
| 16 | MR. ELLISTON:  Yes, your Honor.
| 17 | THE COURT:  So -- again, if I'm misstating this,
| 18 | Mr. Elliston, I advise you that you should correct me.  I
| 19 | really am just trying to make sure I understand the facts.
| 20 | So in September CCR would know and the plaintiffs would
| 21 | know that the defendants who were members of CCR were
| 22 | Armstrong, Gypsum, Certainteed, and T&N?
| 23 | MR. ELLISTON:  That were being sued in that
| 24 | particular case.
| 25 | THE COURT:  In the Painter litigation?

25

1          MR. ELLISTON:  Yes, ma'am.

2          THE COURT:  And the contribution of those four

3    entities to the settlement would not have been known to the

4    plaintiffs?

5          MR. ELLISTON:  Would not have been known to

6    plaintiffs, that's correct.

7          THE COURT:  And the plaintiffs were required to

8    execute settlements -- excuse me -- releases of all of those

9    parties and others as part of the settlement?

10          MR. ELLISTON:  That is also correct, your Honor.

11          THE COURT:  All right.  And there was no

12    communication from CCR or any of the defendant separately to

13    the plaintiffs describing what would happen in the event of a

14    bankruptcy or some other kind of insolvency?

15          MR. ELLISTON:  I cannot agree to that.  I cannot

16    dispute it, but I cannot agree to it.  And if I may explain.

17          The negotiations do not occur between my law firm and

18    plaintiffs' counsel.  They occur between an individual at the

19    CCR in Princeton and plaintiffs' counsel.

20          There have been discussions between CCR and numerous

21    plaintiffs' counsel -- and I would anticipate this particular

22    plaintiffs' counsel -- concerning what happens, or what would

23    happen if one of the members of the CCR became insolvent, or

24    if one of the members of the CCR were to leave.

25          THE COURT:  Let me ask it differently then.

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/06/2001   Page 108 of 118

1    Based on the documents before me, including the documents

2    that are the basis for the removal, I don't have anything that

3    tells me that such a discussion occurred.  I don't have

4    anything referring to that at all.

5            MR. ELLISTON:  I would not expect your Honor to have

6    that  no.

7            THE COURT:  So I don't know whether that discussion

8    occurred or not, but on the face of it it just says we're

9    setting ten cases for            we expect releases,

10   here s a form of release and here's the docket number and the

11   CCR number for all of these parties for whom you are settling.

12   That s essentially what I have before me about the settlement?

13           MR. ELLISTON:  I believe that's correct, your Honor.

14   If I may address your specific point, I will agree with

15   your Honor that none of the documentation before you would

16   allow you to determine whether that communication occurred

17   with regard to these specific cases.

18           THE COURT:  All right.  Go ahead then, Mr. Elliston.

19   I led you down the long road here.  If you can get back to

20   where you were.

21           MR. ELLISTON:  And, your Honor, I think we have

22   covered most of the points here, but as I have indicated, this

23   is not an isolated event.  We anticipate that this will be a

24   nationwide occurrence in light of the number of cases and the

25   amount of money that's involved.  And clearly whatever

Case 1:01-cv-00181  Document 19  Filed in TXSD on 11/08/2001  Page 109 of 118

```
 1   deteimination is made concerning whether these settlement
 2   obligations are joint and several or several will dramatically
 3   impact the estate of AWI.  And we believe under the case law
 4   of the Wood case that in fact when you're addressing the
 5   situation where you have the obligations, an obligor a debtor
 6   and a co-obligor that in fact this would be a circumstance
 7   where a claim against the co-obligor would be related to the
 8   bankruptcy action and therefore should in fact go to federal
 9   court because it is related.
10        Now, as your Honor knows, we filed a motion to transfer.
11   In fairness to plaintiffs' counsel, we faxed or had that
12   hand-delivered this morning, and I don't know if they
13   anticipated having it heard, but they have not had a chance to
14   respond to that.
15        What I came prepared to do today, your Honor, is just to
16   address your jurisdiction, and we believe you do have the
17   jurisdiction because it is conceivably -- that it could
18   conceivably affect the estate of Armstrong.
19        What we're talking about here is not a contribution claim
20   in an underlying mass tort case.  What we're talking about
21   here is joint conduct, a joint obligation under a settlement
22   agreement.  And under the Wood case we believe in fact it is
23   related to bankruptcy, and I have gone through the various
24   reasons -- scenarios in front to Judge Jenevein that we
25   believe would indicate that it could in fact affect the
```

0   1  estate.

    2      Just let me briefly address the mandatory abstention and
    3  then I will be done.
    4      We believe it is part of a core proceeding, because it
    5  does affect the creditor-debtor relationship, and it does
    6  affect the administration of the estate.
    7      If your Honor looks at the press release concerning the
    8  AWI bankruptcy, this bankruptcy was caused in large part
    9  because of this ongoing asbestos litigation and the potential
   10  liability from that.  And we believe that it is critical that
   11  the bankruptcy court, one court, deal with these issues on a
   12  nationwide basis.
   13      Your Honor is correct, you could send this back down to
   14  Judge Jenevein and he could make a ruling and we could take it

:32:30  15  up through the state court system.  And yet it's our position,
   16  your Honor, that it makes imminently more sense that your
   17  Honor maintain jurisdiction of this, that it go to the
   18  bankruptcy court rather than having various state courts and
   19  county courts around this state and around this country make
   20  differing determinations, go up through the appellate process
   21  on numerous occasions.  Rather it makes more sense to go to
   22  the bankruptcy court and the federal court system to take
   23  jurisdiction of this.
   24      And, your Honor, unless you have more questions, that's
   25  our presentation.

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 111 of 118

29

1        THE COURT:  Okay.  Thank you very much,
2    Mr. Elliston.
3             MR. GERMER:  Your Honor, I don't how --
4             THE COURT:  That's fine, Mr. Germer.
5             MR. GERMER:  I would like to add one fact.  Thank
6    you.
7        You've asked several times about the underlying case, and
8    Kay can help more than I can, but one thing that's interesting
9    here that I don't think has been brought out, this group of
10   plaintiffs, of ten plaintiffs or so that are going to get
11   $6 million and have been offered, in fact, that money less the
12   Armstrong portion, these are not plaintiffs in this case, this
13   Painter case.  Only the Painters are plaintiffs in this case.
14       What they have done to get to this            they're
15   now asking for in the amended motion is lumped together some
16   cases, I think, from Nueces County --
17            THE COURT:  I understand that, and whether Judge
18   Jenevein would consider himself empowered to enforce a
19   settlement for $       when the amended motion to compel
20   and the original motion to compel both refer to a $
21   settlement -- well, the original one does, the amended one
22   refers to the entire amount, so that's an issue that would be
23   for Judge Jenevein to determine.
24       I don't purport to have an opinion about that issue, but
25   I understand the point.  That's why I asked the question.

Case 1:01-cv-00181  Document 19  Filed in TXSD on 11/06/2001  Page 112 of 118

30

1          MR. GERMER:  Thank you.  Well, you were ahead of me.

2     I just wanted to be sure that you did understand that, because

3     I could see you were focusing on that.

4          Thank you.

5          MS. REEVES:  Your Honor, briefly, a couple of

6     things.

7          First, I need to correct a factual misstatement

8     Mr. Elliston made.  He said that the plaintiffs have been

9     tendered the settlement funds in the amount equal to the share

10    owed by the CCR removing defendants here.

11         There is no showing that that has been made.  We don't

12    know what share they allocated to Armstrong.  There has never

13    been any demonstration of how that was done in the first

14    place, number one.

1:35:00   15    Number two, what the plaintiffs were given was a check

16    that said if you negotiate this check, you agree that it's in

17    full accord and satisfaction, and that extinguishes any rights

18    I have against any of the CCR members other than these

19    removing defendants.  And that is not a check that I have the

20    authority from my clients to accept, and certainly I would

21    argue and will argue to Judge Jenevein that it is not tender

22    of the settlement of their portion of the settlement amount.

23         Second, as to the disclosed principal, it's not really

24    an, issue but I don't want there to be any argument that I

25    waived the ability to complain that there were only four

Case 1:01-cv-00181  Document 19  Filed in TXSD on 11/08/2001  Page 113 of 118

1    disclosed principals.  The principals -- the entities upon

2    which the CCR defendants negotiate are all of the CCR

3    entities, these other people in the release, so I speak

4    necessarily for principals at issue here, everything that

5    Mr. Elliston said, every argument that he made, puts this case

6    squarely within the reach of Pacor and its progeny.  He said

7    nothing to distinguish this case from a situation in which a

8    defendant has a right of contribution.

9        This whole argument was there is going to be joint and

10   several liability, any finding that might compel us to pay

11   this money necessarily is a finding that liability is joint

12   and several.  That's the same thing that's at issue in the

13   contribution claim.  That was the same thing that was at issue

14   in Pacor, it's the same thing that was at issue in the

15   asbestos cases cited in my brief where other courts have held

16   that this is not related to jurisdiction and it's the same

17   sort of claim that the Walker versus Cadle court, Fifth

18   Circuit 1995, said this is the sort of third-party complaint

19   that is simply too intenuated to constitute related to

20   jurisdiction.

21       It's certainly -- I mean, if Mr. Elliston is making the

22   argument that there is something unique about a CCR defendant

23   because of the producers' agreement, it certainly wasn't

24   unique enough for the bankruptcy court to take notice of it

25   when issuing its stay.  It certainly could have issued in an

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 114 of 118

1   appropriate case a section 105 discretionary stay.  It's done
2   that in the Babcock and Wilcox bankruptcy.  It extends the
3   stay to nondebtor parties where there is the sort of
4   interconnection that Mr. Elliston is trying to establish
5   exists here, but does not, your Honor.  The kind of
6   interconnection that the Wood court was talking about is not
7   present here.  This is -- on all fours analogous to what has
8   been found time after time not to be related to.
9        And, again, there has been no showing that this is in any
10  way a core proceeding.  And under the very holding of Wood,
11  the last paragraph of the opinion says, even in a joint
12  conduct situation, which this is not, the downstream
13  consequences against the debtor estate are too speculative to
14  constitute a core proceeding.  The right claim does not arise
15  out of the bankruptcy code and the right claim does exist
16  outside of the bankruptcy context.  Those are two prongs of
17  the test for a core proceeding enunciated in the Fifth Circuit
18  in the Wood case.  Those prongs are not met here, and so this
19  is a mandatory abstention situation even if your Honor finds
20  related to jurisdiction.
21        THE COURT:  All right.  I'm going to be in recess
22  for 15 minutes.  I'll be back and announce my decision from
23  the bench.
24        (Brief recess.)
25        THE COURT:  All right.  Counsel, thank you for a

Case 1:01-cv-00181  Document 19  Filed in TXSD on 11/06/2001  Page 115 of 118

    1    very fine informative argument, which I appreciate.  I have

    2    reviewed the materials, as I had before we began the hearing,

    3    and I have concluded that the subject issue is not a core

    4    proceeding and I conclude it is not related to -- in the sense

    5    that is as that phrase is used under the bankruptcy -- under

    6    the bankruptcy code and, therefore, I conclude that I do not

    7    have subject matter jurisdiction.

    8         In the alternative, if I did have subject matter

    9    jurisdiction, I believe I have discretion not to exercise, and

   10    I determine not to exercise it in this case.

   11         It appears to me that the matter is properly before Judge

   12    Jenevein and should be determined by him depending on what

   13    scenario of those outlined by Mr. Elliston or others in the

   14    scenarios that I can think of develop.  It may be appropriate

   15    for one or more of the parties to take action in the Court

   16    where the bankruptcy against Armstrong is pending, but I do

   17    not believe that there is a sufficient relationship for the

   18    Court to conclude that it has subject matter jurisdiction and,

   19    therefore, I decline to conclude otherwise.

   20         In light of that determination, the motion to transfer

   21    that has been filed by the defendants is rendered moot by my

   22    decision, and consequently I will not determine that.

   23         Is there anything further that I need to decide today, or

   24    any other finding that the parties wish me to make?

   25         Anything, Ms. Reeves?

Case 1:01-cv-00181    Document 19    Filed in TXSD on 11/08/2001    Page 116 of 118

```
 1         MS. REEVES:  No, your Honor.  Thank you.

 2         THE COURT:  All right.  Mr. Elliston?

 3         MR. ELLISTON:  In light of your ruling, no, ma'am.

 4         THE COURT:  Then the -- so that the record is clear,

 5    the Court has granted the plaintiffs' motion for remand, and

 6    the case will be remanded.

 7         As I have indicated in our conference call last week, I

 8    did advise Judge Jenevein that we were having the hearing

 9    today.  I had told him that the hearing was at 11:30.  I did

10    not advise him that we moved the hearing to this afternoon.  I

11    told him that either my office or one of the parties would

12    advise him of the outcome of our hearing here.  So I would

13    appreciate if you, Ms. Reeves, if you want to use the phone in

14    my conference room to do that, you may do so.

15         MS. REEVES:  Thank you, your Honor.

16         MR. ERVOES:  All rise.

17              ---oOo---

18

19

20

21

22

23

24

25
```

Case 1:01-cv-00181   Document 19   Filed in TXSD on 11/08/2001   Page 117 of 118

35

1

2               *C E R T I F I C A T E:*

3

4          I, P. Sue Engledow RPR/CSR, certify that the foregoing is

5      a transcript from the record of the proceedings in the

6      foregoing entitled matter.

7          I further certify that the transcript fees format comply

8      with those prescribed by the Court and the Judicial Conference

9      of the United States.

10         This the 19th day of December, 2000.

11

12

13

14                              _____
                                P.  SUE ENGLEDOW RPR/CSR No. 1170
15                              Official Court Reporter
                                The Northern District of Texas
16                                    Dallas Division

17

18

19

20     My  SR license expires:  December 31, 2001

21     Business address:   P.O. Box 1247
                           Red Oak, Texas 75154-1247
22
       Telephone Number:  214/753-2325
23

24

25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

*FILED*

JAN 30 2001

G. PATRICK MURPHY.
SOUTHERN DISTRICT JUDGE
EAST ST. LOUIS, ILLINOIS

| | |
|---|---|
| HAROLD BIERBAUM, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )  CIVIL NO. 00-977-GPM |
| | ) |
| ARMSTRONG WORLD INDUSTRIES, | ) |
| INC., AMCHEM PRODUCTS, INC., | ) |
| T&N PLC, and UNITED STATES | ) |
| GYPSUM COMPANY, | ) |
| | ) |
| Defendants. | ) |

## <u>ORDER</u>

**MURPHY, Chief District Judge:**

This matter was set for a hearing today on Plaintiffs' motion to remand (Doc. 11). Last week, the parties filed a "stipulation of parties on motion of plaintiffs to remand" (Doc. 13) in which the parties agreed that the action should be remanded, and Plaintiffs withdrew their request for attorneys' fees and costs.

Accordingly, and for good cause shown, the motion to remand (Doc. 11) is **GRANTED**, and this action is hereby **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, pursuant to 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

DATED this ___30th___ day of ___January___, 2001.

G. PATRICK MURPHY
Chief United States District Judge

17

